IN THE UNITED STATES DISTRICT
COURT OF SOUTHERN DISTRICT OF
FLORIDA

MOHAMED ALI GHANEM

    Plaintiff,

CASE NO. **00-6173**

v.

**CIV-GRAHAM**

THE STATE OF FLORIDA;
ROBERT BUTTERWORTH, ESQ.;
ATTORNEY GENERAL OF THE
STATE OF FLORIDA; and
THE FLORIDA MOTOR VEHICLE
THEFT PREVENTION AUTHORITY,

**MAGISTRATE JUDGE
TURNOFF**

    Defendants.
_____/

## COMPLAINT

COMES NOW the Plaintiff, MOHAMED ALI GHANEM, by and through his undersigned

attorney, on behalf of himself and all other taxpayers of the State of Florida, complains of

Defendants, the State of Florida, Robert Butterworth in his official capacity as Attorney General for

the State of Florida, and the Florida Motor Vehicle Theft Prevention Authority, and for a cause of

action alleges as follows:

1. That Plaintiff, MOHAMED ALI GHANEM, is, and at all times mentioned in this

Complaint was, a resident of South Florida.

2. The State of Florida is alleged to be part of the United States of America and is bound

by the laws and Constitution of the State of Florida and the Untied States of America.

3. Defendant, Robert Butterworth, Attorney General for the State of Florida, is, and at all

times mentioned in this Complaint was, a resident of the State of Florida.

4. Defendant, Robert Butterworth, is and at all times mentioned in this Complaint was, the

duly elected, qualified and acting Attorney General of the State of Florida.

5. Defendant, Florida Motor Vehicle Theft Prevention Authority is an agency existing under Florida Statute §860, and at all times mentioned in this Complaint operated within the various counties throughout the State of Florida, including but not limited to Broward and Palm Beach Counties.

6. Plaintiff brings this action for himself and for all others similarly situated, their number being large and it being impracticable to bring all of them before the court. The question involved in this action is of common interest to all such other persons.

7. Defendants have been, and continue to, illegally spend funds from the aforementioned statute, as will be detailed infra.

8. That this action is for damages in excess of Seventy-Five Thousand and No/100 Dollars ($75,000.00) and is within the jurisdiction of this Honorable Court.

9. At all times material to this lawsuit, the Plaintiff owned an automobile and paid registration fees as well as all other required taxes in the State of Florida.

**COUNT I - PETITION FOR DECLARATORY JUDGMENT
AND TAXPAYER'S ACTION DECLARING FLORIDA STATUTE §860.151-158
UNCONSTITUTIONAL AND VIOLATIVE OF FEDERALLY PROTECTED RIGHTS**

10. Plaintiff restates and re-alleges paragraphs numbered one (1) through nine (9), as if fully pled herein, and further states as follows:

11. The Florida Motor Vehicle Theft Prevention Authority is a creation of Florida Statute §§860.151 - 860.158, and it appears is part of the Office of the Attorney General, who controls this administrative body and profits from this association by means of forfeitures.

12. It is the contention of the Plaintiff and other taxpayers that Florida Statute 860.151 -

860.158 is unconstitutional, has been used in an unconstitutional manner, has deprived certain federal and state constitutionally protected rights, has created inherent conflicts of interest and official corruption and unethical behavior.

13. Florida Statute §§860.151 - 860.158 offend against Article 3, Section 6 of the Florida Constitution, since it violates the single subject rule of the Constitution. Although the statute has been amended so that juvenile grants have been taken from the control of the Florida Motor Vehicle Theft Prevention Authority, the effects remain unchanged. In 1992, the Florida Motor Vehicle Theft Prevention Authority received a full dollar based on a one dollar surcharge on every vehicle in the State of Florida. The statute was then revised in an unconstitutional manner. The greater part of the dollar was spent on juvenile grants or the general fund.

14. The Florida Motor Vehicle Theft Prevention Authority receives only eighteen cents on the dollar on every automobile registered in the State of Florida, and is seriously underfunded.

15. There has been an unlawful and unconstitutional delegation of powers from the legislation of the State of Florida to the Florida Motor Vehicle Theft Prevention Authority. In order to obtain the greatest possible effect for each dollar spent in grants, the Florida Motor Vehicle Theft Prevention Authority has imposed the condition that a prosecutor receiving a grant should make the most number of forfeitures and convictions possible. The legislature is responsible for imposing penalties for crimes not a prosecutor on a contingency basis with unfettered discretion.

16. The supremacy clause and the separation of powers has been violated by the effect of Florida Statute §§860.151 - 860.158. Local state cases have been deliberately filed in federal court, including that of the Plaintiff.

17. Allstate Insurance company was represented on the Board of Directors of the Florida

Motor Vehicle Theft Prevention Authority, which paid the entire salary of the prosecutor responsible for prosecuting the Plaintiff.

18. Allstate Insurance Company was represented on the multi-agency task force which investigated the Plaintiff.

19. Allstate Insurance Company examined evidence, and participated in search and seizures in the Plaintiff's case.

20. Allstate Insurance Company has a direct and indirect financial interest in the Plaintiff's case.

21. There is a conflict of interest of the State Attorney of the Seventeenth Judicial Circuit, the Broward County Multi-Agency Task Force, the Attorney General of the State of Florida, and Allstate Insurance Company.

22. The Plaintiff and other taxpayers of the State of Florida are being damaged by this unconstitutional law, will face excessive taxes, criminal penalties, illegal and excessive forfeitures, criminal penalties and abuse as a consequence of these unconstitutional acts.

23. The Plaintiff and other taxpayers of the State of Florida similarly situated have no plain, specific or adequate remedy at law and will suffer irreparable loss if the Defendants are allowed to continue on their unconstitutional course of conduct.

24. That the Plaintiff has not given notice to the Office of the Attorney General, since the Attorney General's Office is so involved in the conduct which the Plaintiff has alleged is both unconstitutional, unethical and illegal, and it would be a fruitless effort.

25. The number of taxpayers of the State of Florida is too large for it to be practicable for them all to appear before the court. The Plaintiff, therefore, brings this action on behalf of himself

and all other taxpayers of the State of Florida similarly situated.

26. That the subject statute is also violative of ultra vires, as said statute is both named and intended to be a force against automobile "theft"; however, as in the case of the Petitioner herein, said statute (and the authority created thereunder) are utilizing its funds and resources to prosecute and investigate cases that purely involve insurance fraud. This was not the intended use of the statute, nor its underlying expected effect.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court make and enter in this action a declaratory judgment adjudicating that Florida Statute §§560.151 - 560.158 as void because they are in conflict with the Constitution of the State of Florida and the Constitution of the United States of America.

## COUNT II - PRAYER FOR FEDERAL INJUNCTIVE RELIEF, DECLARATORY JUDGEMENT AND A FEDERAL INVESTIGATION

27. Plaintiff restates and re-alleges paragraphs numbered one (1) through nine (9), as if fully pled herein, and further states as follows:

28. On or about the 19th day of December, 1995, the Defendant MOHAMED ALI GHANEM, was arrested and charged with four (4) counts of wire fraud in Federal Court. The Defendant was simultaneously charged with fourteen (14) counts, including R.I.C.O., Grand Theft and Insurance Fraud, in State Court.

29. In August 1996, the Federal Case was dismissed as to the Defendant, his cousin Karem Ghanem, as well as four (4) other co-defendants.

30. Shortly thereafter, the State Court R.I.C.O. action was amended from fourteen (14) to sixty-six (66) counts. A related civil R.I.C.O. case was also filed against family members and co-

defendants of Mohamed Ali Ghanem, although this Defendant was not charged with that particular complaint, (copies of the Federal Indictment, the Information in the State criminal case, as well as the Amended Information, the Dismissal of the Federal Indictment are attached and integrated into this petition as exhibits, a, b, c and d).

31. The State criminal case was set for trial on November 8, 1999.

32. On November 4, 1999, Allstate Insurance Company filed Civil Complaint (Exhibit "e") against this Defendant as well as a civil theft letters on July 28, 1999, (Exhibits "f1" and "f2") and on the 4th November, 1999, (Exhibit "g") directed ostensibly against the undersign ed attorney, which was later claimed to be a mistake, although it appeared to be a threat. (Copies of the aforementioned letter and the civil complaint from Allstate Insurance Company are attached and integrated to this petition as exhibits e, f, and g).

33. There has been an unlawful delegation of powers to Allstate Insurance Company by the State of Florida, including but not limited to the following:

A.) Allstate Insurance Company financed the initial investigation and sting operation (entrapment) against the Defendants (a letter dated August 25, 1994 is attached and integrated to this petition as exhibit h).

B.) Allstate Insurance Company was represented on the Board of Directors of the Florida Motor Vehicle Theft Prevention Authority in 1995 (a copy of the annual reports for 1995 and 1996 are attached and integrated to this petition as exhibit i).

C.) Allstate Insurance Company is represented on the Committee which in 1995 paid the entire salary of the Assistant State Attorney responsible for prosecuting the Defendant in the State Criminal Charge.

D.)   Allstate Insurance Company is represented on the Broward Multi-Agency Task Force, both directly and indirectly, since an AllState Insurance Company employee is represented on this Police Force as well as a National Insurance Crime Bureau employee who is paid partially by AllState Insurance Company.

E.) Allstate Insurance Company, an alleged victim, was represented on the committee that paid the Prosecutors entire salary in 1995, 1996, paid a grant to the Police Force investigating the alleged crime, was directly represented on the Police Force, was allowed to investigate the crime, participating in evidence gathering, searches and seizures etc.

F.)  A consequence of this conflict of interest is that the Defendants constitutional rights have been violated, unfair tactics have been used against him and he has been 'over-prosecuted'.

34.  That two (2) of the confidential informants, John Berry and Nour Abandakji were charged in Federal Court, although the charges were State charges.

35. John Berry, a known perjurer, committed obvious perjury in the Defendants State Case, and the Defense Attorney was prevented from making a reasonable cross-examination at his deposition.

36. Nour Abandakji, received a Green Card as a reward for his services. This Defense Attorney was not allowed Discovery, (a co-counsel made the inquiry), as to whether the Green Card was issued to Nour Abandakji in a legal manner.

37. On the 8th day of November, 1999, the State Criminal Jury trial commenced with voire-dire of the jury panel. After certain matters arose concerning two (2) jurors, the jury panel was excused.

38.   On the 30th day of November, 1999 a second jury panel was excused after a Motion to Recuse the trial judge was granted. That there is currently pending an investigation by the State Attorney's Office, as to the actions of all concerned in this matter including the two (2) Assistant State Attorneys who prosecuted at the trial.

WHEREFORE, **MOHAMED ALI GHANEM,** would request an investigation as to the serious and fundamental violations of his civil rights at both State of Florida and Federal levels, particularly pertaining to the following:

A. (1)   Nour Abandakji was an employee of Deerfield Foreign Cars Unlimited, Inc. for a number of years. He was well aware of the lack of relationship between Karem Ghanem, the Owner, and his brother, Michael Ghanem, the owner of Foreign Cars Continental, Inc., although this so-called relationship formed the basis of the RICO charges, civilly by the State, and criminally by the Attorney General.

(2)   Michael Ghrayeb, a Federal Informer, was a cousin to both Michael Ghanem and Karem Ghanem and was well aware of the `lack' of any kind of business relationship between Michael Ghanem and Karem Ghanem or their respective companies.

(3)   Numerous witnesses, including customers, friends, Attorneys, Accountants, Bank Managers, etc., would reveal the lack of a business relationship between Michael Ghanem and his Company, Foreign Cars Continental and Karem Ghanem and his company, Deerfield Foreign Cars Unlimited, Inc.

(4)   The Plaintiff, MOHAMED ALI GHANEM, would request a Federal Investigation. That such an investigation would reveal the following information;

(a)  That the filing of the R.I.C.O. charge was filed in a corrupt manner since there was no basis for said charge and these Defendants were seriously over-prosecuted.

(b)  That when the Prosecutors realized just how weak the evidence was, they used the perjury of John Berry, to buttress their case.

(c) That when John Berry was impeached, despite interference by the Assistant State Attorney, Michael Grayeb became a witness.

B.  A Federal Investigation of this case would reveal that the dignity of the Federal Court System was impugned:

(1)  John Berry was labelled a perjurer by Lloyd King, Esquire, the Federal Prosecutor. This gentleman was charged in Federal Court, although his crimes would appear to be State of Florida local crimes.

(2)  John Berry was already charged with serious violation of probation crimes before the Honorable Judge Gold in State Court.

(3)  Charles Vaughn, Esquire, the Grant Prosecutor, became responsible for prosecuting John Berry for these probation violations, although, under the terms of his grant, this Prosecutor was responsible for Auto-theft.

(4)  Officer Skellion, a City of Sunrise Police Officer, was the lead Officer at both at both State and Federal levels, working closely with Charles vaughn, esquire and Lloyd King, esquire, the respective Prosecutors.

(5)  Nour Albandakji, an employee of Deerfield Foreign Cars Unlimited, Inc. became a Confidential Informant, keeping a daily diary, but he was the only person in the whole world who could read it. Nour Abandakji was charged n Federal Court with local crimes, so that he could

Page 9 of  13

become an informer.

(6) A Federal Investigation would reveal the Petitioner, MOHAMED ALI GHANEM, and the other Defendants in this case, were charged with purely State crimes in Federal Court.

C. A Federal Investigation would reveal that Florida Statute 860-151 to 860-158 is unconstitutional on its face. That rewards were to be given to Federal Officers to files State crimes in Federal Courts.

D. A Federal Investigation would reveal that Florida Statute 860-151 to 860-158 is seriously under-funded in comparison with States having similar laws, so that illegal excessive fines are encouraged.

(1) The Prosecutor is in effect, paid his salary on a contingency fee arrangement, since in order to continue receiving a grant, he is forced to obtain the highest number of forfeitures and convictions possible.

(2) The effect is further aggravated since the fund was so seriously under-funded.

(3) It is necessary to over-prosecute the Defendants in order to comply with the eight amendment provision of the United States Constitution as to excessive fines?

(4) After four (4) counts of wire fraud against the Defendant were dismissed in Federal Court, the State Prosecutor vindictively amended the State prosecution from fourteen (14) counts to sixty-six (66) counts.

(5) A Federal Investigation would reveal that the State of Florida and AllState Insurance Company are engaging in a vendetta against the Ghanem family, all of whom have never been

convicted of any crime.

E. (1) Ironically, several of the Insurance Companies who are the alleged victims in this case, have been sued in civil actions recently, including AllState Insurance Company, for actions similar to those of the Defendants in this case, except for the fact that these Insurance Companies acted on a far larger scale, and were not sued in criminal court.

(2) Since Allstate Insurance Company is helping to finance the present criminal investigation, is represented on the committee responsible for paying by means of grants, the Prosecutors entire salary, making grants to the investigating Police Force, on which they are represented, being represented on the investigating Police Force and participating in searches and seizures, examining and having custody of evidence, and then filing civil suits against the Defendants immediately before trial. This is farcical. If an organized group of Italian gentlemen conducted themselves as AllState Insurance Company, they would be charged with numerous crimes including bribery, it's not surprising AllState Insurance Company has not been charged.

F. Finally, after four (4) years and five (5) judges, the Ghanems case started jury selection on December 8, 1999. Because of the over-prosecution of this desperate group of Defendants, facing sixty-six (66) counts, the Defendants rights were further violated, insofar as the great difficulty in jury selection was concerned. Very few jurors were eager to serve on this panel, encompassing a twelve (12) week trial. Two (2) prominent members of the panel were excused in somewhat controversial circumstances. The first jury panel was dismissed. The trial judge, the Honorable William Clayton Johnson was recused, after a letter by the Honorable Judge Andrews

requested the State Attorney to investigate the actions of <u>all</u> involved in this matter. The Office of the State Attorney was investigating itself, since there were two (2) Assistant State Attorneys involved in this matter.

G.   In the interest of justice, the investigation should be far broader in scope;

(1)   The actions of the State Attorney's Office of Broward County should be investigated, as the prime cause of the humiliation caused to the legal profession in this case.

(2)   A declaratory judgement should be granted as to the constitutionality of Florida Statute 860-151 to 860-158 and the subsequent violation of federal constitutional rights of the Defendants.

(3)   An investigation into the actions and conflicts of interest as to the State Attorney of Broward County, The Attorney General's Office of the State of Florida and AllState Insurance Company.

(4)   An investigation into the manner in which the Federal Court system was used as a tool by the State of Florida and a conduit for the use of perjury by the State.

(5)   That in the event, after an investigation and evidentiary hearing, the facts and law of this case are so extraordinary and in particular federal constitutional rights of the Defendants have been violated, that a dismissal of State charges and/or injunctive relief should be granted.

Plaintiff further seeks the following affirmative relief:

a. Order a federal investigation into the alleged corruption and conflicts of interest involved in this case, and an evidentiary hearing;

b. Grant a dismissal and/or injunctive relief as to;

1. The State criminal case; and

2. The State Civil case.

c.  Grant a declaratory injunction as to the unconstitutionality and the

unconstitutional manner it affected this Petitioner.

MAURICE GRAHAM, P.A.
Attorney for Defendant
331 East Prospect Road
Oakland Park, Florida 33334
(954) 491-3737

BY:_____
Maurice Graham
Florida Bar No.: 180781

X 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. _____ |
| | ) | 18 USC 1343 |
| v. | ) | 18 USC 2 |
| | ) | |
| KARIM GHANEM, | ) | |
|   a/k/a "Abdul," | ) | |
| JEFFREY EGLER, | ) | |
| DARRELL A. HOLMES, | ) | |
| MOHAMAD HAMZE, | ) | |
| MOHAMED ALI GHANEM, | ) | |
|   a/k/a "Mike," | ) | |
|   a/k/a "Hamody," | ) | |
| and ADEL JARDE | ) | |
| _____ | ) | SEALED INDICTMENT |

The Grand Jury charges that:

1.     From on or about July 23, 1995, up to on or about October 26, 1995, at Broward County, the exact dates being unknown to the Grand Jury, in the Southern District of Florida, and elsewhere, the defendants,

KARIM GHANEM,
a/k/a "Abdul,"
JEFFREY EGLER,
DARRELL A. HOLMES,
MOHAMAD HAMZE,
MOHAMED ALI GHANEM,
a/k/a "Mike,"
a/k/a "Hamody,"
and ADEL JARDE,

did knowingly and willfully devise and intended to devise a scheme and artifice to defraud and to obtain money and property from Allstate Insurance Company by means of false and fraudulent pretenses, representations and promises, well knowing that the



EXHIBIT
A

pretenses, representations and promises were false and fraudulent when made.

## BACKGROUND

At all times material to this indictment:

2.     **Foreign Cars Unlimited, Inc.,** is a automobile repair shop owned and operated by defendant **KARIM GHANEM, a/k/a** "Abdul," and is located at 176 S.W. 14th Court, Deerfield Beach, Florida. Defendants **MOHAMED GHANEM, a/k/a** "Mike, a/k/a "Hamody," **MOHAMED HAMZE,** and **ADEL JARDE** are employees of **Foreign Cars Unlimited, Inc.**

3.     Defendants **JEFFREY EGLER** and **DARRELL HOLMES** are employed by Allstate Insurance Company as claim representatives. As part of their duties as claim representatives, defendants **JEFFREY EGLER** and **DARRELL HOLMES** adjust automobile insurance claims filed by Allstate policy holders.

## THE SCHEME AND ARTIFICE TO DEFRAUD

4.     It was the object of the scheme and artifice to defraud that the defendants would unlawfully enrich themselves by knowingly and wilfully making false and fraudulent promises, representations and pretenses, and by knowingly and wilfully omitting and concealing material facts, thereby fraudulently inducing Allstate Insurance Company to pay false, fraudulent and inflated claims for car repairs.

2

## MANNER AND MEANS

5.   It was a part of this scheme and artifice to defraud that defendants **JEFFREY EGLER** and **DARRELL HOLMES** submitted to Allstate Insurance Company false, fraudulent and inflated car-repair estimates which provided for unneeded repairs and replacement of parts that were not damaged or stolen.

6.   It was further part of this scheme and artifice to defraud that defendant **KARIM GHANEM**, a/k/a "Abdul," directed defendants **MOHAMED GHANEM**, a/k/a "Mike, a/k/a "Hamody," **MOHAMED HAMZE**, **ADEL JARDE**, and another employee of Foreign Cars Unlimited, Inc., to cause superficial damage to, and to remove parts from, cars which were being repaired by Foreign Cars Unlimited, Inc., in order to inflate car-repair estimates submitted by defendants **JEFFREY EGLER** and **DARRELL HOLMES**.

7.   It was a further part of the scheme and artifice to defraud that **KARIM GHANEM**, a/k/a "Abdul," paid defendants **JEFFREY EGLER** and **DARRELL HOLMES** in return for the submission of false, fraudulent and inflated car-repair estimates to Allstate Insurance Company for cars being repaired by Foreign Cars Unlimited, Inc.

8.   It was a further part of the scheme and artifice to defraud that defendant **KARIM GHANEM**, a/k/a "Abdul," offered incentives to the purported owners of cars being repaired by Foreign Cars Unlimited, Inc., in order to secure their acquiescence in the submission of false, fraudulent and inflated repair

3

estimates to Allstate Insurance Company. Those incentives includ
items not covered by Allstate Insurance policies, such as the
repair of prior damage, routine maintenance and service,
replacement of worn tires, and the installation of accessories.

9.    It was further part of the scheme and artifice to defraud
that the defendants caused Allstate Insurance Company to pay for
car repairs that were not performed, and for car parts that were
not installed on the cars.

### COUNTS 1 - 4

10.    On or about the dates enumerated as to each count, in the
Southern District of Florida and elsewhere, for the purpose of
executing the aforesaid scheme and artifice to defraud, and for the
purpose of obtaining money and property by false and fraudulent
pretenses and promises, and attempting to do so, the defendants as
enumerated as to each count did knowingly transmit and cause to be
transmitted in interstate and foreign commerce by means of wire
communications certain signals and sounds, that is, electronic
communications:

| COUNT | DATE | DEFENDANT | WIRE COMMUNICATION |
|-------|------|-----------|--------------------|
| 1 | 8/02/95 | KARIM GHANEM a/k/a "Abdul" MOHAMAD HAMZE JEFFREY EGLER | Transmission of data between Allstate employee in Florida and ADP Audatex in Conway, Arkansas concerning claim for repairs to 1988 BMW owned by Mohamad Hamze |

4

| 2 | 8/07/95 | KARIM GHANEM a/k/a "Abdul" JEFFREY EGLER MOHAMAD HAMZE MOHAMED GHANEM a/k/a "Mike" a/k/a "Hamody" ADEL JARDE | Transmission of data between Jeffrey Egler in Florida and ADP Audatex in Conway, Arkansas concerning claim for repairs to 1993 BMW claim |
| 3 | 10/12/95 | JEFFREY EGLER | Transmission of data between Jeffrey Egler in Florida and ADP Audatex in Conway, Arkansas concerning claim for repairs to 1995 Mitsubishi Montero |
| 4 | 10/16/95 | KARIM GHANEM a/k/a "Abdul" DARRELL HOLMES MOHAMED HAMZE MOHAMAD GHANEM a/k/a "Mike" a/k/a "Hamody" | Transmission of data between Darrell Holmes in Florida and ADP Audatex in Conway, Arkansas concerning claim for repairs to 1993 Lexus |

In violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL

_____
FOREPERSON

KENDALL COFFEY
UNITED STATES ATTORNEY

H. LLOYD KING, JR.
ASSISTANT UNITED STATES ATTORNEY

5

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, STATE OF FLORIDA

THE STATE OF FLORIDA                          INFORMATION FOR

                    vs.

KARIM GHANEM — Bogenschultz                   I. RICO
MICHAEL GHANEM — Bogenschultz                 II. ORGANIZED FRAUD
MOHAMED ALI GHANEM Schultz                    III, VII, IX, XII,
ABBAS GHANEM — Bogenschultz                   & XIV. GRAND THEFT
MOHAMAD HAMZE                                 IV, VIII, X, XI, &
ALI H. GHANEM — Bogenschultz                  XIII. INSURANCE
FOREIGN CARS UNLIMITED, INCORPORATED          FRAUD
FOREIGN CARS CONTINENTAL, INCORPORATED        V. & VI. CHEATING

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA:
                    COUNT   1

Racketeer Influence and Corrupt Organization Act


        MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial

Circuit of Florida, as Prosecuting Attorney for the State of

Florida in the County of Broward, by and through his undersigned

Assistant State Attorney, charges that **KARIM GHANEM,   MICHAEL**

**GHANEM, MOHAMED ALI GHANEM, ABBAS GHANEM,   MOHAMED HAMZE, ALI H.**

**GHANEM, FOREIGN CARS UNLIMITED, INC. and FOREIGN CARS CONTINENTAL,**

**INC.** beginning from an unknown date prior to July 19, A.D. 1995, up

to and including October 25th  , A.D. 1995, in the County and State

aforesaid, being persons employed by or associated with an

ENTERPRISE as defined by F.S. 895.02(3), to-wit: a group of

individuals and corporations associated in fact , which group

exists for the purpose of operating  commercial motor vehicle

repair facilities and for the purpose of violating section

817.034(4)(a)2, pertaining to unlawfully engaging in a scheme

constituting a systematic, ongoing course of conduct wi

EXHIBIT
B

the intent to defraud, or to obtain property from one or more
persons and/or lawfully organized corporations, by false or
fraudulent pretenses, representation or promises by violating
section 812.014(4)(a) in they did unlawfully and knowingly obtain or
endeavor to obtain property of the value of three hundred
hundred dollars ($300.00) or more with intent to permanently or
temporarily deprive corporations and/or individuals of a right to
the property or a benefit thereof, or to appropriate the said
property to their own use or the use of any person(s) not entitled
thereto; by violating section 817.234 by unlawfully and with intent
to defraud, or deceive persons and corporations by preparing or
making a written or oral statement that was intended to be
presented with, or in support of, a claim for payment or other
benefits pursuant to an insurance policy, knowing that such
statement contained false, incomplete or misleading information
concerning a fact or thing material to such claim;  violating
section 817.29 in that they knowingly committed gross fraud or
cheat; all contrary to the laws of the State of Florida.  More
specifically, said ENTERPRISE consists of the above named
individuals, corporations and other persons both known and unknown
to the undersigned Assistant State Attorney, who function as an
owner, partner, manager, employee, or agent of Foreign Cars
Unlimited located at 176 S.W. 14th Court, Deerfield Beach, Florida
and Foreign Cars Continental, Inc. located at 70 S.W. 10th Street,
Deerfield Beach, Florida.  For purposes of brevity, the said
ENTERPRISE will be referred to as **GHANEM ENTERPRISE**, and all of the
above-named defendants did unlawfully and knowingly conduct and
participate directly or indirectly in said **GHANEM ENTERPRISE**
through a "pattern of racketeering activity" as defined by F.S.

895.03(1) and F.S. 895.02(4), in that they engaged in two or more incidents of racketeering conduct that had the same or similar intents, results, accomplices, victims, or methods of commission, or were otherwise interrelated by distinguished characteristics and were not isolated incidents in that the defendants did commit, attempt to as principals commit, to solicit another person to commit or aid and abet the commission of two or more violations, of Section 895.02(1)(a)20,22, <u>Florida Statutes,</u> by:

### RICO Incident 1

Beginning from an unknown date prior to January 5, 1993 to and including October 25, A.D. 1995 in the County and State aforesaid **KARIM GHANEM, MICHAEL GHANEM, MOHAMED ALI GHANEM, ABBAS GHANEM, MOHAMAD HAMZE, ALI H. GHANEM , FOREIGN CARS UNLIMITED, INC. AND FOREIGN CARS CONTINENTAL, INC.** did knowingly and unlawfully engage in a scheme constituting a systematic, ongoing course of conduct with the intent to defraud one or more persons, or to obtain property, from one or more persons by false or fraudulent pretenses, representations or promises, in that the said **KARIM GHANEM, MICHAEL GHANEM, MOHAMED ALI GHANEM, ABBAS GHANEM, MOHAMAD HAMZE, ALI H. GHANEM, FOREIGN CARS UMLIMITED, INC. AND FOREIGN CARS CONTINENTAL, INC.** systematically and fraudulently submitted false invoices, and/or provided unauthorized parts and/or charged for services and repairs not performed, not need and/or created damaages to motor vehicles when said motor vehicles were not damaged, and otherwise defrauded customers and insurance companies in conduct of the businesses known as **FOREIGN CARS UNLIMITED, INC. and FOREIGN CARS CONTINENTAL, INC.,** and in so doing did obtain property, to-wit: money, having an aggregate value of more than $20,000.00 but less than $50,000.00, from **USAA Property and**

Casualty Insurance Company, Progressive Insurance Company, State Farm Insurance Company , Allstate Insurance Company and others, contrary to Section 817.034(4)(a)2 Florida Statutes.

### RICO Incident 2

Beginning on July 19, A.D. 1995 continuing through the 25th day of July, A.D. 1995, in the County and State aforesaid **KARIM GHANEM** did then and there unlawfully and knowingly use, or endeavor to use the property of **USAA Property and Casualty Insurance Company**, to-wit: money of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particulary of value between three hundred dollars ($300.00) or more, but less than five thousand dollars ($5,000.00), with the intent to either temporarily or permanently deprive **USAA Property and Casualty Insurance Company** of the right to the property or benefit therfrom, or to appropriate the property to his own use or the use of any person not entitled thereto, knowing or having reason to know that said property was stolen, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b) and F.S. 812.014(2)(c)1,

### RICO Incident 3

Beginning on July 19, A.D. 1995 continuing through the 25th day of July, A.D. 1995, in the County and State aforesaid **KARIM GHANEM** did then and there unlawfully and with the intent to injure, defraud, or deceive, prepare or make a written or oral statement, to-wit: to claim inflated damages to a 1982 BMW 320I motor vehicle, that was intended to be presented to **USAA Property and Casualty Insurance Company** in connection with or in support of a claim for

payment or other benefits pursuant to an insurance policy issued by USAA Property and Casualty Insurance Company to Lisa Denoto, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the amount of or lack thereof of the total damage needing repair of such vehicle, contrary to F.S. 817.234 (L2).

<u>RICO Incident 4</u>

Between July 19, A.D. 1995 and the 25th day of July, A.D. 1995, in the County and State aforesaid **KARIM GHANEM** did then and there unlawfully commit gross fraud or cheat at common law, to-wit: defendant did knowingly present five (5) one hundred dollars bills (U.S. currency) to Kenneth Poole, an appraiser for USAA Property and Casualty Insurance Company, thereby using the U.S. currency as a false token to obtain insurance payment for false repairs to a motor vehicle (approximate value of $839.73) by inducing Mr. Poole to approve said false appraisal of repairs, contrary to the common law and Section 817.29 of the Florida Statutes.

**RICO Incident 5**

Between July 19, 1995 and the 25th day of July, A.D. 1995, in the County and State aforesaid **KARIM GHANEM** did then and there unlawfully commit gross fraud or cheat at common law, to-wit: defendant did knowingly present eight (8) one hundred dollar bills (U.S. currency) to Steve R. Garner, an appraiser for USAA Property and Casualty Insurance Company, thereby using the U.S. currency as a false token to obtain insurance payment for false repairs to a motor vehicle (approximate value of $7,736.72) by inducing Mr.

Garner to approve said false appraisal of repairs, contrary to the common law and Section 817.29 of the Florida Statutes.

## RICO Incident 6

Beginning on an unknown date, but as early as August 11, 1995 and continuing to the 23rd day of August, A.D. 1995, in the County and State aforesaid **KARIM GHANEM, MOHAMED ALI GHANEM and MOHAMAD HAMZE** did then and there unlawfully and knowingly use, or endeavor to use the property of Progressive Insurance Company, to-wit: U.S. currency, of the value of three hundred dollars ($300.000) or more, but less than twenty thousand dollars ($20,000.00), with the intent to either temporarily or permanently deprive Progressive Insurance Company of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, knowing or having reason to know that said property was stolen, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b) and F.S. 812.014(2)(c)1,

## RICO Incident 7

Beginning on an unknown date, but as early as August 11, 1995 and continuing to the 23rd day of August, A.D. 1995, in the County and State aforesaid **KARIM GHANEM, MOHAMED ALI GHANEM and MOHAMAD HAMZE** did then and there unlawfully and with the intent to injure, defraud, or deceive Progressive Insurance Company, prepare or make a written or oral statement, to-wit: the extent of physical damages to a 1986 Jaquar motor vehicle, that was intended to be presented to Progressive Insurance Company in connection with or in support

of a claim for payment or other benefits pursuant to an insurance policy issued by Progressive Insurance Company to Jane and/or Vincent Centorrino, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: all defendants caused damages to the said motor vehicle, thus inflating the claim by hitting the vehicle with a 2x4 board; crow-bar, wood plier and a grinder to further damage; hitting the motor vehicle with a sledge hammer; and otherwise inflated the damages, contrary to F.S. 817.234,(L2),

### RICO Incident 8

Beginning on October 9, 1995 and continuing to the 25th day of October, A.D. 1995, in the County and State aforesaid **KARIM GHANEM** did then and there unlawfully and knowingly obtain or endeavor to obtain the property of USAA Property and Casualty Insurance Company, to-wit: U.S. currency, of the value of $5,000.00 or more, but less than $10,000.00, with intent to either temporarily or permanently deprive USAA Property and Casualty Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to his own use of the use of any person not entitled thereto, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b), and F.S. 812.014(2),(L3),

### RICO Incident 9

Beginning on October 9, 1995 and continuing to the 25th day of October, A.D. 1995, in the County and State aforesaid **KARIM GHANEM** did then and there unlawfully and with the intent to injure, defraud, or deceive, prepare or make a written or oral statement,

to-wit: fraudulent damages for insurance appraisal that was intended to be presented to USAA Property and Casualty Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by USAA Property and Casualty Insurance Company to Audrey Fox, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: defendant created false and fraudulent physical damage to a 1993 Acura Integra motor vehicle, contrary to F.S. 817.234, (L2),

## RICO Incident 10

Beginning January 5, 1993 continuing to the 2nd day of April, A.D. 1993, in the County and State aforesaid **MICHAEL GHANEM AND ALI H. GHANEM** did then and there unlawfully and with the intent to injure, defraud, or deceive, prepare or make a written or oral statement, to-wit: insurance claim and vehicle damage estimate that was intended to be presented to State Farm Mutual Insurance Company in connection with or in support of claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Insurnce Company to Ali H. Ghanem, the insured, knowing that such statement contained false or misleading information concerning fact or thing material to such claim, to-wit: the defendants claim a 1982 Porsche motor vehicle was water damaged and the engine was replaced and both are false; as the 1982 Porsche motor vehicle had the original motor as late as July 13, 1995.

## RICO Incident 11

Beginning January 5, 1993 continuting to the 2nd day of April, A.D. 1993, in the County and State aforesaid **MICHAEL GHANEM AND ALI**

GHANEM did then and there unlawfully and knowingly otain or endeavor to obtain the property of State Farm Mutual Insurance Company, to-wit: U.S. currency, of the value of $10,000.00 or more, but less than $20,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use of the use of any person not entitled thereto, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b), and F.S. 812.014(2)(c)3, (L4),

## RICO Incident 12

Beginning July 17, 1995 and continuing to the 18th day of August, A.D. 1995, in the County and State aforesaid **MICHAEL GHANEM AND ABBAS GHANEM** did then and there unlawfully and with the intent to injure, defraud, or deceive, prepare or make a written or oral statement, to-wit: fire damage to a 1981 Mercedes Benz motor vehicle that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Peter Pietanza and/or Mary Pietanza, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the defendants caused to be created damage to the said motor vehicle by fire in three locations to create a false appraisal, contrary to F.S. 817.234, (L2),

## RICO Incident 13

Beginning July 17, 1995 and continuing to the 18th day of

August, A.D. 1995, in the County and State aforesaid MICHAEL GHANEM AND ABBAS GHANEM did then and there unlawfully and knowingly obtain or endeavor to obtain the property of Allstate Insurance Company, to-wit: U.S. currency, of the value of $300.00 or more, but less than $5,000.00, with intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use of the use of any person not entitled thereto, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b), and F.S. 812.014(2)(c)1,(L2).

## COUNT 2

### Organized Fraud

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that KARIM GHANEM, MICHAEL GHANEM, MOHAMED ALI GHANEM, ABBAS GHANEM, MOHAMAD HAMZE, ALI H. GHANEM, FOREIGN CARS UNLIMITED, INC. AND FOREIGN CARS CONTINENTAL, INC. beginning from an unknown date prior to January 5, A.D. 1993, up to and including October 25th , A.D. 1995, in the County and State aforesaid, did knowingly and unlawfully engage in a scheme constituting a systematic, ongoing course of conduct with the intent to defraud one or more persons, or to obtain property, from one or more persons, by false or fraudulent pretenses, representations or promises, in that the said KARIM GHANEM, MICHAEL GHANEM, MOHAMED ALI GHANEM, ABBAS GHANEM, MOHAMAD HAMZE, ALI H. GHANEM, FOREIGN CARS UNLIMITED, INC. and FOREIGN CARS CONTINENTAL, INC. systematically and fraudulently submitted false invoices, and/or provided unauthorized parts and/or charged for services and

repairs not performed, not need and/or created damages to motor vehicles when said motor vehicles were not damaged, and otherwise defrauded customers and insurance companies in conduct of the businesses known as **FOREIGN CARS UNLIMITED, INC. and FOREIGN CARS CONTINENTAL, INC.**, and in so doing did obtain property, to-wit: money, having an aggregate value of more than $20,000.00 but less than $50,000.00, from **USAA Property and Casualty Insurance Company,** Progressive Insurance Company, State Farm Insurance Company and others, contrary to Section 817.034(4)(a)2 Florida Statutes;

## COUNT 3

### GRAND THEFT

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM GHANEM beginning on July 19, A.D. 1995 continuing through the 25th day of July, A.D. 1995**, in the County and State aforesaid, did then and there unlawfully and knowingly use, or endeavor to use the property of **USAA Property and Casualty Insurance Company,** to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between three hundred dollars ($300.00) or more, but less than five thousand dollars ($5,000.00), **with the intent to either temporarily or permanently deprive USAA Property and Casualty Insurance Company** of the right to the property or benefit therefrom, or to appropriate the property to his own use or

the use of any person not entitled thereto, knowing or having reason to know that said property was stolen, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b) and F.S. 812.014(2)(c)1.

## COUNT 4

### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM GHANEM** beginning on **July 19, A.D. 1995 continuing through the 25th day of July, A.D. 1995,** in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive , prepare or make a written or oral statement, to-wit: to claim inflated damages to a 1982 BMW 320I motor vehicle, that was intended to be presented to **USAA Property and Casualty Insurance Company** in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by **USAA Property and Casualty Insurance Company** to Lisa Denoto, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the amount of or lack thereof of the total damage needing repair of such vehicle, contrary to F.S. 817.234, (L2),

## COUNT 5

### CHEATING

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned

Assistant State Attorney, charges that **KARIM GHANEM** between July 19, 1995 and the 25th day of July, A.D. 1995, in the County and State aforesaid, did then and there unlawfully commit gross fraud or cheat at common law, to-wit: defendant did knowingly present five (5) one hundred dollar bills (U.S. currency) to Kenneth Poole, an appraiser for USAA Property and Casualty Insurance Company, thereby using the U.S. currency as a false token to obtain insurance payment for false repairs to a motor vehicle (approximate value of $839.73) by inducing Mr. Poole to approve said false appraisal of repairs, contrary to the common law and Section 817.29 of the Florida Statutes.

## COUNT 6

### CHEATING

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM GHANEM** between **July 19, 1995 and the 25th day of July, A.D. 1995**, in the County and State aforesaid, did then and there unlawfully commit gross fraud or cheat at common law, to-wit: defendant did knowingly present eight (8) one hundred dollar bills (U.S. currency) to Steve R. Garner, an appraiser for USAA Property and Casualty Insurance Company, thereby using the U.S. currency as a false token to obtain insurance payment for false repairs to a motor vehicle (approximate value of $7,736.72) by inducing Mr. Garner to approve said false appraisal of repairs, contrary to the common law and Section 817.29 of the Florida Statutes.


## COUNT 7

### GRAND THEFT

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM GHANEM, MOHAMED ALI GHANEM and MOHAMAD HAMZE beginning on an unknown date, but as early as August 11, 1995 and continuing to the 23rd day of August, A.D. 1995**, in the County and State aforesaid, did then and there unlawfully and knowingly use, or endeavor to use the property of Progressive Insurance Company, to-wit: U.S. currency, of the value of three hundred dollars ($300.00) or more, but less than twenty

thousand dollars ($20,000.00), with said property being more particularly of a value between ten thousand dollars ($10,000.00) or more, but less than twenty thousand dollars ($20,000.00), with the intent to either temporarily or permanently deprive Progressive Insurance Company of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, knowing or having reason to know that said property was stolen, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b) and F.S. 812.014(2)(c)1.,

### COUNT 8

### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM GHANEM, MOHAMED ALI GHANEM and MOHAMAD HAMZE beginning on an unknown date, but as early as August 11, 1995 and continuing to the 23rd day of August , A.D. 1995,** in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive Progressive Insurance Company, prepare or make a written or oral statement, to-wit: the extent of physical damages to a 1986 Jaquar motor vehicle, that was intended to be presented to Progressive Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Progressive Insurance Company to Jane and/or Vincent Centorrino, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: all defendants caused damages to the said motor vehicle, thus inflating the claim by hitting the vehicle with a 2x4

board; crow-bar; wood plier and a grinder to further damage; hitting the motor vehicle with a sledge hammer; and otherwise inflated the damages; contrary to F.S. 817.234, (L2).

## COUNT 9

### GRAND THEFT

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM GHANEM beginning on October 9, 1995 and continuing to the 25th day of October, A.D. 1995**, in the County and State aforesaid, did then and there unlawfully and knowingly obtain or endeavor to obtain the property of USAA Property and Casualty Insurance Company, to-wit: U.S. currency, of the value of $5,000.00 or more, but less than $10,000.00, with intent to either temporarily or permanently deprive USAA Property and Casualty Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to his own use of the use of any person not entitled thereto, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b), and F.S. 812.014(2)(c)2,(L3).

## COUNT 10

### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM GHANEM beginning on October 9, 1995 and continuing to the 25th day of October, A.D.**

1995, in the County and State aforesaid, did then and there unlawfully and with the intent to injur, defraud, or deceive, prepare or make a written or oral statement, to-wit: fraudulent damages for insurance appraisal that was intended to be presented to USAA Property and Casualty Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by USAA Property and Casualty Insurance Company to Audrey Fox, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: defendant created false and fraudulent physical damage to a 1993 Acura Integra motor vehicle, contrary to F.S. 817.234,(L2),

## COUNT 11

### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL GHANEM and ALI H. GHANEM beginning January 5, 1993 continuing to the 2nd day of April, A.D. 1993**, in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, prepare or make a written or oral statement, to-wit: insurance claim and vehicle damage estimate that was intended to be presented to State Farm Mutual Insurance Company in connection with or in support of claim for payment or other benefits pursuant to an insurance policy issued by **State Farm** Mutual Insurance Company to Ali H. Ghanem, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the defendants claim a 1982 Porsche motor

vehicle was water damaged and the engine was replaced and both are false; as the 1982 Porsche motor vehicle had the original motor as late as July 13, 1995.

## COUNT 12

## GRAND THEFT

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL GHANEM and ALI H. GHANEM beginning January 5, 1993 continuing to the 2nd day of April, A.D. 1993**, in the County and State aforesaid, did then and there unlawfully and knowingly obtain or endeavor to obtain the property of State Farm Mutual Insurance Company, to-wit: U.S. currency, of the value of $10,000.00 or more, but less than $20,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use of the use of any person not entitled thereto, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b), and F.S. 812.014(2)(c)3, (L4)

## COUNT 13

### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL GHANEM and ABBAS GHANEM** beginning July 17, 1995 and continuing to the 18th day of August, A.D. 1995, in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, prepare or make a written or oral statement, to-wit: fire damage to a 1981 Mercedes Benz motor vehicle that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Peter Pietanza and/or Mary Pietanza, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the defendant caused to be created damage to the said motor vehicle by fire in three locations to create a false appraisal, contrary to F.S. 817.234,(L2),

## COUNT 14

### GRAND THEFT

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL GHANEM and ABBAS GHANEM** beginning July 17, 1995 and continuing to 18th day of August, A.D. 1995, in the County and State aforesaid, did then and

there unlawfully and knowingly obtain or endeavor to obtain the property of Allstate Insurance Company, to-wit: U.S. currency, of the value of $300.00 or more, but less than $5,000.00, with intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use of the use of any person not entitled thereto, contrary to F.S. 812.014(1)(a), F.S. 812.014(1)(b), and F.S. 812.014(2)(c)1,(L2).

STATE OF FLORIDA vs.     KARIM GHANEM                          INFORMATION, Page 2
                         IDENTIFYING DATA
                         W/M 08/01751
                         SS: 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

COUNTY OF BROWARD
STATE OF FLORIDA                              STEVEN P. DELUCA

       Personally appeared before me _____, duly
appointed as an Assistant State Attorney of the 17th Judicial Circuit of
Florida by MICHAEL J. SATZ, State Attorney of said Circuit and Prosecuting
Attorney for the State of Florida in the County of Broward, who being first
duly sworn, certifies and says that testimony has been received under oath
from the material witness or witnesses for the offense(s), and the
allegations as set forth in the foregoing Information would constitute the
offense(s) charged, and that this prosecution is instituted in good faith.

                              _____
                              Assistant State Attorney, 17th Judicial Circuit of Florida

SWORN TO AND SUBSCRIBED before me this _18_ day of _December_ A.D. 19_95_

                ROBERT E. LOCKWOOD

   A TRUE COPY        Clerk of the Circuit Court, 17th Judicial Circuit,
 Circuit Court Seal   Broward County, Florida
                   By _Fredericka E Forde_____
                      Deputy Clerk

To the within Information, Defendant pleaded _____.

                ROBERT E. LOCKWOOD

                Clerk of the Circuit Court, 17th Judicial Circuit,
                Broward County, Florida

           By _____
              Deputy Clerk

| FILING AGENT | | | LICENSE REPORT NO. | | LOCAL I.D. NO. | | FDLE | FBI | SS NO. | |
|---|---|---|---|---|---|---|---|---|---|---|
| SUNRISE | | | 95-51198 | | | | 01215664 | 767260 | 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 | |

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF | ALIAS/STREET NAME | CITIZENSHIP |
|---|---|---|---|---|---|
| GHANEM, | KARIM | H. | | 3 | |

| RC | SEX | HGT. | EYES | HAIR | WGT | COMP | AGE | D.O.B. | BIRTHPLACE | SCARS, MARKS, TT |
|---|---|---|---|---|---|---|---|---|---|---|
| W | M | 5'10 | | | | | 44 | 8/1/51 | | |

PERMANENT ADDRESS
8101 ROYAL PALM WAY BOCA RATON, FL. 33432

LOCAL ADDRESS
SAME

| RESIDENCE TYPE: | (1) CITY | (2) COUNTY | (3) FLORIDA | (4) OUT-OF-STATE | PLACE OF EMPLOYMENT | LENGTH |
|---|---|---|---|---|---|---|
| | | | | | Foreign Cars Unlimited | 24 yea... |

| HOW LONG DEFENDANT IN BROWARD COUNTY | BREATHALYZER BY/CCN | READING | PLACE OF ARREST | DATE/TIME ARRESTED | ARRESTING OFFICER(S) CCN |
|---|---|---|---|---|---|
| | | | | | |

| OFFICER INJURED | UNIT | ZONE | BEAT | SHIFT | UNIT TRANSPORTING PRISONER | TRANSPORTING OFFICER/CCN | PICK-UP TIME- | DRUG TYPE |
|---|---|---|---|---|---|---|---|---|
| Y ☐ N ☐ | | | | | | | TIME ARRIVED AT BSO | |

| TYPE N-NA A-AMPHETAMINE | B-BARBITURATE C-COCAINE E-HEROIN | M-HALLUCINOGEN M-MARIJUANA O-OPIUM | P-PARAPHERNALIA/ EQUIPMENT S-SYNTHETIC | U-UNKNOWN Z-OTHER | ACTIVITY | ACTIVITY N-NA P-POSSESS | S-SELL B-BUY T-TRAFFIC | X-SMUGGLE D-DELIVER E-USE | M-MAN., FACTURE PRODUCE CULTIVATE | X-DISPENSE DISTRIBUTE | Z-OTHER | INDICATION OF ALCOHOL INFLUENCE DRUG INFLUENCE | Y ☐ ☐ N ☐ ☐ U-R ☐ ☐ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

ATTACH DEFENDANT'S PHOTO

DEFENDANT'S VEHICLE-MAKE _____ TYPE ____ YEAR ____ COLOR ____ VIN. NO. _____

VEHICLE TOWED TO _____ TAG NO. _____ OTHER IDENTIFIERS OR REMARKS _____

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP.) | ADDRESS | PHONE # |
|---|---|---|
| STATE OF FLORIDA | | |

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

PROBABLE CAUSE AFFIDAVIT

Jim Skellion

Before me this date personally appeared _____ who being first duly sworn deposes and says that on _____ day _____ 19 ____ at _____ (crime location) the above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows

SEE Attached Affidavit

_____

_____

_____

_____

I swear the above statements correct and true to the best of my knowledge and belief

OFFICER/AFFIANT'S SIGNATURE

Jim Skellion
OFFICER'S NAME/CCN

OFFICER'S DIVISION

STATE OF Florida COUNTY OF Broward

The foregoing instrument was acknowledged before me this ____ day of _____ , 19 ____ who is personally known to me or who has produced (ID Type) _____ known identification and who did (DID OR DID NOT) take an oath

(SEAL OR STAMP)

_____
DEPUTY CLERK OF THE COURT, NOTARY PUBLIC, OR ASSISTANT STATE ATTORNEY

_____
TITLE OR RANK/CCN

SEVENTEENTH JUDICIAL CIRCUIT
BROWARD COUNTY
STATE OF FLORIDA

FIRST APPEARANCE / ARREST FORM

SHOULD ADDITIONAL SPACE BE NEEDED, USE PROBABLE CAUSE AFFIDAVIT CONTINUATION.

Orig : Court
2nd : State Atty.
3rd : Filing Agency
4th : Arresting Agency

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICAL CIRCUIT IN AND FOR

BROWARD COUNTY, FLORIDA

| | |
|---|---|
| STATE OF FLORIDA,<br>Plaintiff,<br><br>vs.<br><br>KARIM A. GHANEM, also known as ABDUL KARIM GHANEM,<br>MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM,<br>ABBAS GHANEM also known as ABOJO GHANEM,<br>MOHAMED ALI GHANEM also known as "Mike" and "Hamody",<br>MOHAMAD HAMZE,<br>████████████ and<br>ROBERT ZENO,<br>Defendants. | Re-File of Case Number-95021984CFA-H<br>Case No.<br>Judge Futch<br><br>1.-RICO,<br>2, 4, 6, 8,10,12,14,16,18, 20, 22, 24, 26, 28, 30, 32, 34,36, 38,40,43,45,47,49,51,53,55, 57,60,62,64-Insurance Fraud,<br><br>3,5,7,9,11,13,15,17,19,21,23,25,27,29,31,33 35,37, 39,41,44,46,48,50,52,54,56,58,61,63, 65-Grand Theft,<br><br>42,59-Cheating,<br><br>66-Tampering with Physical Evidence. |

## COUNT 1
## Florida RICO Act
## Racketeer Influenced and Corrupt Organization

MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED

HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and

MOHAMED ALI GHANEM, also known as "Mike" and "Hamody" and MOHAMAD

HAMZE and ███████████████████ nd ROBERT ZENO beginning

from an unknown date but as early as the 20th day of November, A.D. 1992, continuing

up to and including  the 28th  day of December, A.D. 1995, in the County and State

aforesaid and elsewhere, being persons employed by or associated with an ENTERPRISE

as defined by F.S. 895.02(3), to-wit: a group of individuals and corporations associated in

fact , which group exists for the purpose of operating  commercial motor vehicle repair

facilities and sales of motor vehicles and for the purpose of violating F.S. 812.014(1)(a) et

seq. in that they did unlawfully and knowingly obtain or endeavor to obtain property, t

EXHIBIT

C

money of the value of three hundred dollars ($300.00) or more with intent to permanently or

temporarily deprive corporations and/or individuals of a right to the property or a benefit

thereof, or to appropriate the said property to their own use or the use of any person(s) not

entitled thereto; by violating F.S. 817.234 et seq. by unlawfully and with intent to injure,

defraud, or deceive corporations by presenting or causing to be presented or preparing

or making with the intent to be presented a written or oral statement that was intended to

be presented as part of, or in support of, a claim for payment of U. S. money or other

benefits pursuant to an insurance policy, knowing that such statement contained false,

incomplete or misleading information concerning a fact or thing material to such claim;

violating F.S. 817.29 in that there was knowingly committed gross fraud or cheat;; violating

F.S. 918.13 tampering with evidence, all contrary to the laws of the State of Florida. More

specifically, said ENTERPRISE consists of the above named individuals, corporations and

other persons both known and unknown to the undersigned Assistant State Attorney, who

function as either an owner, partner, manager, employee, or agent of Foreign Cars

Unlimited, Inc. located at 176 SW 14th Court, Deerfield Beach, Florida and Foreign Cars

Continental, Inc. located at 70 SW 10th Street, Deerfield Beach, Florida. For purposes of

brevity, the said ENTERPRISE will be referred to as THE GHANEM ENTERPRISE, and all

of the above-named defendants did unlawfully and knowingly conduct or participate directly

or indirectly in said THE GHANEM ENTERPRISE through a "pattern of racketeering activity"

as defined by F.S. 895.03(3) and F.S. 895.02(4), in that they engaged in two or more

incidents of racketeering conduct that had the same or similar intents, results, accomplices,

victims, or methods of commission, or were otherwise interrelated by distinguished

characteristics and were not isolated incidents in that the defendants did commit, attempt as

principals to commit, to conspire to commit, to solicit another person to commit or aid and

abet the commission of two or more violations of Section 895.02(1)(a) 21,23,37, <u>Florida</u>

<u>Statutes</u>, by:

## THE GHANEM ENTERPRISE

### Racketeering Incident Number 1

Between the 20th day of November, A.D. 1992, continuing to on or about the 5th day of January, A.D. 1993 in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented, or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on December 3, 1992, and dated on December 4, 1992 by Michael Marsalona, a adjuster/estimator for State Farm Mutual Automobile Insurance Company, and/or insurance estimate supplement on December 15, 1992 performed by the said Michael Marsalona and/or an invoice for repair dated November 21, 1993 prepared by the defendants, that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Cherie Voyten, the insured, through William R. Dresback as a third party claimant, knowing that such statement contained false or misleading information concerning fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts and labor paid for in which there was no damage(s) thereto, and/or labor was paid for when no repairs or refinishing was performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Between the 20th day of November, A.D. 1992, continuing to on or about the 5th day of January, A.D. 1993 in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or William R. Dresback, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or William R. Dresback of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes,

### Racketeering Incident Number 2

Beginning on or about the 5th day of January, A.D. 1993 continuing to the 2nd day of April, A.D. 1993, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented, or prepare or make with the intent to be presented a written or oral statement, to-wit: an estimate dated January 12, 1993 and inspection of the same date prepared by Michael Marsalona, an adjuster for State Farm Fire and Casualty Company, and/or a supplemental estimate dated January 18, 1993 prepared by Michael Marsalona, and/or a parts receipt in the name of Jarvis Tech dated January 11, 1993 that was intended to be presented to State Farm Fire and Casualty Company in connection with or in support of claim for payment or other benefits pursuant to an insurance policy issued by State Farm Fire and Casualty Company to Ali H. Ghanem, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: automotive parts were not replaced as ordered and/or labor was charged and repairs were not made and/or a transmission was ordered to be replaced with a quality recycled part in the sum of $5600.00 and it was found that the motor vehicle still had the original transmission and/or salvage parts were not used nor was work performed

as ordered and/or parts were not needed and no work was performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Beginning on or about the 5th day of January, A.D. 1993 continuing to the 2nd day of April, A.D. 1993, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and knowingly obtain or endeavor to obtain the property of State Farm Fire and Casualty Company , to-wit: money, three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $10,000.00 or more, but less than $20,000.00, with the intent to either temporarily or permanently deprive State Farm Fire and Casualty Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b), and 812.014(2)(c)3, Florida Statues,

### Racketeering Incident Number 3

Between the 8TH day of April , 1994 and the 28th day of June , A.D. 1994, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: repair estimate by Tim Rzepka, an adjuster employed by Tri County Adjustment, Inc. said company having been retained by State Farm Mutual Automobile Insurance Company to do an estimate for repairs, in the sum of $15,141.44 dated May 27, 1994, and/or a supplemental repair estimate of $1,780.27 dated June 24, 1994 by Mr. Rzepka, that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Money Mortgage Inc. the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts were bid for replacement and labor and it was found that parts were repaired, not replaced, and/or no work was performed for parts paid for, and/or labor charged was not needed, and/or labor bid was not performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Between the 8TH day of April , 1994 and the 28th day of June , A.D. 1994, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Money Mortgage, Inc., to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $10,000.00 or more, but less than $20,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Money Mortgage, Inc. of the right to the property or benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)3, Florida Statutes,

### Racketeering Incident Number 4

Beginning on or about   the  6th day of August, A.D. 1994 and continuing through on or about the 24th day of August, A.D. 1994, in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and   ROBERT ZENO, also known as BOB ZENO

beginning on or about the 6th day of August, A.D. 1994 and continuing through on or about the 24th day of August, A.D. 1994 did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement to-wit: an estimate dated August 11, 1994 by written by defendant, Bob Zeno, with an inspection made on August 11, 1994 by the said defendant Bob Zeno, an adjuster for Allstate Insurance Company and/or a Adjusters Report, Auto-Supplemental Payment dated August 24, 1994 prepared by defendant Bob Zeno, an adjuster for Allstate Insurance Company and/or a supplemental estimate dated August 24, 1994 and inspected on August 24, 1994, prepared by defendant Bob Zeno, an adjuster for Allstate Insurance Company and/or an estimate document 2133 by Foreign Car Continental dated August 24, 1994 to the attention of Bob Zeno and/or an Allstate Insurance Company check number 93307280 in the sum of $9,684.20 to the order of Peter Pietanza dated August 11, 1994 and prepared by defendant Bob Zeno, an adjuster for Allstate Insurance Company and/or an Allstate Insurance Company check number 93307671 in the sum of $3398.94 to the order of Foreign Cars Continental, Inc. dated August 24, 1994 and prepared by defendant Bob Zeno, an adjuster for Allstate Insurance Company that was intended to presented to Allstate Insurance Company in connection with, or in support of, a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Peter Pietanza and/or Mary Palina, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: a rebuilt transmission as ordered was not installed as ordered, and the original transmission was found on the motor vehicle and/or repairs of automotive parts were not made and/or parts were repaired instead of replaced and/or parts were ordered replaced with new part were found to be used parts and/or parts were written to be replaced but the parts were not damaged and/or, photographs taken by Bob Zeno of the said transmission and submitted to Allstate Insurance Company were false as said photographs are not for this model vehicle, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

<div align="center">and/or</div>

Beginning on or about the 6th day of August, A.D. 1994 and continuing through on or about the 24th day of August, A.D. 1994, in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO, also known as BOB ZENO beginning on or about the 6th day of August, A.D. 1994 and continuing through on or about the 24th day of August, A.D. 1994 did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

<div align="center">Racketeering Incident Number 6</div>

Beginning on or about the 24th day of August, A.D. 1994 and continuing through on or about the 21st day of September, A.D 1994, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO also known as BOB ZENO did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement to-wit: an estimate dated August 24, 1994 written by defendant, Abbas Ghanem, and/or an estimate prepared by defendant Bob Zeno dated August 29, 1994 on an inspection made on August 29, 1994 by the said defendant Bob Zeno, as an adjuster for

Allstate Insurance Company and/or a Claim's Representative Inspection Report dated August 29, 1994 prepared by defendant Bob Zeno, as an adjuster for Allstate Insurance Company and/or a supplemental estimate dated September 21, 1994 prepared by defendant Bob Zeno, as an adjuster for Allstate Insurance Company and/or an adjuster's report auto supplemental payment dated September 21, 1994 prepared by defendant Bob Zeno, as an adjuster for Allstate Insurance Company and/or an Allstate Insurance Company check in the sum of $1,216.70 dated September 21, 1994 issued by defendant Bob Zeno, as an adjuster for Allstate Insurance Company that was intended to be presented to Allstate Insurance Company in connection with, or in support of, a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Liliane D. Teixeira, the insured, knowing that such statement contained false, incomplete or misleading information concerning a fact or thing material to such claim, to-wit: repairs and/or salvage parts were not used nor was work performed as ordered and/or some repairs ordered were found to have no repairs thereon and/or repairs to the motor vehicle of the insured were not made or parts were repaired and not replaced, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

<div align="center">and/or</div>

Beginning on or about the 24th day of August, A.D. 1994 and continuing through on or about the 21st day of September, A.D 1994, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO also known as BOB ZENO did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company and/or Liliane D. Teixeira, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Liliane D. Teixeira of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

<div align="center">Racketeering Incident Number</div>

Between the 14th of March, A.D. 1995 and the 28th day of April, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ████████ ████████ did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement(s) to-wit: insurance estimate dated April 10, 1995 and inspected by ████████ on April 7, 1995 at Foreign Cars Continental, Inc. and/or Claims Representative Inspection Report dated April 10, 1995 prepared by ████████ s that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Cora Lee Ford, the insured knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the defendants did not repair the motor vehicle in accordance with the estimate by: repairs and/or parts were repaired instead of being replaced with a new part and/or, a tailgate was to be replace with a new part was repaired with a used part, and/or the afore-mentioned tailgate was a used part purchased by Mrs. Ford at the direction of defendants and defendants were paid for a new part, and they did not refund Mrs. Ford, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

<div align="center">and/or</div>

Between the 14th of March, A.D. 1995 and the 28th day of April, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ████████

███████ did then and there unlawfully and knowingly obtain or endeavor to obtain the property of Allstate Insurance Company and/or Cora Lee Ford, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Cora Lee Ford of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a),  812.014(1)(b) and  812.014(2)(c)1, Florida Statutes,

### Racketeering Incident Number 7

Between the 13th day of July, 1995 and the 2nd day of August, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: insurance estimate of damages dated July 26, 1995 and inspected on July 17, 1996 by Michael O'Brian, Claims Representative of State Farm, and/or supplemental estimate of Michael O'Brian, and/or oral statement(s) with Michael O'Brian, and/or supplemental request assignment sheet,  that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Nadine Joseph the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new repaired, not replaced, and/or parts not needed, and/or parts needed not replaced, and/or labor not needed, and/or car coated with paint on parts that were not replaced, contrary to Sections 817.234(1)(a) 1,2,3., Florida Statutes,

**and/or**

Between the 13th day of July, 1995 and the 2nd day of August, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Nadine Joseph, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Nadine Joseph of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto,  contrary to Sections 812.014(1)(a), F.S. 812.014(1)(b) and  812.014(2)(c)1 Florida Statutes,

### Racketeering Incident Number 8

Beginning on or about the 17th day of July , A.D. 1995 and continuing to the 25th day of August, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and JEFFERY EGLER did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: conversations between Tim Patient, an appraiser for Allstate Insurance Company and the defendants between July 17, 1995 and August 25, 1995 and/or an estimate prepared on July 21, 1995 by Tim Patient, an appraiser/adjuster for Allstate Insurance Company based upon an inspection of July 20,

1995 concerning alleged fire damage to a 1981 Mercedes Benz motor vehicle and/or a Claims Representative Inspection Report prepared by Tim Patient on July 20, 1995 and/or a Total Loss and Salvage Report dated July 20, 1995 by the said Tim Patient and/or a Proof of Loss executed by Peter Pietanza and Mary Palina also known as Mary Pietanza dated August 21, 1995 that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Peter Pietanza and/or Mary Palina also known as Mary Pietanza, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the defendants caused to be created damage to the said motor vehicle by fire in three locations to create a false appraisal/estimate in order to declare the motor vehicle a total loss, contrary to Sections 817.234(1)(a)1,2,3, Florida Statutes,

<div align="center">and/or</div>

Beginning on or about the 17th day of July , A.D. 1995 and continuing to the 25th day of August, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and [ ] did then and there unlawfully and knowingly obtain or endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes,

<div align="center">Racketeering Incident Number 9</div>

Between the 8th day of August, 1995 and the 21st day of September, A.D. 1995, in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: estimate dated August 8, 1995 and inspected on August 8, 1995 by Ronald McNair, a Claims Representative of State Farm Mutual Automobile Insurance Company that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Sylvia Barahona and/or Oscar Barahona, the insured knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: labor needed for repair and refinishing was not done, and/or a bid for replacement for the right and left hinges was made and paid for and neither was replaced, and/or parts that were paid for to be replaced were repaired instead and/or a false tow bill was presented, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

<div align="center">and/or</div>

Between the 8th day of August, 1995 and the 21st day of September, A.D. 1995, in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Sylvia Barahona and Oscar Barahona, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and Sylvia Barahona and Oscar Barahona of the right to the property of benefit therefrom, or to

appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

## Racketeering Incident Number 10

Between the 23rd day of August, 1995 and the 7th day of September, A.D. 1995, in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: estimate by Bob Monaco, an adjuster for State Farm Mutual Automobile Insurance Company dated August 29, 1995 and inspected on August 29, 1995 and/or a false tow bill, that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Vivien S. Lieboff, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts were bid for replacement and labor and it was found that parts were repaired, not replaced and/or no work was performed for parts paid for and/or labor charged was not needed and/or labor bid was not performed, and/or defendants submitted a false tow bill to State Farm Mutual Automobile Insurance Company contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,
### and/or
Between the 23rd day of August, 1995 and the 7th day of September, A.D. 1995, in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Vivien S. Lieboff to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Vivien S. Lieboff of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), F.S. 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

## Racketeering Incident Number 11

Between the 29th day of September, 1995 continuing to on or about the 20th day of November, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANAM and ABBAS GHANEM, also known as ABOJO GHANEM and ███████████ did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: estimate and inspection dated October 16, 1995 by the defendant, ███████ an adjuster and Claim Representative for Allstate Insurance Company and/or defendant, ███████ Claim Representative Inspection Report dated October 16, 1995 and/or a check dated October 16, 1995 drawn on the account of Allstate Insurance Company being check number 92420309 prepared by the said defendant, ██████ that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefit pursuant to an insurance policy issued by Allstate Insurance Company to Peggy Johnson, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new factory parts were repaired instead of being replaced and/or new factory replacement part(s) were

used part(s) instead and/or salvage used parts were installed rather than new factory OEM parts and/or a false tow bill was presented, contrary to 817.234(1)(a) 1,2,3, Florida Statutes,

and/or

Between the 29th day of September, 1995 continuing to on or about the 20th day of November, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANAM and ABBAS GHANEM, also known as ABOJO GHANEM and █████████████ did then and there unlawfully and knowingly obtain , or endeavor to obtain the property of Allstate Insurance Company and/or Peggy Johnson, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Peggy Johnson of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

### Racketeering Incident Number 12

Beginning as early as the 3rd day of October, A.D. 1995 continuing to on or about the 5th day of December, A.D. 1995, in Broward and Palm Beach counties of the State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: affidavit of vehicle theft dated November 2, 1995 signed by Michael H. Ghanem, also known as Mohamed Hussein Ghanem, and/or taped statement of Abbas Ghanem also known as Abojo Ghanem dated November 6, 1995, and/or taped statement of Michael H. Ghanem, also known as Mohamed Hussein Ghanem dated November 8, 1995, and/or various telephone conversations with Bill Talley, a claims representative of State Farm Mutual Automobile Insurance Company, and/or a sworn statement of Michael H. Ghanem, also known as Mohamed Hussein Ghanem dated December 5, 1995, that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Michael H. Ghanem, also known as Mohamed Hussein Ghanem, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the defendants gave false statements as to the ownership of a 1987 Porsche that was the subject of a claim of damage, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

and/or .

Beginning as early as the 3rd day of October, A.D. 1995 continuing to on or about the 5th day of December, A.D. 1995, in Broward and Palm Beach counties of the State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and knowingly obtain or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company, to-wit: money, of a value of twenty thousand dollars ($20,000.00) or more, but less than one hundred thousand dollars ($100,000.00), with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company of a right to the property or a benefit therefrom, or appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(b), Florida Statutes ,

### Racketeering Incident Number 13

Between the 8th day of October, 1995 and the 13th day of October, A.D. 1995 , in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: a repair estimate by dated and inspected on October 13, 1995 prepared by the defendant Robert Zeno, as an adjuster of Allstate Insurance Company and/or defendant Robert Zeno's claims representative's inspection report prepared on October 13, 1995 and/or a check on the account of Allstate Insurance Company in the sum of $2,473.60 being check number 92420067 prepared by the said defendant Robert Zeno and/or a false tow receipt, that was intended to be presented to Allstate Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Rita Sherman, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: new parts were bid for replacement and labor and it was found that parts were repaired, not replaced, and/or no work was performed for parts paid for, and/or labor charged was not needed, and/or labor bid was not performed, and/or the motor vehicle was not towed as claimed contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

<center>and/or</center>

Between the 8th day of October, 1995 and the 13th day of October, A.D. 1995 , in the County and State aforesaid, MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company, and Rita Sherman, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company, and Rita Sherman of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

<center>Racketeering Incident Number 44</center>

Between the 25th day of November, A.D.1995 and the 28th day of December, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate dated December 4, 1995, from an inspection of November 30, 1995 by Ronald McNair, a adjuster of State Farm Mutual Automobile Insurance Company and/or oral representations made by defendants that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Deanna M. Glassi, the insured knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts were not replaced as ordered and/or, labor was charged and repairs were not made and/or undercoating was sprayed on parts that were to be replaced but were not and/or an overcharge of $992.00 was made for the wheels of the motor vehicle, all contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

<center>and/or</center>

Between the 25th day of November, A.D.1995 and the 28th day of December, A.D. 1995, in the County and State aforesaid MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM did then

and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Deanna M. Glassi, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Deanna M. Glassi of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections. 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

## Racketeering Incident Number 15

Between the, 7th day of November A.D. 1993, continuing to on or about the 17th day of November, A.D. 1993 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on November 11, 1993, and dated on November 11, 1993 by H. Booth, an appraiser then employed by Tri County Adjustment, Inc. on behalf of State Farm Mutual Automobile Insurance Company that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Jeanine M. Kenny, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit::a transmission as bid was not installed and was not replaced as ordered and upon inspection was the original transmission and/or parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Between the, 7th day of November A.D. 1993, continuing to on or about the 17th day of November, A.D. 1993 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Jeanine M. Kenny, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5,000.00 or more, but less than $10,000, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Jeanine M. Kenny of the right to the property or benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)3, Florida Statutes,

## Racketeering Incident Number 16

Between the 5th day of September, A.D. 1994, continuing to on or about the 9th day of September, A.D. 1994 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody", and ▮▮▮▮▮▮▮▮▮ did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on September 8, 1994, and dated on September 9, 1994 by ▮▮▮▮▮▮▮ a adjuster for Allstate Indemnity Insurance Company and one of the defendant's herein, and/or a check that was prepared by defendant ▮▮▮▮▮▮▮ being number 9331010 dated September 8, 1994 drawn on the account of Allstate Indemnity Insurance

Company in the sum of $14,855.36 and/or a claims representative inspection report dated September 8, 1994 by the said ▨▨▨▨ that was intended to be presented to Allstate Indemnity Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Indemnity Insurance Company, to Mohammed Ali Ghanem, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or the engine and transmission were bid for competitive part but instead the original transmission and engine were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

**and/or**

Between the 5th day of September, A.D. 1994, continuing to on or about the 9th day of September, A.D. 1994 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody", and ▨▨▨▨ did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Indemnity Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly a value between $5,000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive Allstate Indemnity Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes,

## Racketeering Incident Number 17

Between the 9th day of September, A.D. 1994, continuing to on or about the 28th day of September, A.D. 1994 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented written or oral statement, to-wit: an insurance estimate performed on September 19, 1994, and dated on September 19, 1994 by AJ Perez, a adjuster for State Farm Fire and Casualty Company, and/or a false tow bill was prepared by the defendant or at his direction that was intended to be presented to State Farm Fire and Casualty Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Fire and Casualty Company to Alan Weinberg, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or the transmission was bid for replacement but instead the original transmission was found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs or was performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

**and/or**

Between the 9th day of September, A.D. 1994, continuing to on or about the 28th day of September, A.D. 1994 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Fire and Casualty Company and/or Alan Weinberg, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive State Farm Fire and Casualty Company and/or Alan Weinberg of the right to the property or benefit therefrom, or to appropriate the property to

his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

### Racketeering Incident Number 18

Between the 4th day of February, A.D. 1995, continuing to on or about the 17th day of February, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as also known as ABDUL KARIM GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on February 8, 1995, and dated on February 8, 1995 by Andres Perez, a adjuster for State Farm Mutual Automobile Insurance Company, was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Marianne Monteferrante, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: a rebuilt transmission and a short engine block as bid was not installed and was not replaced as ordered and/or parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Between the 4th day of February, A.D. 1995, continuing to on or about the 17th day of February, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as also known as ABDUL KARIM GHANEM did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Marianne Monteferrante, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5,000.00 or more, but less than $10,000, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Marianne Monteferrante of the right to the property or benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)3, Florida Statutes,

### Racketeering Incident Number 19

Between the 1st day of June, A.D. 1995, continuing to on or about the 13th day of June, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on June 7, 1995, and dated on June 8, 1995 by Robert Monaco, an adjuster for State Farm Mutual Automobile Insurance Company, that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company, to Cynthia M. Guerra-Harmon the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new were not replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed and/or both

air bags were never deployed from the accident Mrs. Guerra-Harmon had and damages were falsely created, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

<center>and/or</center>

Between the 1st day of June, A.D. 1995, continuing to on or about the 13th day of June, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Cynthia M. Guerra-Harmon, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Cynthia M. Guerra-Harmon of the right to the property or a benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

<center>Racketeering Incident Number 20</center>

Beginning on the 8th day of July, A.D. 1995 continuing through the 25th day of July, A.D. 1995, in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an estimate dated July 25, 1995 and inspected on July 19, 1995 by Kenneth M. Poole, an appraiser for USAA Property and Casualty Insurance Company, and/or various conversations between the said Kenneth M. Poole and the defendant that was intended to be presented to USAA Property and Casualty Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by USAA Property and Casualty Insurance Company to Daniel Lewis, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts were bid for replacement and the damage to said part was caused by the defendant, and/or a payment of money was made to Kenneth M. Poole by the defendant to write an inflated estimate of damage, and/or labor was paid for when the damages on the motor vehicle was created by the defendant, and/or parts were bid to fix damages not caused by the accident suffered by Daniel Lewis but caused by the defendant, contrary to Section 817.234(1)(a) 1,2,3, Florida Statutes,

<center>and/or</center>

Beginning on the 8th day of July, A.D. 1995 continuing through the 25th day of July, A.D. 1995, in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of USAA Property and Casualty Insurance Company and/or Daniel Lewis, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between three hundred dollars ($300.00) or more, but less than five thousand dollars ($5,000.00), with the intent to either temporarily or permanently deprive USAA Property and Casualty Insurance Company and/or Daniel Lewis of the right to the property or benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

<center>Racketeering Incident Number 21</center>

Between the 14TH day of July, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also

known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMAD HAMZE and ▮▮▮▮▮▮▮▮ did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on September 8, 1995, and dated on September 8, 1995 by the defendant, ▮▮▮▮▮▮▮ as an adjuster for Allstate Indemnity Insurance Company, and/or a check that was prepared by defendant ▮▮▮▮▮▮ being number 91975056 dated September 11, 1995 drawn on the account of Allstate Insurance Company in the sum of $8,053.53 and/or a claims representative inspection report dated September 11, 1995 prepared by the said ▮▮▮▮▮▮▮ that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to Maria Catinella, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed and/or a false tow bill was presented, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Between the 14TH day of July, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMAD HAMZE and ▮▮▮▮▮▮▮▮ did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company and/or Maria Catinella, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5,000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Maria Catinella of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes,

## Racketeering Incident Number 22

Between the 17th day of July, A.D. 1995 and the 7th day of August, A.D. 1995, in the County and State aforesaid KARIM A. GHANEM also known as ABDUL KARIM GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody" did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: a repair estimate by Tim Rzepka of Tri-County Adjustment, Inc. on behalf of State Farm Mutual Automobile Insurance Company dated July 22, 1995 and/or a supplemental repair estimate by Tim Rzepka of Tri-County Adjustment, Inc. on behalf of State Farm dated July 31, 1995 that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Raymond Hsun, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts were bid for replacement and labor and it was found that parts were repaired, not replaced, and/or no work was performed for parts paid for, and/or labor charged was not needed, and/or labor bid was not performed, and/or damage was done to the automobile which was not the result of the accident the insured had and occurred while his automobile was in the custody of the defendants, and/or the transmission was bid for replacement with a quality recycled part and the same was not performed and the defendants damaged the original

transmission and the original transmission was never replaced as bid, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Between the 17th day of July, A.D. 1995 and the 7th day of August, A.D. 1995, in the County and State aforesaid KARIM A. GHANEM also known as ABDUL KARIM GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody" did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Raymond Hsun, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $10,000.00 or more, but less than $20,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Raymond Hsun of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b), and 812.014(2)(c)3, Florida Statutes,

### Racketeering Incident Number 23

Between the 23rd day of July, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMAD HAMZE and ████████ did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on August 2, 1995, and dated on August 2, 1995 by Tim Patient, an estimator for Allstate Insurance Company, and/or a check that was prepared being number 91547700 dated August 8, 1995 drawn on the account of Allstate Insurance Company in the sum of $9,928.00 and/or a claims representative inspection report dated August 2, 1995 prepared by Tim Patient and/or a false rental car invoice number 06862 that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to Mohamad Hamze, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed, and/or a false rental car invoice, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Between the 23rd day of July, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMAD HAMZE and ████████ did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company , to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5,000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes,

### Racketeering Incident Number 24

Between the 3rd day of August, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody", and MOHAMAD HAMZE and ▮▮▮▮▮▮▮▮▮▮ did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on August 7, 1995, and dated on August 7, 1995 by the defendant, ▮▮▮▮▮▮▮▮, as an adjuster for Allstate Insurance Company, and/or a check that was prepared by defendant ▮▮▮▮▮▮ being number 91547937 dated August 8, 1995 drawn on the account of Allstate Insurance Company in the sum of $15,008.69 and/or various conversations with Det. Maria Polo of the Broward Sheriff's Office, that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to Maria Sanchez, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered or was not needed as there was no damage thereto, and/or labor was paid for when no repairs were performed and /or parts were bid for replacement and/or repair but there was no damage whatsoever, contrary to Sections 817.234(1)(a) 1,2,3, <u>Florida Statutes</u>,

**and/or**

Between the 3rd day of August, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody", and MOHAMAD HAMZE and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $10,000.00 or more, but less than $20,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)3, <u>Florida Statutes</u>,

**Racketeering Incident Number 25**

Between the 4th day of AUGUST, A.D. 1995, continuing to on or about the 18th day of September, A.D. 1995, in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody" did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on August 23,1995, and dated on August 23, 1995 by Julie Demers, an adjustor for Allstate Insurance Company, and/or a claims representative inspection report dated August 23,1995 that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to Russell Provencial, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: damage was created by the defendants to the 1988 Sterling motor

vehicle to the extent that Allstate Insurance Company declared the motor vehicle a total loss, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

**and/or**

Between the 4th day of AUGUST, A.D. 1995, continuing to on or about the 18th day of September, A.D. 1995, in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody" did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

## Racketeering Incident Number 26

Between the 10th day of August, A.D. 1995, continuing to on or about the 23rd day of August, A.D. 1995, in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody", and MOHAMED HAMZE did then and there unlawfully and with the intent to injure, defraud, or deceive Progressive Insurance Company, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on August 15, 1995, and dated on August 16, 1995 by Julie Loizou, as an adjuster for Progressive Southeastern Insurance Company, and/or conversations among the defendants and another that was intended to be presented to Progressive Southeastern Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Progressive Southeastern Insurance Company to Jane Centorrino and/or Vincent Centorrino, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: all defendants caused false damages to the said motor vehicle, thus inflating the claim by hitting the vehicle with a 2x4 board; crow-bar, wood pliers, a grinder and a sledge hammer, so as to otherwise inflate the damages and/or false damages to the front and back of the vehicle were caused by the defendants which were not accident related and/or false damages were created to the rear panel, floor and hood, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

**and/or**

Between the 10th day of August, A.D. 1995, continuing to on or about the 23rd day of August, A.D. 1995, in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody", and MOHAMED HAMZE did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Progressive Southeastern Insurance Company and/or Jane Centorrino, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between ten thousand dollars ($10,000.00) or more, but less than twenty thousand dollars ($20,000.00), with the intent to either temporarily or permanently deprive Progressive Southeastern Insurance Company and/or Jane Centorrino of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, knowing or having reason to know that said property was stolen, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)3., Florida Statutes,

## Racketeering Incident Number 27

Between the 5th day of October, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody" and █████████████ did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on October 12, 1995, and dated on October 16, 1995 by the defendant, █████ ██████ as an adjuster for Allstate Insurance Company, and/or a check that was prepared by defendant █████████████ being number 92420171 dated October 16, 1995 drawn on the account of Allstate Insurance Company in the sum of $11,397.05 and/or various conversations between Det. Paula Hall of the Sunrise Police Department, along with Lt. Rene Robes of the Broward Sheriff's Office that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to Paula Stephenson, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered or was not needed as there was no damage thereto, and/or labor was paid for when no repairs were performed and /or parts were bid for replacement and/or repair but there was no damage whatsoever, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Between the 5th day of October, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and "Hamody" and █████████████ did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5,000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes,

### Racketeering Incident Number 28

Beginning on the 9th day of October, A.D. 1995 and continuing to on or about the 19th day of December, A.D. 1995 KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: a conversation of October 9,1995 between the defendant and Det. Audrey Collins of the Sunrise Police Department and/or a conversation of October 11,1995 between the defendant and Det. Audrey Collins of the Sunrise Police Department and/or an estimate dated October 13, 1995 inspected and prepared by Steve R. Garner, a forensic analyst for the USAA Property and Casualty Insurance Company on a 1993 Acura Integra motor vehicle and/or a check prepared by the said Steve R. Garner aforesaid to the order of Audrey Fox being check number 01597820 drawn on the account of USAA Property and Casualty Insurance Company that was intended to be presented to USAA Property and Casualty Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by USAA Property and Casualty

Insurance Company to Audrey Fox, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered or was not needed as there was no damage thereto, and/or labor was paid for when no repairs were performed and/or repairs performed when here was no damage thereto, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

**and/or**

Beginning on the 9th day of October, A.D. 1995 and continuing to on or about the 25th day of October, A.D. 1995 **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM** did then and there unlawfully and knowingly obtain or endeavor to obtain the property of USAA Property and Casualty Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between of $5,000.00 or more, but less than $10,000.00, with intent to either temporarily or permanently deprive USAA Property and Casualty Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to his own use of the use of any person not entitled thereto, contrary to Sections 812.014(l)(a), 812.014(1)(b), and 812.014(2)(c)2, Florida Statutes,

**and/or**

Beginning on or about the 13th day of October, A.D. 1995, in the County and State aforesaid **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM,** , did then and there unlawfully commit gross fraud or cheat at common law, to-wit: defendant did knowingly present eight (8) one hundred dollar bills U.S. currency($800.00) to Steve R. Garner, an appraiser for USAA Property and Casualty Insurance Company, thereby using the U.S. currency as a false token to induce the said Steve R. Garner to prepare an estimate for false repairs to a motor vehicle, contrary to the common law and Section 817.29 of the Florida Statutes,

## Racketeering Incident Number 29

Between the 18th day of October, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM** did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on October 24, 1995, and dated on October 24, 1995 by David O'Meara, an adjuster for Allstate Insurance Company, and/or a check that was prepared by David O'Meara being number 92420362 dated October 24, 1995 drawn on the account of Allstate Insurance Company in the sum of $5423.40 that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to Vincenzo De Caria, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new were not replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

**and/or**

Between the 18th day of October, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM** did then and there unlawfully and knowingly obtain, or endeavor to

obtain the property of Allstate Insurance Company and/or Vincenzo De Caria, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Vincenzo De Caria of the right to the property or a benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

### Racketeering Incident Number 30

Beginning on the 5th day of October, A.D. 1995, continuing to on or about the 19th day of October, A.D. 1995 in Broward and Palm Beach Counties of the State aforesaid ████████████ did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on October 12, 1995, and dated on October 12, 1995 by the defendant, ████████████ as an adjustor for Allstate Insurance Company and/or a claim representative inspection report dated October 12, 1995 prepared by the said defendant ████████████ and/or a check that was prepared by defendant ████████████ being number 92420304 dated October 13, 1995 drawn on the account of Allstate Insurance Company in the sum of $9,669.18 and/or various conversations between Sgt. Jim Skellion of the Sunrise Police Department and the said defendant, ████████████ and/or conversations between the said defendant, ████████████ and one Michael Ghrayeb that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to Jim Burke, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered or was not needed as there was no damage thereto, and/or labor was paid for when no repairs were performed and /or parts were bid for replacement and/or repair but there was no damage whatsoever and/or the estimate was false and the said defendant accepted money, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

### and/or

Beginning on the 5th day of October, A.D. 1995, continuing to on or about the 19th day of October, A.D. 1995 in Broward and Palm Beach Counties of the State aforesaid ████████████ did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes,

### Racketeering Incident Number 31

Between the 1ST day of May, A.D. 1994, continuing to on or about the 4th day of May, A.D. 1994, in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and ████████████ and another known to the State Attorney not charged herein, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on May 4,

1994, and dated on May 4, 1994 by the defendant, ████████ as an adjuster for Allstate Indemnity Company and/or a check that was prepared by the defendant, ████████ being number 93050228 dated May 4, 1994 drawn on the account of Allstate Indemnity Company in the sum of $7549.99 and/or a claims representative inspection report dated May 4, 1994 prepared by the said defendant, ████████ that was intended to be presented to Allstate Indemnity Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Indemnity Company, to Noor Albandakji, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid to be rebuilt and upon inspection the original part was found thereon and/or part bid for replacement and instead the original part were found thereon, and/or labor paid for in which parts were not installed as ordered, and/or labor was paid for when no repairs were performed and/or ████████ accepted $1000.00 for the fictitious estimate as arranged by Karim A. Ghanem, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes,

**and/or**

Between the 1ST day of May, A.D. 1994, continuing to on or about the 4th day of May, A.D. 1994, in the County and State aforesaid KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and ████████ and another known to the State Attorney not charged herein, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Indemnity Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5,000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive Allstate Indemnity Company of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes,

**Racketeering Incident Number 32**

From an unknown date but up to and including the 19th day of December, A.D. 1995 in Broward and Palm Beach counties of the aforesaid State, KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM did then and there alter, destroy, conceal or remove any record, document, or thing, to-wit: automotive body shop files and/or checks from customers and insurance companies and/or copies of drivers license, and/or documents relating to services performed for customers having automotive body/mechanical repairs, with the purpose to impair its verity or availability in a criminal trial or proceeding or investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state, to-wit: law enforcement agency, knowing that said proceeding or investigation was pending or was about to be instituted, contrary to Sections 918.13 (1)(a) and (2), Florida Statutes,

All in violation of Section 895.04(1) and (2), Florida Statutes,

**COUNT 2**
**INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM**
**(State Farm Mutual Automobile Insurance Company)**
**William R. Dresback-1990 BMW**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as

MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM, between the 20th day of November, A.D. 1992, continuing to on or about the 5th

day of January, A.D. 1993 in the County and State aforesaid, did then and there unlawfully

and with the intent to injure, defraud, or deceive, present or cause to be presented or

prepare or make with intent to be presented a written or oral statement, to-wit: an

insurance estimate performed on December 3, 1992, and dated on December 4, 1992 by

Michael Marsalona, a adjuster/estimator for State Farm Mutual Automobile  Insurance

Company, and/or insurance estimate supplement on December 15, 1992 performed by the

said Michael Marsalona and/or an invoice for repair dated November 21, 1993 prepared by

the defendants,   that was intended to be presented to State Farm Mutual Automobile

Insurance Company in connection with or in support of a claim for payment or other benefits

pursuant to an insurance policy issued by State Farm Mutual  Automobile Insurance

Company to Cherie Voyten, the insured, through William R. Dresback as a third party

claimant, knowing that such statement contained false or misleading information concerning

fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced,

and/or parts and labor paid for in which there was no damage(s) thereto, and/or labor was

paid for when no repairs or refinishing was performed, contrary to Sections 817.234(1)(a)

1,2,3, Florida Statutes, (L2),

## COUNT 3
## GRAND THEFT
### (State Farm Mutual Automobile Insurance Company)
### William R. Dresback-1990-BMW

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as

MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM, between 20th day of November, A.D. 1992 continuing to on or about the 5th

day of January, A.D. 1993, in the County and State aforesaid, did then and there

unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual

Automobile Insurance Company and/or William R. Dresback, to-wit: money, of the value of

three hundred dollars ($300.00) or more, but less than twenty thousand dollars

($20,000.00), with said property being more particularly of a value between $5000.00 or

more, but less than $10,000.00, with the intent to either temporarily or permanently deprive

State Farm Mutual Automobile Insurance Company and/or William R. Dresback of the right

to the property or benefit therefrom, or to appropriate the property to their own use or the

use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b)

and 812.014(2)(c)2, Florida Statutes, (L3),

## COUNT 4
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
**(State Farm Fire and Casualty Company-Ali H. Ghanem-1982 Porsche 928)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as**

**MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO**

**GHANEM beginning on or about the 5th day of January, A.D. 1993 continuing to the 2nd**

**day of April, A.D. 1993**, in the County and State aforesaid, did then and there unlawfully

and with the intent to injure, defraud, or deceive, did present or cause to be presented or

prepare or make with the intent to be presented a written or oral statement, to-wit: an

estimate dated January 12, 1993 and inspection of the same date prepared by Michael

Marsalona, an adjuster for State Farm Fire and Casualty Company, and/or a supplemental

estimate dated January 18, 1993 prepared by Michael Marsalona, and/or a parts receipt in

the name of Jarvis Tech dated January 11, 1993 that was intended to be presented to State

Farm Fire and Casualty Company in connection with or in support of claim for payment or

other benefits pursuant to an insurance policy issued by State Farm Fire and Casualty

Company to Ali H. Ghanem, the insured, knowing that such statement contained false or

misleading information concerning a fact or thing material to such claim, to-wit: automotive

parts were not replaced as ordered and/or labor was charged and repairs were not made

and/or a transmission was ordered to be replaced with a quality recycled part in the sum of

$5600.00 and it was found that the motor vehicle still had the original transmission and/or

salvage parts were not used nor was work performed as ordered and/or parts were not

needed and no work was performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida

Statutes, (L2),

## COUNT 5
### GRAND THEFT
### (State Farm Fire and Casualty Company-Ali H. Ghanem-1982 Porsche 928)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **MICHAEL GHANEM, also known as**

**MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO**

**GHANEM beginning on or about the 5th day of January, A.D. 1993 continuing to the 2nd**

**day of April, A.D. 1993,** in the County and State aforesaid, did then and there unlawfully

and knowingly obtain or endeavor to obtain the property of State Farm Fire and Casualty

Company , to-wit: money, three hundred dollars ($300.00) or more, but less than twenty

thousand dollars ($20,000.00), with said property being more particularly of a value

between $10,000.00 or more, but less than $20,000.00, with the intent to either temporarily

or permanently deprive State Farm Fire and Casualty Company of the right to the property

or a benefit therefrom, or to appropriate the property to their own use or the use of any

person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b), and

812.014(2)(c)3, Florida Statues, (L4),

## COUNT 6
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (State Farm Mutual Automobile Insurance Company - Money Mortgage, Inc.)
### 1993 Mitsubishi 3000GT

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as**

**MOHAMED HUSSEIN GHANEM** between the 8TH day of April , 1994 and the 28th day of

**June , A.D. 1994,** in the County and State aforesaid, did then and there unlawfully and with

the intent to injure, defraud, or deceive, did present or cause to be presented or prepare

or make with the intent to be presented a written or oral statement, to-wit  repair estimate

by Tim Rzepka, an adjuster employed by Tri County Adjustment, Inc. said company having

been retained by State Farm Mutual Automobile Insurance Company to do an estimate for

repairs, in the sum of $15,141.44 dated May 27, 1994, and/or a supplemental repair

estimate of $1,780.27 dated June 24, 1994 by Mr. Rzepka, that was intended to be

presented to State Farm Mutual Automobile Insurance Company in connection with or in

support of a claim for payment or other benefits pursuant to an insurance policy issued by

State Farm Mutual Automobile Insurance Company to Money Mortgage Inc. the insured,

knowing that such statement contained false or misleading information concerning a fact or

thing material to such claim, to-wit parts were bid for replacement and labor and it was

found that parts were repaired, not replaced, and/or no work was performed for parts paid

for, and/or labor charged was not needed, and/or labor bid was not performed, contrary to

Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

<div align="center">

**COUNT 7**
**GRAND THEFT**
**(State Farm Mutual Automobile Insurance Company - Money Mortgage, Inc.)**
**1993 Mitsubishi 3000GT**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as**

**MOHAMED HUSSEIN GHANEM** between the 8th day of April, A.D. 1994 and the 28th day

of June, A.D. 1994, in the County and State aforesaid, did then and there unlawfully and

knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile

Insurance Company and/or Money Mortgage, Inc., to-wit money, of the value of three

hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with

said property being more particularly of a value between $10,000.00 or more, but less than

$20,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual

Automobile Insurance Company and/or Money Mortgage, Inc. of the right to the property or

benefit therefrom, or to appropriate the property to his own use or the use of any person not

entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)3,

Florida Statutes, (L4),

### Count 8
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
#### (Allstate Insurance Company-Peter Pietanza-1983 Mercedes Benz 380)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as**

**MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO**

**GHANEM and ROBERT ZENO, also known as BOB ZENO** beginning on or about the

6th day of August, A.D. 1994 and continuing through on or about the 24th day of

August, A.D. 1994, in the County and State aforesaid, did then and there unlawfully and

with the intent to injure, defraud, or deceive, did present or cause to be presented or

prepare or make with the intent to be presented a written or oral statement to-wit: an

estimate dated August 11, 1994 by written by defendant, Bob Zeno, with an inspection

made on August 11, 1994 by the said defendant Bob Zeno, an adjuster for Allstate

Insurance Company and/or a Adjusters Report, Auto-Supplemental Payment dated August

24, 1994 prepared by defendant Bob Zeno, an adjuster for Allstate Insurance Company

and/or a supplemental estimate dated August 24, 1994 and inspected on August 24, 1994,

prepared by defendant Bob Zeno, an adjuster for Allstate Insurance Company and/or an

estimate document 2133 by Foreign Car Continental dated August 24, 1994 to the attention

of Bob Zeno and/or an Allstate Insurance Company check number 93307280 in the sum of

$9,684.20 to the order of Peter Pietanza dated August 11, 1994 and prepared by defendant

Bob Zeno, an adjuster for Allstate Insurance Company and/or an Allstate Insurance Company check number 93307671 in the sum of $3398.94 to the order of Foreign Cars Continental, Inc. dated August 24, 1994 and prepared by defendant Bob Zeno, an adjuster for Allstate Insurance Company that was intended to presented to Allstate Insurance Company in connection with, or in support of, a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Peter Pietanza and/or Mary Palina, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit a rebuilt transmission as ordered was not installed as ordered, and the original transmission was found on the motor vehicle and/or repairs of automotive parts were not made and/or parts were repaired instead of replaced and/or parts were ordered replaced with new part were found to be used parts and/or parts were written to be replaced but the parts were not damaged and/or, photographs taken by Bob Zeno of the said transmission and submitted to Allstate Insurance Company were false as said photographs are not for this model vehicle, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 9
### GRAND THEFT

**(Allstate Insurance Company- Peter Pietanza-1983 Mercedes Benz 380)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO, also known as BOB ZENO beginning on or about the 6th day of August, A.D. 1994 and continuing through on or about the 24th day of August, A.D. 1994, in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value

between $5000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes, (L3),

## COUNT 10

### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Allstate Insurance Company - Liliane D. Teixeira-1992 Toyota)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO also known as BOB ZENO, beginning on or about the 24th day of August, A.D. 1994 and continuing through on or about the 21st day of September, A.D 1994, in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement to-wit: an estimate dated August 24, 1994 written by defendant, Abbas Ghanem, and/or an estimate prepared by defendant Bob Zeno dated August 29, 1994 on an inspection made on August 29, 1994 by the said defendant Bob Zeno, as an adjuster for Allstate Insurance Company and/or a Claim's Representative Inspection Report dated August 29, 1994 prepared by defendant Bob Zeno, as an adjuster for Allstate Insurance Company and/or a supplemental estimate dated September 21, 1994 prepared by defendant Bob Zeno, as an adjuster for Allstate Insurance Company and/or an adjuster's report auto supplemental payment dated September 21, 1994 prepared by defendant Bob Zeno, as an adjuster for Allstate Insurance Company and/or an Allstate Insurance Company check in the sum of $1,216.70 dated September 21, 1994 issued by defendant Bob Zeno, as an adjuster for Allstate Insurance Company that was intended to be presented to Allstate Insurance

Company in connection with, or in support of, a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Liliane D. Teixeira, the insured, knowing that such statement contained false, incomplete or misleading information concerning a fact or thing material to such claim, to-wit: repairs and/or salvage parts were not used nor was work performed as ordered and/or some repairs ordered were found to have no repairs thereon and/or repairs to the motor vehicle of the insured were not made or parts were repaired and not replaced, contrary to Sections 817.234(1)(a) 1,2,3, <u>Florida Statutes</u>, (L2),

<div align="center">

### COUNT 11
### GRAND THEFT
**(Allstate Insurance Company - Liliane D. Teixeira-1992 Toyota)**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO, also known as BOB ZENO beginning on or about the 24th day of August, A.D. 1994 and continuing through on or about the 21st day of September, A.D. 1994,** in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company and/or Liliane D. Teixeira, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Liliane D. Teixeira of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, <u>Florida Statutes</u>, (L2),

<div align="center">

### COUNT 12
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
**(Allstate Insurance Company-Cora Lee Ford-1991 Toyota Camry Station Wagon)**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and** ▮▮▮▮▮▮▮▮▮ between the 14ᵗʰ of March, A.D. 1995 and the 28ᵗʰ day of April, A.D. 1995, in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement(s) to-wit: insurance estimate dated April 10, 1995 and inspected by ▮▮▮▮▮▮ on April 7, 1995 at Foreign Cars Continental, Inc. and/or Claims Representative Inspection Report dated April 10, 1995 prepared by ▮▮▮▮▮▮ that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Cora Lee Ford, the insured knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the defendants did not repair the motor vehicle in accordance with the estimate by: repairs and/or parts were repaired instead of being replaced with a new part and/or, a tailgate was to be replace with a new part was repaired with a used part, and/or the afore-mentioned tailgate was a used part purchased by Mrs. Ford at the direction of defendants and defendants were paid for a new part, and they did not refund Mrs. Ford, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

### COUNT 13
### GRAND THEFT
**(Allstate Insurance Company -Cora Ford 1991 Toyota Camry Station Wagon)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as**

MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM and ~~████████~~ between the 14th of March A.D. 1995 and the 28th

day of April, A.D. 1995, in the County and State aforesaid, did then and there unlawfully

and knowingly obtain or endeavor to obtain the property of Allstate Insurance Company

and/or Cora Lee Ford, to-wit: money, of the value of three hundred dollars ($300.00) or

more, but less than twenty thousand dollars ($20,000.00), with said property being more

particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to

either temporarily or permanently deprive Allstate Insurance Company and/or Cora Lee

Ford of the right to the property or benefit therefrom, or to appropriate the property to their

own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a),

812.014(1)(b) and 812.014(2)(c)1, Florida Statutes, (L2),

## COUNT 14
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
**(State Farm Mutual Automobile Insurance Company-Nadine Joseph)**
**1994 Toyota Camry LE**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as

MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM between the 13th day of July, 1995 and the 2nd day of August, A.D. 1995, in

the County and State aforesaid, did then and there unlawfully and with the intent to injure,

defraud, or deceive, did present or cause to be presented or prepare or make with the

intent to be presented a written or oral statement, to-wit: insurance estimate of damages

dated July 26, 1995 and inspected on July 17, 1996 by Michael O'Brian, Claims

Representative of State Farm, and/or supplemental estimate of Michael O'Brian, and/or oral

statement(s) with Michael O'Brian, and/or supplemental request assignment sheet, that

was intended to be presented to State Farm Mutual Automobile Insurance Company in

connection with or in support of a claim for payment or other benefits pursuant to an

insurance policy issued by State Farm Mutual Automobile Insurance Company to Nadine

Joseph the insured, knowing that such statement contained false or misleading information

concerning a fact or thing material to such claim, to-wit: parts bid new repaired, not

replaced, and/or parts not needed, and/or parts needed not replaced, and/or labor not

needed, and/or car coated with paint on parts that were not replaced, contrary to Sections

817.234(1)(a) 1,2,3., Florida Statutes, (L2),

### COUNT 15
### GRAND THEFT
**(State Farm Mutual Automobile Insurance Company-Nadine Joseph)**
**1994 Toyota Camry LE**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as**

**MOHAMED HUSSEIN GHANEM and ABBAS GHANEM also known as ABOJO GHANEM**

between the 13th day of July, 1995 and the 1st day of August, A.D. 1995, in the County

and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to

obtain the property of State Farm Mutual Automobile Insurance Company and/or Nadine

Joseph, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less

than twenty thousand dollars ($20,000.00), with said property being more particularly of a

value between $300.00 or more, but less than $5,000.00, with the intent to either

temporarily or permanently deprive State Farm Mutual Automobile Insurance Company

and/or Nadine Joseph of the right to the property or benefit therefrom, or to appropriate the

property to their own use or the use of any person not entitled thereto, contrary to Sections

812.014(1)(a), F.S. 812.014(1)(b) and 812.014(2)(c)1 Florida Statutes, (L2),

### COUNT 16
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
**(Allstate Insurance Company-Peter Pietanza-1981 Mercedes Benz)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as

MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM and ████████████ beginning on or about the 17th day of July , A.D. 1995

and continuing to the 25th day of August, A.D. 1995, in the County and State aforesaid,

did then and there unlawfully and with the intent to injure, defraud, or deceive, did present

or cause to be presented or prepare or make with the intent to be presented a written or

oral statement, to-wit: conversations between Tim Patient, an appraiser for Allstate

Insurance Company and the defendants between July 17, 1995 and August 25, 1995

and/or an estimate prepared on July 21, 1995  by Tim Patient, an adjuster for Allstate

Insurance Company based upon an inspection of July 20, 1995  concerning alleged fire

damage to a 1981 Mercedes Benz motor vehicle and/or a Claims Representative Inspection

Report prepared by Tim Patient on July 20, 1995 and/or a Total Loss and Salvage Report

dated July 20, 1995 by the said Tim Patient  and/or a Proof of Loss executed by Peter

Pietanza and Mary Palina also known as Mary Pietanza dated August 21, 1995 that was

intended to be presented to Allstate Insurance Company in connection with or in support of

a claim for payment or other benefits pursuant to an insurance policy issued by Allstate

Insurance Company to Peter Pietanza and/or Mary Palina also known as Mary Pietanza,

the insured, knowing that such statement contained false or misleading information

concerning a fact or thing material to such claim, to-wit: the defendants caused to be

created damage to the said motor vehicle by fire in three locations to create a false

appraisal/estimate in order to declare the motor vehicle a total loss, contrary to Sections

817.234(1)(a)1,2,3, Florida Statutes, (L2),

### COUNT 17
### GRAND THEFT
**(Allstate Insurance Company-Peter Pietanza-1981 Mercedes Benz)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that , MICHAEL H. GHANEM, also known

as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM and █████████████ beginning on or about the 17th day of July , A.D. 1995

and continuing to the 25th day of August, A.D. 1995 in the County and State aforesaid,

did then and there unlawfully and knowingly obtain or endeavor to obtain the property of

Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00)

or more, but less than twenty thousand dollars ($20,000.00), with said property being more

particularly of a value between $300.00 or more, but less than $5000.00, with the intent to

either temporarily or permanently deprive Allstate Insurance Company of the right to the

property or benefit therefrom, or to appropriate the property to their own use or the use of

any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and

812.014(2)(c)2, Florida Statutes, (L2),

## COUNT 18
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
(State Farm Mutual Automobile Insurance Company-Sylvia Barahona)
1985 Honda Del Sol

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as

MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM between the 8th day of August, 1995 and the 21st day of September, A.D.

1995, in the County and State aforesaid, did then and there unlawfully and with the intent to

injure, defraud, or deceive, did present or cause to be presented or prepare or make with

the intent to be presented a written or oral statement, to-wit: estimate dated August 8, 1995

and inspected on August 8, 1995 by Ronald McNair, a Claims Representative of State Farm

Automobile Insurance Company that was intended to be presented to State Farm Mutual

Automobile Insurance Company in connection with or in support of a claim for payment or

other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile

Insurance Company to Sylvia Barahona and/or Oscar Barahona, the insured knowing that

such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: labor needed for repair and refinishing was not done, and/or a bid for replacement for the right and left hinges was made and paid for and neither was replaced, and/or parts that were paid for to be replaced were repaired instead and/or a false tow bill was presented, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

**COUNT 19**
**GRAND THEFT**
**(State Farm Mutual Automobile Insurance Company Sylvia Barahona)**
**1985 Honda Del Sol**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM between the 8th day of August and the 21st day of September, A.D. 1995, in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or** endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Sylvia Barahona and Oscar Barahona, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Sylvia Barahona and Oscar Barahona of the right to the property of benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes, (L2),

**COUNT 20**
**INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM**
**(State Farm Mutual Automobile Insurance Company - Vivien S. Lieboff-1989 Lincoln)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as

MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM between the 23rd day of August, 1995 and the 7th day of September, A.D.

1995, in the County and State aforesaid, did then and there unlawfully and with the intent to

injure, defraud, or deceive, did present or cause to be presented or prepare or make with

the intent to be presented a written or oral statement, to-wit: estimate by Bob Monaco, an

adjuster for State Farm Mutual Automobile Insurance Company dated August 29, 1995 and

inspected on August 29, 1995, and/or a false tow bill that was intended to be presented to

State Farm Mutual Automobile Insurance Company in connection with or in support of a

claim for payment or other benefits pursuant to an insurance policy issued by State Farm

Mutual Automobile Insurance Company to Vivien S. Lieboff, the insured, knowing that such

statement contained false or misleading information concerning a fact or thing material to

such claim, to-wit: parts were bid for replacement and labor and it was found that parts were

repaired, not replaced and/or no work was performed for parts paid for and/or labor charged

was not needed, and/or labor bid was not performed, and/or defendants submitted a false

tow bill to State Farm Mutual Automobile Insurance Company, contrary to Sections

817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 21
## GRAND THEFT

**(State Farm Mutual Automobile Insurance Company-Vivien S. Lieboff-1989 Lincoln)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as

MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO

GHANEM, between the 23rd day of August, 1995 and the 7th day of September, A.D.

1995, in the County and State aforesaid, did then and there unlawfully and knowingly

obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance

Company and/or Vivien S. Lieboff to-wit: money, of the value of three hundred dollars

($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property

being more particularly of a value between $300.00 or more, but less than $5,000.00, with

the intent to either temporarily or permanently deprive State Farm Mutual Automobile

Insurance Company and/or Vivien S. Lieboff of the right to the property or benefit therefrom,

or to appropriate the property to their own use or the use of any person not entitled thereto,

contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes, (L2).

### COUNT 22
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Allstate Insurance Company-Peggy Johnson-1985 Mercedes Benz)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as

MOHAMED HUSSEIN GHANAM and ABBAS GHANEM, also known as ABOJO

GHANEM and ███████████████ between the 29th day of September, 1995 continuing to

on or about the 20th day of November, A.D. 1995, in the County and State aforesaid, did

then and there unlawfully and with the intent to injure, defraud, or deceive, did present or

cause to be presented or prepare or make with the intent to be presented a written or

oral statement, to-wit: estimate and inspection dated October 16, 1995 by the defendant,

███████████ an adjuster and Claim Representative for Allstate Insurance Company and/or

defendant, ██████████ Claim Representative Inspection Report dated October 16, 1995

and/or a check dated October 16, 1995 drawn on the account of Allstate Insurance

Company being check number 92420309 prepared by the said defendant, ████████████

that was intended to be presented to Allstate Insurance Company in connection with or in

support of a claim for payment or other benefit pursuant to an insurance policy issued by

Allstate Insurance Company to Peggy Johnson, the insured, knowing that such statement

contained false or misleading information concerning a fact or thing material to such claim,

to-wit: parts bid new factory parts were repaired instead of being replaced and/or new

factory replacement part(s) were used part(s) instead and/or salvage used parts were

installed rather than new factory OEM parts and/or a false tow bill was presented, contrary
to 817.234(1)(a) 1,2,3, Florida Statutes, (L2)

## COUNT 23
## GRAND THEFT
### (Allstate Insurance Company - Peggy Johnson-1985 Mercedes Benz)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as**

**MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO**

**GHANEM and** ███████████ between the 29th day of September, 1995 and on or

about the 20th day of November, A.D. 1995, in the County and State aforesaid, did then

and there unlawfully and knowingly obtain , or endeavor to obtain the property of Allstate

Insurance Company and/or Peggy Johnson, to-wit: money, of the value of three hundred

dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said

property being more particularly of a value between $300.00 or more, but less than

$5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance

Company and/or Peggy Johnson of the right to the property or benefit therefrom, or to

appropriate the property to their own use or the use of any person not entitled thereto,

contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes, (L3),

## COUNT 24
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (State Farm Mutual Automobile Insurance Company-Defendants)
### 1987 Porsche 911 Slant Nose Turbo

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as**

**MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO**

**GHANEM** beginning as early as the 3rd day of October, A.D. 1995 continuing to on or

about the 5th day of December, A.D. 1995, in Broward and Palm Beach counties of the

State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: affidavit of vehicle theft dated November 2, 1995 signed by Michael H. Ghanem, also known as Mohamed Hussein Ghanem, and/or taped statement of Abbas Ghanem also known as Abojo Ghanem dated November 6, 1995, and/or taped statement of Michael H. Ghanem, also known as Mohamed Hussein Ghanem dated November 8, 1995, and/or various telephone conversations with Bill Talley, a claims representative of State Farm Mutual Automobile Insurance Company, and/or a sworn statement of Michael H. Ghanem, also known as Mohamed Hussein Ghanem dated December 5} 1995, that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Michael H. Ghanem, also known as Mohamed Hussein Ghanem, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: the defendants gave false statements as to the ownership of a 1987 Porsche that was the subject of a claim of damage, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2).

### COUNT 25
### GRAND THEFT OVER $20,000.00 BUT LESS THAN $100,000.00
(State Farm Mutual Automobile Insurance Company-Defendants)
1987 Porsche 911 Slant Nose Turbo

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM beginning as early as the 3rd day of October, 1995 continuing to on or about the 5th day of December, A.D. 1995, in Broward and Palm Beach counties of the State aforesaid, did then and there unlawfully and knowingly obtain or endeavor to obtain the

property of State Farm Mutual Automobile Insurance Company, to-wit: money of a value of twenty thousand dollars ($20,000.00) or more, but less than one hundred thousand dollars ($100,000.00), with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company of a right to the property or a benefit therefrom, or appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(b), Florida Statutes . (L6),

<div align="center">

**Count 26**

**INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM**
**(Allstate Insurance Company-Rita Sherman-1993 Mercury Sable)**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that, **MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO between the 8th day of October, A.D. 1995 and the 13th day of October, A.D. 1995, in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: a repair estimate by dated and inspected on October 13, 1995 prepared by the defendant Robert Zeno, as an adjuster of Allstate Insurance Company and/or defendant Robert Zeno's claims representative's inspection report prepared on October 13, 1995 and/or a check on the account of Allstate Insurance Company in the sum of $2,473.60 being check number 92420067 prepared by the said defendant Robert Zeno and/or a false tow receipt, that was intended to be presented to Allstate Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Rita Sherman, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: new parts were bid for replacement and labor and it was found that parts were repaired, not replaced, and/or no work was performed for parts paid**

for, and/or labor charged was not needed, and/or labor bid was not performed, and/or the motor vehicle was not towed as claimed contrary to Sections 817.234(1)(a) 1,2,3, <u>Florida Statutes</u>, (L2),

### COUNT 27
### GRAND THEFT
### (Allstate Insurance Company -Rita Sherman-1993 Mercury Sable)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM and ROBERT ZENO between the 8th day of October, A.D. 1995 and the 13th day of October, A.D. 1995, in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company and/or Rita Sherman, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Rita Sherman of the right to the property or benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, <u>Florida Statutes</u>, (L2),

### COUNT 28
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (State Farm Mutual Automobile Insurance Company-Deanna M. Glassi)
### 1993 Dodge Stealth

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM, between the 25th day of November A.D.1995 and the 28th day of December,

A.D. 1995, in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit an insurance estimate dated December 4, 1995, from an inspection of November 30, 1995 by Ronald McNair, an adjuster of State Farm Mutual Automobile Insurance Company and/or oral representations made by defendants that was intended to be presented to State Farm Mutual Automobile Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by State Farm Mutual Automobile Insurance Company to Deanna M. Glassi, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit parts were not replaced as ordered, and/or labor was charged and repairs were not made and/or undercoating was sprayed on parts that were to be replaced but were not and/or an overcharge of $992.00 was made for the wheels of the motor vehicle, all contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 29
## GRAND THEFT
### (State Farm Mutual Automobile Insurance Company - Deanna M. Glassi)
### 1993 Dodge Stealth

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and ABBAS GHANEM, also known as ABOJO GHANEM**, between 25th day of November, A.D. 1995 and the 28th day of December, A.D. 1995, in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Deanna M. Glassi, to-wit money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with

the intent to either temporarily or permanently deprive State Farm Mutual Automobile

Insurance Company and/or Deanna M. Glassi of the right to the property or benefit

therefrom, or to appropriate the property to their own use or the use of any person not

entitled thereto, contrary to Sections. 812.014(1)(a), 812.014(1)(b) and  812.014(2)(c)1,

Florida Statutes, (L2),

## COUNT 30
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (State Farm Mutual Automobile Insurance Company)
### Jeanine M. Kenny-1992 Toyota Corolla

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, between the, 7th day of November A.D. 1993, continuing to

on or about the 17th day of November, A.D. 1993 in the County and State aforesaid, did

then and there unlawfully and with the intent to injure, defraud, or deceive, did present or

cause to be presented or prepare or make with the intent to be presented a written or

oral statement, to-wit: an insurance estimate performed on November 11, 1993, and dated

on November 11, 1993 by H. Booth, an appraiser then employed by Tri County Adjustment,

Inc. on behalf of State Farm Mutual Automobile Insurance Company that was intended to

be presented to State Farm Mutual Automobile Insurance Company in connection with or in

support of a claim for payment or other benefits pursuant to an insurance policy issued by

State Farm Mutual Automobile Insurance Company to Jeanine M. Kenny, the insured,

knowing that such statement contained false or misleading information concerning a fact or

thing material to such claim, to-wit: a  transmission as bid was not installed and was not

replaced as ordered and upon inspection was the original transmission and/or parts bid new

but repaired instead of replaced, and/or parts bid for replacement and instead the original

parts were found thereon, and/or labor paid for in which parts were not replaced as ordered,

and/or labor was paid for when no repairs  were performed, contrary to Sections

817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 31
## GRAND THEFT
### (State Farm Mutual Automobile Insurance Company)
### Jeanine M. Kenny-1992 Toyota Corolla

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, between the, 7th day of November A.D. 1993, continuing to

on or about the 17th day of November, A.D. 1993 in the County and State aforesaid, did

then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State

Farm Mutual Automobile Insurance Company and/or Jeanine M. Kenny, to-wit: money, of

the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars

($20,000.00), with said property being more particularly of a value between $5,000.00 or

more, but less than $10,000, with the intent to either temporarily or permanently deprive

State Farm Mutual Automobile Insurance Company and/or Jeanine M. Kenny of the right to

the property or benefit therefrom, or to appropriate the property to his own use or the use of

any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and

812.014(2)(c)3, Florida Statutes,(L3),

## COUNT 32
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Allstate Indemnity Company-Mohammed Ali Ghenem-1990 BMW 325 I)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and

"Hamody", and ██████████ between the 5th day of September, A.D. 1994,

continuing to on or about the 9th day of September, A.D. 1994 in the County and State

aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did

present or cause to be presented or prepare or make with the intent to be presented a

written or oral statement, to-wit: an insurance estimate performed on September 8, 1994,
and dated on September 9, 1994 by ████████ an adjuster for Allstate Indemnity
Insurance Company and one of the defendant's herein, and/or a check that was prepared
by defendant ████████ being number 9331010 dated September 8, 1994 drawn on the
account of Allstate Indemnity Insurance Company in the sum of $14,855.36 and/or a claims
representative inspection report dated September 8, 1994 by the said ████████ that
was intended to be presented to Allstate Indemnity Insurance Company in connection with
or in support of a claim for payment or other benefits pursuant to an insurance policy issued
by Allstate Indemnity Insurance Company, to Mohammed Ali Ghanem, the insured, knowing
that such statement contained false or misleading information concerning a fact or thing
material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts
bid for replacement and instead the original parts were found thereon, and/or the engine
and transmission were bid for competitive part but instead the original transmission and
engine were found thereon, and/or labor paid for in which parts were not replaced as
ordered, and/or labor was paid for when no repairs were performed, contrary to Sections
817.234(1)(a) 1,2,3, Florida Statutes, (L2),

<div align="center">

**COUNT 33**

~~**GRAND THEFT**~~

**(Allstate Indemnity Company-Mohammed Ali Ghenem-1990 BMW 325 I)**
</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as
Prosecuting Attorney for the State of Florida in the County of Broward, by and through his
undersigned Assistant State Attorney, charges that, **KARIM A. GHANEM, also known as
ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and
"Hamody", and** ████████ between the 5th day of September, A.D. 1994,
continuing to on or about the 9th day of September, A.D. 1994 in the County and State
aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the
property of Allstate Indemnity Insurance Company, to-wit: money, of the value of three
hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with

said property being more particularly of a value between $5,000.00 or more, but less than

$10,000.00, with the intent to either temporarily or permanently deprive Allstate Indemnity

Insurance Company of the right to the property or a benefit therefrom, or to appropriate the

property to their own use or the use of any person not entitled thereto, contrary to Sections

812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes, (L3),

## COUNT 34
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (State Farm Fire and Casualty Company-Alan Weinberg)
### 1994 Chrysler LeBaron

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as**

**ABDUL KARIM GHANEM, between the 9th day of September, A.D. 1994, continuing to**

**on or about the 28th day of September, A.D. 1994 in the County and State aforesaid,** did

then and there unlawfully and with the intent to injure, defraud, or deceive, did present or

cause to be presented or prepare or make with the intent to be presented written or oral

statement, to-wit: an insurance estimate performed on September 19, 1994, and dated on

September 19, 1994 by AJ Perez, a adjuster for State Farm Fire and Casualty Company,

and/or a false tow bill was prepared by the defendant or at his direction that was intended to

be presented to State Farm Fire and Casualty Company in connection with or in support of

a claim for payment or other benefits pursuant to an insurance policy issued by State Farm

Fire and Casualty Company to Alan Weinberg , the insured, knowing that such statement

contained false or misleading information concerning a fact or thing material to such claim,

to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and

instead the original parts were found thereon, and/or the transmission was bid for

replacement but instead the original transmission was found thereon, and/or labor paid for

in which parts were not replaced as ordered, and/or labor was paid for when no repairs or

was performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 35
## GRAND THEFT
(State Farm Fire and Casualty Company-Alan Weinberg)
1994 Chrysler LeBaron

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, between the 9th day of September, A.D. 1994, continuing to

on or about the 28th day of September, A.D. 1994 in the County and State aforesaid, did

then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State

Farm Fire and Casualty Company and/or Alan Weinberg, to-wit: money, of the value of

three hundred dollars ($300.00) or more, but less than twenty thousand dollars

($20,000.00), with said property being more particularly of a value between $300.00 or

more, but less than $5,000.00, with the intent to either temporarily or permanently deprive

State Farm Fire and Casualty Company and/or Alan Weinberg of the right to the property or

benefit therefrom, or to appropriate the property to his own use or the use of any person not

entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1,

Florida Statutes (L2),

## COUNT 36
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
(State Farm Mutual Automobile Insurance Company)
Marianne Monteferrante-1992 BMW 318 I

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

also known as ABDUL KARIM GHANEM, between the 4th day of February, A.D. 1995,

continuing to on or about the 17th day of February, A.D. 1995 in the County and State

aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did

present or cause to be  presented or prepare or make with the intent to be presented a

written or oral statement, to-wit: an insurance estimate performed on February 8, 1995, and

dated on February 8, 1995 by Andres Perez, an adjuster for State Farm Mutual Automobile

Insurance Company, was intended to be presented to State Farm Mutual Automobile

Insurance Company in connection with or in support of a claim for payment or other benefits

pursuant to an insurance policy issued by State Farm Mutual  Automobile Insurance

Company to Marianne Monteferrante, the insured, knowing that such statement contained

false or misleading information concerning a fact or thing material to such claim, to-wit: a

rebuilt transmission and a short engine block as bid was not installed and was not replaced

as ordered and/or parts bid new but repaired instead of replaced, and/or parts bid for

replacement and instead the original parts were found thereon, and/or labor paid for in

which parts were not replaced as ordered, and/or labor was paid for when no repairs  were

performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 37
### GRAND THEFT
### (State Farm Mutual Automobile Insurance Company)
### Marianne Monteferrante-1992 BMW 318 I

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, KARIM A. GHANEM, also known as

also known as ABDUL KARIM GHANEM, between the 4th day of February, A.D. 1995,

continuing to on or about the 17th day of February, A.D. 1995 in the County and State

aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the

property of State Farm Mutual  Automobile Insurance Company and/or Marianne

Monteferrante, to-wit: money, of the value of three hundred dollars ($300.00) or more, but

less than twenty thousand dollars ($20,000.00), with said property being more particularly of

a value between $5,000.00 or more, but less than $10,000, with the intent to either

temporarily or permanently deprive State Farm Mutual Automobile Insurance Company

and/or Marianne Monteferrante of the right to the property or benefit therefrom, or to

appropriate the property to his own use or the use of any person not entitled thereto,

contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)3, Florida Statutes, (L3),

## COUNT 38
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (State Farm Mutual Automobile Insurance Company)
### Cynthia M. Guerra-Harmon-1994 Mazda 626

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, between the 1st day of June, A.D. 1995, continuing to on or

about the 13th day of June, A.D. 1995 in the County and State aforesaid, did then and

there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to

be presented or prepare or make with the intent to be presented a written or oral

statement, to-wit an insurance estimate performed on June 7, 1995, and dated on June 8,

1995 by Robert Monaco, an adjuster for State Farm Mutual Automobile Insurance

Company, that was intended to be presented to State Farm Mutual Automobile Insurance

Company in connection with or in support of a claim for payment or other benefits pursuant

to an insurance policy issued by State Farm Mutual Automobile Insurance Company, to

Cynthia M. Guerra-Harmon the insured, knowing that such statement contained false or

misleading information concerning a fact or thing material to such claim, to-wit parts bid

new were not replaced, and/or parts bid for replacement and instead the original parts were

found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or

labor was paid for when no repairs were performed and/or both air bags were never

deployed from the accident Mrs. Guerra-Harmon had and damages were falsely created,

contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 39
## GRAND THEFT
### (State Farm Mutual Automobile Insurance Company)
### Cynthia M. Guerra-Harmon-1994 Mazda 626

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, between the 1st day of June, A.D. 1995, continuing to on or about the 13th day of June, A.D. 1995 in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance Company and/or Cynthia M. Guerra-Harmon, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive State Farm Mutual Automobile Insurance Company and/or Cynthia M. Guerra-Harmon of the right to the property or a benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes (L2).

## COUNT 40
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (USAA Property and Casualty Insurance Company)
### Daniel Lewis-1989 Honda Prelude

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, beginning on the 8th day of July, A.D. 1995 continuing through the 25th day of July, A.D. 1995, in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive , did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an estimate dated July 25, 1995 and inspected on July 19, 1995 by Kenneth M. Poole, an appraiser for USAA Property and Casualty Insurance Company, and/or various conversations between the said Kenneth M. Poole and the defendant that was intended to be presented to USAA Property and Casualty Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by USAA Property and Casualty Insurance Company to Daniel

Lewis, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts were bid for replacement and the damage to said part was caused by the defendant, and/or a payment of money was made to Kenneth M. Poole by the defendant to write an inflated estimate of damage, and/or labor was paid for when the damages on the motor vehicle was created by the defendant, and/or parts were bid to fix damages not caused by the accident suffered by Daniel Lewis but caused by the defendant, contrary to Section 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

### COUNT 41
### GRAND THEFT
**(USAA Property and Casualty Insurance Company)**
**Daniel Lewis-1989 Honda Prelude**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, beginning on the 8th day of July, A.D. 1995 continuing through the 25th day of July, A.D. 1995** in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of USAA Property and Casualty Insurance Company and/or Daniel Lewis, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between three hundred dollars ($300.00) or more, but less than five thousand dollars ($5,000.00), with the intent to either temporarily or permanently deprive USAA Property and Casualty Insurance Company and/or Daniel Lewis of the right to the property or benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes, (L2),

### COUNT 42
### CHEATING
**(USAA Property and Casualty Insurance Company-1989 Honda Prelude)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, beginning on the 19th day of July, A.D. 1995 continuing through the 25th day of July, A.D. 1995**, in the County and State aforesaid, did then and there unlawfully commit gross fraud or cheat at common law, to-wit: defendant did knowingly present five (5) one hundred dollar bills (U.S. currency) to Kenneth M. Poole, an appraiser for USAA Property and Casualty Insurance Company, thereby using the U.S. currency as a false token to obtain insurance payment for false repairs to a motor vehicle by inducing Mr. Poole to approve said false appraisal of repairs, contrary to the common law and Section 817.29 of the <u>Florida Statutes</u>, (L1),

<div align="center">

**COUNT 43**

**INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM**

**(Allstate Insurance Company-Maria Catinella-1995 BMW 318I)**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMAD HAMZE and** ▓▓▓▓▓▓▓▓ **between the 14TH day of July, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995** in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on September 8, 1995, and dated on September 8, 1995 by the defendant ▓▓▓▓▓▓▓ as an adjuster for Allstate Insurance Company and/or a check that was prepared by defendant ▓▓▓▓▓▓ being number 91975056 dated September 11, 1995 drawn on the account of Allstate Insurance Company in the sum of $8,053.53 and/or a claims representative inspection report dated September 11, 1995 prepared by the said ▓▓▓▓▓▓

▮▮▮ that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company to Maria Catinella, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed and/or a false tow bill was presented, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

<div align="center">

### COUNT 44
### GRAND THEFT
**(Allstate Insurance Company-Maria Catinella-1995 BMW 318I)**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that, **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM and MOHAMAD HAMZE and**▮▮▮▮▮▮▮**between the 14ᵀᴴ day of July, A.D. 1995, continuing to on or about the 19ᵗʰ day of December, A.D. 1995** in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company and/or Maria Catinella, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $5,000.00 or more, but less than $10,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Maria Catinella of the right to the property or a benefit therefrom, or to appropriate the property to their own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes (L3),

<div align="center">

**COUNT 45**

</div>

**INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM**
(State Farm Mutual Automobile Insurance Company)
Raymond Hsun-1984 Mercedes 380SL

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, KARIM A. GHANEM also known as

ABDUL KARIM GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and

"Hamody" between the 17th day of July, A.D. 1995 and the 7th day of August, A.D.

1995, in the County and State aforesaid, did then and there unlawfully and with the intent to

injure, defraud, or deceive, did present or cause to be presented  or prepare or make

with the intent to be presented a written or oral statement, to-wit:  a repair estimate by Tim

Rzepka of Tri-County Adjustment, Inc. on behalf of State Farm Mutual Automobile

Insurance Company dated July 22, 1995 and/or a supplemental repair estimate by Tim

Rzepka of Tri-County Adjustment, Inc. on behalf of State Farm dated July 31, 1995  that

was intended to be presented to State Farm Mutual Automobile Insurance Company in

connection with or in support of a claim for payment or other benefits pursuant to an

insurance policy issued by State Farm Mutual Automobile Insurance Company to Raymond

Hsun, the insured, knowing that such statement contained false or misleading information

concerning a fact or thing material to such claim, to-wit: parts were bid for replacement and

labor and it was found that parts were repaired, not replaced, and/or no work was

performed for parts paid for, and/or labor charged was not needed, and/or labor bid was not

performed, and/or damage was done to the automobile which was not the result of the

accident the insured had and occurred while his automobile was in the custody of the

defendants, and/or the transmission was bid for replacement with a quality recycled part

and the same was not performed and the defendants damaged the original transmission

and the original transmission was never replaced as bid, contrary to Sections 817.234(1)(a)

1,2,3, Florida Statutes, (L2),

COUNT 46

## GRAND THEFT
### (State Farm Mutual Automobile Insurance Company)
### Raymond Hsun-1984 Mercedes 380SL

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and

"Hamody" between the 17th day of July, A.D. 1995 and the 7th day of August, A.D.

1995, in the County and State aforesaid, did then and there unlawfully and knowingly

obtain, or endeavor to obtain the property of State Farm Mutual Automobile Insurance

Company and/or Raymond Hsun, to-wit: money, of the value of three hundred dollars

($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property

being more particularly of a value between $10,000.00 or more, but less than $20,000.00,

with the intent to either temporarily or permanently deprive State Farm Mutual Automobile

Insurance Company and/or Raymond Hsun of the right to the property or benefit therefrom,

or to appropriate the property to their own use or the use of any person not entitled thereto,

contrary to Sections 812.014(1)(a), 812.014(1)(b), and 812.014(2)(c)3, Florida Statutes,

(L4),

## COUNT 47
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Allstate Insurance Company-Defendant Mohamad Hamze-1988 BMW 735 I)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED

HUSSEIN GHANEM and MOHAMAD HAMZE and ▮▮▮▮▮▮▮ between the 23rd

day of July, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995

in the County and State aforesaid, did then and there unlawfully and with the intent to injure,

defraud, or deceive, did present or cause to be presented or prepare or make with the

intent to be presented a written or oral statement, to-wit: an insurance estimate performed

on August 2, 1995, and dated on August 2, 1995 by Tim Patient, an adjuster for Allstate

Insurance Company, and/or a check that was prepared being number 91547700 dated

August 8, 1995 drawn on the account of Allstate Insurance Company in the sum of

$9,928.00 and/or a claims representative inspection report dated August 2, 1995 prepared

by Tim Patient and/or a false rental car invoice number 06862 that was intended to be

presented to Allstate Insurance Company in connection with or in support of a claim for

payment or other benefits pursuant to an insurance policy issued by Allstate Insurance

Company, to Mohamad Hamze, the insured, knowing that such statement contained false

or misleading information concerning a fact or thing material to such claim, to-wit: parts bid

new but repaired instead of replaced, and/or parts bid for replacement and instead the

original parts were found thereon, and/or labor paid for in which parts were not replaced as

ordered, and/or labor was paid for when no repairs were performed, and/or a false rental

car invoice, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

<div align="center">COUNT 48

GRAND THEFT

(Allstate Insurance Company- Defendant Hamze-1988 BMW 735 I)</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, and MICHAEL H. GHANEM, also known as MOHAMED

HUSSEIN GHANEM and MOHAMAD HAMZE and ▮▮▮▮▮▮▮ between the 23rd

day of July, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995

in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or

endeavor to obtain the property of Allstate Insurance Company , to-wit: money, of the value

of three hundred dollars ($300.00) or more, but less than twenty thousand dollars

($20,000.00), with said property being more particularly of a value between $5,000.00 or

more, but less than $10,000.00, with the intent to either temporarily or permanently deprive

Allstate Insurance Company of the right to the property or a benefit therefrom, or to

appropriate the property to their own use or the use of any person not entitled thereto,

contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)2, Florida Statutes (L3),

<div align="center">

**COUNT 49**
**INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM**
**(Allstate Insurance Company-Det. Maria Polo-1993 BMW 325 I)**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as**

**ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED**

**HUSSEIN GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and**

**"Hamody" and MOHAMAD HAMZE and ▮▮▮▮▮▮▮ between the 3rd day of**

**August , A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in**

the County and State aforesaid, did then and there unlawfully and with the intent to injure,

defraud, or deceive, did present or cause to be presented or prepare or make with the

intent to be presented a written or oral statement, to-wit: an insurance estimate performed

on August 7, 1995, and dated on August 7, 1995 by the defendant, ▮▮▮▮▮▮▮ as an

adjuster for Allstate Insurance Company, and/or a check that was prepared by defendant

▮▮▮▮▮▮ being number 91547937  dated August 8, 1995 drawn on the account of

Allstate  Insurance Company in the sum of  $15,008.69 and/or various conversations with

Det. Maria Polo of the Broward Sheriff's Office, that was intended to be presented to

Allstate  Insurance Company  in connection with or in support of a claim for payment or

other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to

Maria Sanchez, the insured, knowing that such statement contained false or misleading

information concerning a fact or thing material to such claim, to-wit: parts bid new but

repaired instead of replaced, and/or parts bid for replacement and instead the original parts

were found thereon, and/or labor paid for in which parts were not replaced as ordered or

was not needed as there was no damage thereto, and/or labor was paid for when no

repairs were performed and /or parts were bid for replacement and/or repair but there was

no damage whatsoever, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 50
## GRAND THEFT
### (Allstate Insurance Company- Det. Maria Polo-1993 BMW 325 I)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, that **KARIM A. GHANEM, also known**

**as ABDUL KARIM GHANEM, and MICHAEL H. GHANEM, also known as MOHAMED**

**HUSSEIN GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and**

**"Hamody", and MOHAMAD HAMZE and** ▇▇▇▇▇▇ between the 3rd day of

August , A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in

the County and State aforesaid, did then and there unlawfully and knowingly obtain, or

endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value

of three hundred dollars ($300.00) or more, but less than twenty thousand dollars

($20,000.00), with said property being more particularly of a value between $10,000.00 or

more, but less than $20,000.00, with the intent to either temporarily or permanently deprive

Allstate Insurance Company of the right to the property or a benefit therefrom, or to

appropriate the property to their own use or the use of any person not entitled thereto,

contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)3, Florida Statutes (L4),

## COUNT 51
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Allstate Indemnity Company-Russell Provencial-1988 Sterling)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as**

**ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and**

**"Hamody", and MOHAMAD HAMZE between the 4th day of AUGUST, A.D. 1995,**

continuing to on or about the 18th day of September, A.D. 1995 in the County and State

aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did

present or cause to be presented or prepare or make with the intent to be presented a

written or oral statement, to-wit: an insurance estimate performed on August 23,1995, and

dated on August 23, 1995 by Julie Demers, an adjuster for Allstate Insurance Company,

and/or a claims representative inspection report dated August 23,1995 that was intended to

be presented to Allstate Insurance Company in connection with or in support of a claim for

payment or other benefits pursuant to an insurance policy issued by Allstate Insurance

Company, to Russell Provencial, the insured, knowing that such statement contained false

or misleading information concerning a fact or thing material to such claim, to-wit: damage

was created by the defendants to the 1988 Sterling motor vehicle to the extent that Allstate

Insurance Company declared the motor vehicle a total loss, contrary to Sections

817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 52
## GRAND THEFT
### (Allstate Indemnity Company- Russell Provencial-1988 Sterling)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and

"Hamody", and MOHAMAD HAMZE between the 4th day of AUGUST, A.D. 1995,

continuing to on or about the 18th day of September, A.D. 1995, in the County and State

aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the

property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars

($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property

being more particularly of a value between $300.00 or more, but less than $5,000.00, with

the intent to either temporarily or permanently deprive Allstate Insurance Company of the

right to the property or a benefit therefrom, or to appropriate the property to their own use or

the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b)

and 812.014(2)(c)1, Florida Statutes, (L2),

## COUNT 53
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Progressive Southeastern Insurance Company)
### Jane Centorrino-1986 Jaguar XJ6

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and

"Hamody", and MOHAMED HAMZE between the 10th day of August, A.D. 1995,

continuing to on or about the 23rd day of August, A.D. 1995, in the County and State

aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive,

did present or cause to be presented or prepare or make with the intent to be

presented a written or oral statement, to-wit: an insurance estimate performed on August

15, 1995, and dated on August 16, 1995 by Julie Loizou, as an adjuster for Progressive

Southeastern Insurance Company, and/or conversations among the defendants and

another that was intended to be presented to Progressive Southeastern Insurance

Company in connection with or in support of a claim for payment or other benefits pursuant

to an insurance policy issued by Progressive Southeastern Insurance Company to Jane

Centorrino and/or Vincent Centorrino, the insured, knowing that such statement contained

false or misleading information concerning a fact or thing material to such claim, to-wit: all

defendants caused false damages to the said motor vehicle, thus inflating the claim by

hitting the vehicle with a 2x4 board; crow-bar, wood pliers, a grinder and a sledge hammer;

so as to otherwise inflate the damages and/or false damages to the front and back of the

vehicle were caused by the defendants which were not accident related and/or false

damages were created to the rear panel, floor and hood, contrary to Sections 817.234(1)(a)

1,2,3, Florida Statutes, (L2),

## COUNT 54
## GRAND THEFT
### (Progressive Southeastern Insurance Company)
### Jane Centorrino-1986 Jaguar XJ6

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM, and MOHAMED ALI GHANEM, also known as "Mike" and

"Hamody", and MOHAMED HAMZE between the 11th day of August, A.D. 1995,

continuing to on or about the 23rd day of August, A.D. 1995, in the County and State

aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the

property of Progressive Southeastern Insurance Company and/or Jane Centorrino, to-wit:

money , of the value of three hundred dollars ($300.00) or more, but less than twenty

thousand dollars ($20,000.00), with said property being more particularly of a value

between ten thousand dollars ($10,000.00) or more, but less than twenty thousand dollars

($20,000.00), with the intent to either temporarily or permanently deprive Progressive

Southeastern Insurance Company and/or Jane Centorrino of the right to the property or

benefit therefrom, or to appropriate the property to their own use or the use of any person

not entitled thereto, knowing or having reason to know that said property was stolen,

contrary to Sections  812.014(1)(a),  812.014(1)(b) and 812.014(2)(c)3., Florida Statutes,

(L4),

## COUNT 55
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Allstate Insurance Company-Det. Paula Hall-1993 Lexus)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED

HUSSEIN GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and

"Hamody" and█████████████between the 5th day of October, A.D. 1995,

continuing to on or about the 19th day of December, A.D. 1995 in the County and State

aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did

present or cause to be presented or prepare or make with the intent to be presented a

written or oral statement, to-wit: an insurance estimate performed on October 12, 1995, and

dated on October 16, 1995 by the defendant, █████████ as an adjuster for Allstate

Insurance Company, and/or a check that was prepared by defendant████████being

number 92420171 dated October 16, 1995 drawn on the account of Allstate Insurance

Company in the sum of $11,397.05 and/or various conversations between Det. Paula Hall

of the Sunrise Police Department, along with Lt. Rene Robes of the Broward Sheriff's Office

that was intended to be presented to Allstate Insurance Company in connection with or in

support of a claim for payment or other benefits pursuant to an insurance policy issued by

Allstate Insurance Company to Paula Stephenson, the insured, knowing that such

statement contained false or misleading information concerning a fact or thing material to

such claim, to-wit: parts bid new but repaired instead of replaced, and/or parts bid for

replacement and instead the original parts were found thereon, and/or labor paid for in

which parts were not replaced as ordered or was not needed as there was no damage

thereto, and/or labor was paid for when no repairs were performed and /or parts were bid

for replacement and/or repair but there was no damage whatsoever, contrary to Sections

817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 56
## GRAND THEFT
### (Allstate Insurance Company- Det. Paula Hall-1993 Lexus)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, that KARIM A. GHANEM, also known

as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED

HUSSEIN GHANEM and MOHAMED ALI GHANEM, also known as "Mike" and

"Hamody" and ███████████ between the 5th day of October, A.D. 1995,

continuing to on or about the 19th day of December, A.D. 1995 in the County and State

aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the

property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars

($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property

being more particularly of a value between $5,000.00 or more, but less than $10,000.00,

with the intent to either temporarily or permanently deprive Allstate Insurance Company of

the right to the property or a benefit therefrom, or to appropriate the property to their own

use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a),

812.014(1)(b) and 812.014(2)(c)2, Florida Statutes, (L3),

### COUNT 57
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
(USAA Property and Casualty Insurance Company)
Det. Audrey Collins-1993 Acura Integra

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as

ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED

HUSSEIN GHANEM beginning on the 9th day of October, A.D. 1995 and continuing to

on or about the 19th day of December, A.D. 1995, in the County and State aforesaid, did

then and there unlawfully and with the intent to injure, defraud, or deceive, did present or

cause to be presented or prepare or make with the intent to be presented a written or

oral statement, to-wit: a conversation of October 9,1995 between the defendant and Det.

Audrey Collins of the Sunrise Police Department and/or a conversation of October 11,1995

between the defendant and Det. Audrey Collins of the Sunrise Police Department and/or an

estimate dated October 13, 1995 inspected and prepared by Steve R. Garner, a forensic

analyst for the USAA Property and Casualty Insurance Company on a 1993 Acura Integra

motor vehicle and/or a check prepared by the said Steve R. Garner aforesaid to the order of

Audrey Fox being check number 01597820 drawn on the account of USAA Property and Casualty Insurance Company that was intended to be presented to USAA Property and Casualty Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by USAA Property and Casualty Insurance Company to Audrey Fox, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit, parts bid new but repaired instead of replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered or was not needed as there was no damage thereto, and/or labor was paid for when no repairs were performed and/or repairs performed when here was no damage thereto, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

<div align="center">

**COUNT 58**

**GRAND THEFT**

**(USAA Property and Casualty Insurance Company)**
**Det. Audrey Collins-1993 Acura Integra**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM between the 9th day of October, A.D. 1995 and the 19th day of December, A.D. 1995** in the County and State aforesaid, did then and there unlawfully and knowingly obtain or endeavor to obtain the property of USAA Property and Casualty Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between of $5,000.00 or more, but less than $10,000.00, with intent to either temporarily or permanently deprive USAA Property and Casualty Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to

his own use of the use of any person not entitled thereto, contrary to Sections 812.014(l)(a), 812.014(1)(b), and 812.014(2)(c)2, Florida Statutes, (L3),

## COUNT 59
## CHEATING
**(USAA Property and Casualty Insurance Company-Steve R. Garner)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM, on or about the 13th day of October, A.D. 1995**, in the County and State aforesaid, did then and there unlawfully commit gross fraud or cheat at common law, to-wit: defendant did knowingly present eight (8) one hundred dollar bills U.S. currency($800.00) to Steve R. Garner, an appraiser for USAA Property and Casualty Insurance Company, thereby using the U.S. currency as a false token to induce the said Steve R. Garner to prepare an estimate for false repairs to a motor vehicle, contrary to the common law and Section 817.29 of the Florida Statutes, (L1),

## COUNT 60
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
**(Allstate Insurance Company-Vincenzo De Carla-1994 Isuzu Trooper)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM between the 18th day of October, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995** in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on October 24, 1995, and dated on October 24, 1995 by David O'Meara, an adjuster for Allstate Insurance Company, and/or a check that was prepared by David O'Meara being number 92420362 dated October 24,

1995 drawn on the account of Allstate Insurance Company in the sum of $5423.40 that was intended to be presented to Allstate Insurance Company in connection with or in support of a claim for payment or other benefits pursuant to an insurance policy issued by Allstate Insurance Company, to Vincenzo De Caria, the insured, knowing that such statement contained false or misleading information concerning a fact or thing material to such claim, to-wit: parts bid new were not replaced, and/or parts bid for replacement and instead the original parts were found thereon, and/or labor paid for in which parts were not replaced as ordered, and/or labor was paid for when no repairs were performed, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

## COUNT 61
## GRAND THEFT
### (Allstate Insurance Company-Vincenzo De Caria-1994 Isuzu Trooper)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that, KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED HUSSEIN GHANEM between the 18th day of October, A.D. 1995, continuing to on or about the 19th day of December, A.D. 1995 in the County and State aforesaid and, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company and/or Vincenzo De Caria, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company and/or Vincenzo De Caria of the right to the property or a benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes (L2),

## COUNT 62
## INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Allstate Insurance Company-Sgt. Jim Skellion-1995 Mitsubishi Montero)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that ██████████ beginning on the

5th day of October, A.D. 1995, continuing to on or about the 19th day of October, A.D.

1995 in Broward and Palm Beach Counties of the State aforesaid, did then and there

unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be

presented or prepare or make with the intent to be presented a written or oral statement,

to-wit: an insurance estimate performed on October 12, 1995, and dated on October 12,

1995 by the defendant, ████████, as an adjustor for Allstate Insurance Company and/or

a claim representative inspection report dated October 12, 1995 prepared by the said

defendant ████████ and/or a check that was prepared by defendant ████████ being

number 92420304  dated October 13, 1995 drawn on the account of Allstate Insurance

Company in the sum of $9,669.18 and/or various conversations between Sgt. Jim Skellion

of the Sunrise Police Department and the said defendant, ████████ and/or

conversations between the said defendant, ████████ and one Michael Ghrayeb that

was intended to be presented to Allstate  Insurance Company  in connection with or in

support of a claim for payment or other benefits pursuant to an insurance policy issued by

Allstate Insurance Company, to Jim Burke, the insured, knowing that such statement

contained false or misleading information concerning a fact or thing material to such claim,

to-wit: parts bid new but repaired instead of replaced, and/or parts bid for replacement and

instead the original parts were found thereon, and/or labor paid for in which parts were not

replaced as ordered or was not needed as there was no damage thereto, and/or labor was

paid for when no repairs were performed and /or parts were bid for replacement and/or

repair but there was no damage whatsoever and/or the estimate was false and the said

defendant accepted money, contrary to Sections 817.234(1)(a) 1,2,3, Florida Statutes, (L2),

**COUNT 63**
~~**GRAND THEFT**~~
**(Allstate Insurance Company-Sgt. Jim Skellion-1995 Mitsubishi Montero)**

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that, that ████████████ between the 5th day of October, A.D. 1995, continuing to on or about the 19th day of October, A.D. 1995 in the County and State aforesaid, did then and there unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Insurance Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less than twenty thousand dollars ($20,000.00), with said property being more particularly of a value between $300.00 or more, but less than $5,000.00, with the intent to either temporarily or permanently deprive Allstate Insurance Company of the right to the property or a benefit therefrom, or to appropriate the property to his own use or the use of any person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c)1, Florida Statutes (L2),

## COUNT 64
### INSURANCE FRAUD BY FALSE OR FRAUDULENT CLAIM
### (Allstate Indemnity Company-Noor Albandakji-1985 BMW 635)

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that KARIM A. GHANEM, also known as ABDUL KARIM GHANEM and ████████████ and another known to the State Attorney not charged herein, between the 1st day of May, A.D. 1994, continuing to on or about the 4th day of May, A.D. 1994, in the County and State aforesaid, did then and there unlawfully and with the intent to injure, defraud, or deceive, did present or cause to be presented or prepare or make with the intent to be presented a written or oral statement, to-wit: an insurance estimate performed on May 4, 1994, and dated on May 4, 1994 by the defendant, ████████ as an adjuster for Allstate Indemnity Company and/or a check that was prepared by defendant, ████████ being number 93050228 dated May 4, 1994 drawn on the account of Allstate Indemnity Company in the sum of $7549.99 and/or a

claims representative inspection report dated May 4, 1994 prepared by the said defendant,

███████ that was intended to be presented to Allstate Indemnity Company in

connection with or in support of a claim for payment or other benefits pursuant to an

insurance policy issued by Allstate Indemnity Company, to Noor Albandakji, the insured,

knowing that such statement contained false or misleading information concerning a fact or

thing material to such claim, to-wit: parts bid to be rebuilt and upon inspection the original

part was found thereon and/or part bid for replacement and instead the original part were

found thereon, and/or labor paid for in which parts were not installed as ordered, and/or

labor was paid for when no repairs were performed and/or ███████ accepted $1000.00

for the fictitious estimate as arranged by Karim A. Ghanem, contrary to Sections

817.234(1)(a) 1,2,3, Florida Statutes, (L2),

<div align="center">

**COUNT 65**

~~**GRAND THEFT**~~

**(Allstate Indemnity Company-Noor Albandakji-1985 BMW 635)**

</div>

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that, **KARIM A. GHANEM, also known as**

**ABDUL KARIM GHANEM and** ███████ and another known to the State

Attorney not charged herein, **between the 1ˢᵗ day of May, A.D. 1994, continuing to on or**

**about the 4ᵗʰ day of May, A.D. 1995 in the County and State aforesaid,** did then and there

unlawfully and knowingly obtain, or endeavor to obtain the property of Allstate Indemnity

Company, to-wit: money, of the value of three hundred dollars ($300.00) or more, but less

than twenty thousand dollars ($20,000.00), with said property being more particularly of a

value between $5,000.00 or more, but less than $10,000.00, with the intent to either

temporarily or permanently deprive Allstate Indemnity Company of the right to the property

or a benefit therefrom, or to appropriate the property to their own use or the use of any

person not entitled thereto, contrary to Sections 812.014(1)(a), 812.014(1)(b) and

812.014(2)(c)2, Florida Statutes, (L3),

## COUNT 66
## Tampering with Physical Evidence

AND MICHAEL J. SATZ, State Attorney of the Seventeenth Judicial Circuit of Florida, as

Prosecuting Attorney for the State of Florida in the County of Broward, by and through his

undersigned Assistant State Attorney, charges that **KARIM A. GHANEM, also known as**

**ABDUL KARIM GHANEM and MICHAEL H. GHANEM, also known as MOHAMED**

**HUSSEIN GHANEM** from an unknown date but up to and including the 19th day of

**December, A.D. 1995** in Broward and Palm Beach counties of the aforesaid State, did then

and there alter, destroy, conceal or remove any record, document, or thing, to-wit:

automotive body shop files and/or checks from customers and insurance companies and/or

copies of drivers license and/or documents relating to services performed for customers

having automotive body/mechanical repairs, with the purpose to impair its verity or

availability in a criminal trial or proceeding or investigation by a duly constituted prosecuting

authority, law enforcement agency, grand jury or legislative committee of this state, to-wit:

law enforcement agency, knowing that said proceeding or investigation was pending or was

about to be instituted, contrary to Sections 918.13 (1)(a) and (2), Florida Statutes, (L3).

96 OCT -9 PM 3: 43

STATE OF FLORIDA vs.    KARIM A. GHANEM, A/K/A ABDUL K. GHANEM,
MICHAEL H. GHANEM, A/K/A MOHAMED HUSSEIN GHANEM, ~~~~~~ ~~~~ COUNTY COURT
ABBAS GHANEM, A/K/A ABOJO GHANEM,    BRO~~~~ ~~~TY, FL.
MOHAMED ALI GHANEM, A/K/A "Mike", "Hamody",
MOHAMAD HAMZE,

ROBERT ZENO,                                          INFORMATION, Page

CHV/fef/100996

COUNTY OF BROWARD
STATE OF FLORIDA

    Personally appeared before me _____EDWARD J. WALSH_____, duly
appointed as an Assistant State Attorney of the 17th Judicial Circuit of
Florida by MICHAEL J. SATZ, State Attorney of said Circuit and Prosecuting
Attorney for the State of Florida in the County of Broward, who being first
duly sworn, certifies and says that testimony has been received under oath
from the material witness or witnesses for the offense(s), and the
allegations as set forth in the foregoing Information would constitute the
offense(s) charged, and that this prosecution is instituted in good faith.

                                    _____
                                    Assistant State Attorney, 17th Judicial Circuit of Florida

SWORN TO AND SUBSCRIBED before me this _9th_ day of _October_, A.D. 19_96_

          ROBERT E. LOCKWOOD

          Clerk of the Circuit Court, 17th Judicial Circuit,
          Broward County, Florida

          By _____
             Deputy Clerk

To the within Information, Defendant pleaded _____.

          ROBERT E. LOCKWOOD

          Clerk of the Circuit Court, 17th Judicial Circuit,
          Broward County, Florida

          By _____
             Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 95-6253-CR-RYSKAMP |
| | ) | |
| v. | ) | |
| | ) | |
| KARIM GHANEM, | ) | |
| JEFFREY EGLER, | ) | |
| DARRELL A. HOLMES, | ) | |
| MOHAMAD HAMZE, | ) | |
| MOHAMED ALI GHANEM, | ) | |
| and ADEL JARDE. | ) | |
| _____ | ) | |



### ORDER FOR DISMISSAL

Pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure and by leave of the Court endorsed hereon the United States Attorney for the Southern District of Florida hereby dismisses the indictment against all defendants named in the indictment without prejudice.

_____
WILLIAM X. KEEFER
UNITED STATES ATTORNEY

Leave of Court is granted for the filing of the foregoing dismissal on this ____30____ day of August, 1996.

_____
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

cc:  U.S. Marshals
     AUSA H. Lloyd King, Jr.
     Fred Haddad, Esq.
     Sharon Kegerreis, Esq.
     Johnny McCray, Esq.
     Michael Hursey, Esq.
     Maurice Graham, Esq.
     Leonard Fenn, Esq.

Financial
U.S. Pre-Trial Svcs



IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA


ALLSTATE INSURANCE COMPANY,

    Plaintiff,

vs.                      CASE NO.: 99-13453

KARIM A. GHANEM, a/k/a ABDUL
KARIM GHANEM; DEERFIELD
FOREIGN CARS UNLIMITED,
INC., a Florida corporation;
MICHAEL H. GHANEM,
a/k/a MOHAMED HUSSEIN GHANEM;
FOREIGN CARS CONTINENTAL,
INC.; a Florida corporation;
ABBAS GHANEM a/k/a ABOJO GHANEM;
MOHAMED ALI GHANEM, a/k/a MIKE and
HAMODY; MOHAMAD HAMZE; JEFFREY
EGLER; DARRELL HOLMES; and ROBERT
ZENO,

    Defendants.
_____/

AMENDED

SUMMONS:
PERSONAL SERVICE
ON AN INDIVIDUAL

<u>IMPORTANT</u>

TO:   Mohamed Ali Ghanem
      a/k/a Mike
      a/k/a Hamody
      1256 S. Military Trail #926
      Deerfield Beach, Florida 33442

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal

EXHIBIT E

requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/ Plaintiff's Attorney" named below:

In accordance with the Americans with Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact the individual or agency sending notice not later than seven (7) days prior to the proceeding at the address given on the notice. For hearing impaired individuals: Telecommunications Device for the Deaf (TDD): 1-800-955-8771 or Florida Relay Service: 1-800-955-8770.

Joshua D. Lerner
Florida Bar No. 0455067
RUMBERGER, KIRK & CALDWELL
A Professional Association
Brickell Bayview Centre
Suite 3000
80 S.W. 8th Street (33130-3047)
Post Office Box 01-9041
Miami, Florida 33101
Telephone: (305) 358-5577
Telecopier: (305) 371-7580

Attorneys for Plaintiff

THE STATE OF FLORIDA:

To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit on the above-named defendant.

DATED on _____ OCT 2 2 1999 _____, 1999.

CLERK OF THE CIRCUIT COURT
Robert E. Lockwood
As Clerk of the court

By:_____
    As Deputy Clerk

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales.    Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faundra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

ALLSTATE INSURANCE COMPANY,

    Plaintiff,

vs.                           CASE NO.: 99-013453 CACE (25)

KARIM A. GHANEM, a/k/a ABDUL
KARIM GHANEM; DEERFIELD
FOREIGN CARS UNLIMITED,
INC., a Florida corporation;
MICHAEL H. GHANEM,
a/k/a MOHAMED HUSSEIN GHANEM;
FOREIGN CARS CONTINENTAL,
INC.; a Florida corporation;
ABBAS GHANEM a/k/a ABOJO GHANEM;
MOHAMED ALI GHANEM, a/k/a MIKE and
HAMODY; MOHAMAD HAMZE; JEFFREY
EGLER; DARRELL HOLMES; and ROBERT
ZENO,

    Defendants.

_____/

A TRUE COPY.
ROBERT E. LOCKWOOD

OCT 2 2 1999

### AMENDED COMPLAINT

Plaintiff ALLSTATE INSURANCE COMPANY sues defendants and states:

### The Parties

1.    Plaintiff ALLSTATE INSURANCE COMPANY is a corporation organized under the laws of Illinois. ALLSTATE is a property and casualty insurer doing business in many states. Its business activities affect interstate commerce.

2.    Defendant KARIM A. GHANEM a/k/a ABDUL KARIM GHANEM is an individual residing in Palm Beach County, Florida, is sui juris, and at all material times, is president and director of defendant DEERFIELD FOREIGN CARS UNLIMITED, INC.

maintaining managerial and operational control over the activities of DEERFIELD FOREIGN

CARS UNLIMITED, INC. and its employees.

      3.     MICHAEL H. GHANEM a/k/a MOHAMED HUSSEIN GHANEM is an

individual residing in Palm Beach County, Florida, is sui juris, and, at all material times, is

president and director of defendant FOREIGN CARS CONTINENTAL, INC. maintaining

managerial and operational control over the activities of FOREIGN CARS CONTINENTAL,

INC. and its employees.

      4.     ABBAS GHANEM a/k/a ABOJO GHANEM is a resident of Palm Beach County,

Florida, is sui juris and, at all material times, was employed by defendant FOREIGN CARS

CONTINENTAL, INC.

      5.     Defendant MOHAMED ALI GHANEM, a/k/a MIKE and HAMODY is a resident

of Broward County, Florida, is sui juris, and, at all material times, was employed by defendant

DEERFIELD FOREIGN CARS UNLIMITED, INC.

      6.     Defendant MOHAMAD HAMZE is a resident of Palm Beach County, Florida, is

sui juris, and, at all material times, is employed by defendant DEERFIELD FOREIGN CARS

UNLIMITED, INC.

      7.     Defendant JEFFREY EGLER is a resident of Palm Beach County, Florida, is sui

juris, and, at all material times was employed by plaintiff ALLSTATE as a field adjuster.

      8.     Defendant DARRELL HOLMES is a resident of Broward County, Florida, is sui

juris, and, at all material times was employed by plaintiff ALLSTATE as a field adjuster.

      9.     Defendant ROBERT ZENO is a resident of Martin County, Florida, is sui juris,

and, at all material times was employed by plaintiff ALLSTATE as a field adjuster.

2

10.    Defendant FOREIGN CARS CONTINENTAL, INC. is a corporation organized under the laws of Florida, the principal place of business of which is located at 70 S.W. 10th Street, Deerfield Beach, Broward County, Florida 33441.

11.    Defendant DEERFIELD FOREIGN CARS UNLIMITED, INC. is a corporation organized under the laws of Florida, the principal place of business of which is located at 176 S.W. 14 Court, Deerfield Beach, Broward County, Florida 33441.

### Jurisdiction and Venue

12.    This is an action for damages in excess of the jurisdictional amount of this court.

13.    Venue is proper in Broward County as the cause of action accrued here and one or more of the defendants reside or does business in this county.

14.    Plaintiff ALLSTATE brings this action against defendants for violation of the federal and Florida RICO statutes; for civil theft, deceptive and unfair trade practices, insurance fraud; for interference with contractual relations, breach of fiduciary duty, fraud and conspiracy. The claims arise from defendants' scheme to fraudulently obtain money from ALLSTATE through the submission of false claims estimates for repairs on automobiles owned by ALLSTATE insureds. The defendants accomplished their scheme through the participation of ALLSTATE field adjusters EGLER, HOLMES and ZENO.

15.    The fraudulent acts committed by the defendants as part of their transactions with ALLSTATE are not isolated, and ALLSTATE is not the only insurance company that is a victim of their scheme.

### Pattern of Racketeering Activity

16.1    In July 1993, defendant MOHAMAD HAMZE with the intent to deceive caused a written estimate dated July 15, 1993 and/or Claims Representative Inspection Report prepared by

3

Anthony Merluccio that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to MOHAMAD HAMZE, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: a new hood panel was written to be replaced but was not.

16.2    In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $4,510.59 to the order of MOHAMED HAMZE.

16.3    Defendant MOHAMAD HAMZE conducted himself as alleged in paragraph 16.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

16.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Hamze was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas and to ALLSTATE's electronic records in Northbrook, Illinois

4

Further, on the date of the written claims estimate, defendant HOLMES transmitted electronically by wire the results of his inspection to the Audatex computer based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

17.1   In April 1993, defendants MOHAMAD HAMZE, KARIM GHANEM, DEERFIELD FOREIGN CARS UNLIMITED and DARRELL HOLMES with the intent to deceive caused a written estimate dated April 28, 1993, a supplemental written estimate dated April 30, 1993 and/or Claims Representative Inspection Reports prepared by DARRELL HOLMES that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to MOHAMAD HAMZE, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit:  interior seats, instruments, panels, tires and hub caps were written to be replaced but were not.

17.2   In reliance upon such written estimates and/or Claims Representative Inspection Reports, ALLSTATE issued its checks in the sum of $9401.00 and $4580.81 to the order of MOHAMED HAMZE and DEERFIELD FOREIGN CARS UNLIMITED.

17.3   Defendants MOHAMAD HAMZE, KARIM GHANEM, DEERFIELD FOREIGN CARS UNLIMITED and DARRELL HOLMES conducted theimselves as alleged in paragraph 17.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the

5

property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

17.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Hamze was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP-Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant HOLMES transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate, which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

18.1    In October 1993, defendants DARRELL HOLMES and MOHAMAD HAMZE with the intent to deceive caused a written estimate dated November 2, 1993    and/or Claims

Representative Inspection Report prepared by DARRELL HOLMES that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to MOHAMAD HAMZE, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: a rebuilt engine was written to be installed but was not.

18.2    In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $9,914.00.

18.3    Defendants DARRELL HOLMES and MOHAMAD HAMZE conducted themselves as alleged in paragraph 18.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

18.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Hamze was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor,

Michigan and Gonway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois.
Further, on the date of the written claims estimate, defendant HOLMES transmitted electronically
by wire the results of his inspection to the Audatex computer-based automotive collision estimating
system in Conway, Arkansas. The Audatex system then generated the estimate which was
transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was
printed in written form. This transmission of information, writings, signs and/or signals
electronically by means of wire in interstate commerce as described here constitutes a violation of
18 U.S.C. § 1343.

19.1    In May 1994, defendants JEFFREY EGLER, KARIM A. GHANEM and
DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate
dated May 4, 1994 prepared by JEFFREY EGLER and/or Claims Representative Inspection Report
dated May 4, 1994 prepared by JEFFREY EGLER that was intended to be presented to
ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by
ALLSTATE to Nour Albandakji, the insured, knowing that such statement contained false and
misleading information concerning a fact or thing material to such claim, in violation of sections
817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: that the accident had been intentionally staged and
then additional damage intentionally caused for the purpose of making a false insurance claim.

19.2    In reliance upon such written estimate and/or Claims Representative Inspection
Report, ALLSTATE issued its check in the sum of $7,549.99.

19.3    Defendants JEFFREY EGLER, KARIM A. GHANEM and DEERFIELD
FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 19.1 above for the
purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of
ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to

8

either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

19.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Albandakji was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

20.1    In June 1994, defendants JEFFREY EGLER, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated June 24, 1994 and supplemental estimate prepared by JEFFREY EGLER and/or Claims

9

Representative Inspection Report that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Tammy L. Pyle, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the right fender inner panel assembly was written to be replaced but was repaired; the following parts were written for replacement but were not replaced: radiator, right front strut assembly, windshield washer assembly, right front fender, transmission case/fluid/gasket, alternator, alternator pulley.

20.2    In reliance upon such written estimate, supplemental estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $9,562.10 and its check in the sum $964.79.

20.3    Defendants JEFFREY EGLER, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 20.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

20.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of a wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or

10

signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Pyle was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP-Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. The transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

21.1    In June or July 1994, defendants JEFFREY EGLER and MOHAMAD HAMZE with the intent to deceive caused a written estimate dated on or about July 1, 1994 and/or Claims Representative Inspection Report prepared by JEFFREY EGLER that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to MOHAMAD HAMZE, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: battery, stereo, cd changer, tailights, five wheels and tires, wood trim set, and other parts were written to be replaced but were not.

11

21.2    In reliance upon such written estimates and/or Claims Representative Inspection Reports, ALLSTATE issued its check in the sum of $7903.07 to the order of MOHAMED HAMZE and Redline BMW Performance, Inc.

21.3    Defendants JEFFREY EGLER and MOHAMAD HAMZE conducted themselves as alleged in paragraph 21.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

21.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce.  Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE.  Specifically, at the time the claim of ALLSTATE insured Hamze was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan, and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of this inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was

12

printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

22.1   In August 1994, defendants ROBERT ZENO, MICHAEL GHANEM, ABBAS GHANEM and FOREIGN CARS CONTINENTAL with the intent to deceive caused a written estimate dated August 24, 1994 and supplemental estimate and/or Claims Representative Inspection Report prepared by ROBERT ZENO that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Peter Pietanza, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim,  in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit:  the following parts were written to be replaced that were not damaged: front suspension cross member, Left Front lower control arm, transmission; the following parts were written to be replaced with new parts but used parts were installed:  radio, center faceplate, center console, AC control unit, jack assembly, tool kit, air breather assembly, cruise control kit, ECU computer.

22.2   In reliance upon such written estimate, supplemental estimate and photographs, ALLSTATE issued its check in the sum of $9,684.20 and its check in the sum $3,398.94.

22.3   Defendants MICHAEL H. GHANEM, ABBAS GHANEM, FOREIGN CARS CONTINENTAL and ROBERT ZENO conducted themselves as alleged in paragraph 22.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not

13

entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

22.4  In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information would be transmitted by means of wire in interstate commerce for the purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Pietanza was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant ZENO transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information by means of wire in interstate commerce constitutes a violation of 18 U.S.C. § 1343.

22.5  In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information and/or other matter to be sent or delivered by the United States Postal Service or other service. Alternatively, defendants knew or it was reasonably foreseeable to them that information and/or other matter would be sent or delivered by the United States Postal Service or other service for the purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, on August 10,

1994, ALLSTATE mailed a request to the Boca Raton Police Department for the official police report on the incident giving rise to Peter Pietanza's claim referred to in paragraph 23.1 above. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

23.1    In September 1994, defendants ROBERT ZENO, MICHAEL GHANEM, ABBAS GHANEM and FOREIGN CARS CONTINENTAL with the intent to deceive caused a written estimate dated August 29, 1994 and a supplemental estimate dated September 21, 1994 prepared by ROBERT ZENO and/or Claims Representative Inspection Report prepared by ROBERT ZENO that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Liliane Teixeira, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written parts to be replaced with salvage parts that were not replaced: front body section, radiator support, right fender apron,left fender apron; on the supplemental estimate defendant ZENO represented the repairs had been made as written on the original estimate.

23.2    In reliance upon such written estimate, supplemental estimate and photographs, ALLSTATE issued its check in the sum of $5,591.32and its check in the sum $1,216.70.

23.3    Defendants MICHAEL H. GHANEM, ABBAS GHANEM, FOREIGN CARS CONTINENTAL and ROBERT ZENO conducted themselves as alleged in paragraph 23.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not

15

entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

23.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Teixeira was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant ZENO transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

23.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information and/or other matter to be sent or delivered by the United States Postal Service. Alternatively, defendants knew or it was reasonably foreseeable to them that information and/or other matter would be sent or delivered by the United States Postal Service for the purpose of executing defendants' scheme to

16

defraud ALLSTATE. Specifically, without limitation, on August 25, 1994, ALLSTATE mailed a letter to Ms. Teixeira requesting she contact regarding the claim. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

24.1    In September 1994, defendants JEFFREY EGLER, KARIM GHANEM, MOHAMED ALI GHANEM and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated September 9, 1994  and/or Claims Representative Inspection Report dated September 8, 1994 both prepared by JEFFREY EGLER that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to MOHAMED ALI GHANEM, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit:  the right front door shell was written to be replaced but was not; the engine and transmission were written to be replaced but were not.

24.2    In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $14,855.86.

24.3    Defendants JEFFREY EGLER, KARIM GHANEM, MOHAMED ALI GHANEM and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 24.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

17

24.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce.  Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE.  Specifically, at the time the claim of ALLSTATE insured Mohamed Ali Ghanem was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois.  Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas.  The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form.  This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

24.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information to be sent or delivered by the United States Postal Service.  Alternatively, defendants knew or it was reasonably foreseeable to them that information would be sent or delivered by the United States Postal Service for the purpose of executing defendants' scheme to defraud ALLSTATE.  Specifically, on September 7, 1994, ALLSTATE mailed a request to the Boca Raton Police Department for the official police report on the incident giving rise to Mohamed Ali Ghanem's

18

claim referred to in paragraph 24.1 above. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

25.1   In October 1994, defendants JEFFREY EGLER, MICHAEL H. GHANEM, a/k/a MOHAMED HUSSEIN GHANEM and FOREIGN CARS CONTINENTAL, with the intent to deceive caused a written estimate dated October 17, 1994 and/or Claims Representative Inspection Report, and supplemental adjuster's report, prepared by JEFFREY EGLER that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Vickie M. Briggs, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit:  the hood was written to be replaced but was repaired, the right and left front fenders were written top be replaced new but were replaced with used parts.

25.2   In reliance upon such written estimate and/or Claims Representative Inspection Report, and supplemental adjuster's report, ALLSTATE issued its check in the sum of $9,345.58 and its check in the sum $1,250.43.

25.3   Defendants JEFFREY EGLER, MICHAEL H. GHANEM, a/k/a MOHAMED HUSSEIN GHANEM and FOREIGN CARS CONTINENTAL, conducted themselves as alleged in paragraph 25.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

19

25.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Briggs was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

26.1    In February 1995, defendants ROBERT ZENO, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated February 24, 1995 and/or Claims Representative Inspection Report prepared by ROBERT ZENO that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Frank Christiano, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following

20

parts were written to be replaced but were not: radiator support assembly, front bumper assembly, right apron assembly.

26.2    In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $4,584.08.

26.3    Defendants ROBERT ZENO, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 26.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

26.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Rupp was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGEER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate, which was

21

transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

27.1   In March 1995, defendants DARRELL HOLMES, MICHAEL GHANEM, ABBAS GHANEM and FOREIGN CARS CONTINENTAL with the intent to deceive caused a written estimate dated April 10, 1995 and/or Claims Representative Inspection Report prepared by DARRELL HOLMES that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Cora Lee Ford, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written to be replaced but were repaired:   left quarter panel, tailgate, tailgate glass, right left backup lamps.

27.2   In reliance upon such written estimate and supplemental estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $3,370.83.

27.3   Defendants MICHAEL H. GHANEM, ABBAS GHANEM, FOREIGN CARS CONTINENTAL and DARRELL HOLMES  conducted themselves as alleged  above in paragraph 27.1 for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

22

27.4   In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Ford was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant HOLMES transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

28.1   In July 1995, defendants JEFFREY EGLER, MICHAEL GHANEM, ABBAS GHANEM and FOREIGN CARS CONTINENTAL with the intent to deceive caused a written estimate dated July 21, 1995 and/or Claims Representative Inspection Report prepared by Tim Patient and/or Total Loss and Salvage Report and /or Proof of Loss executed by Peter Pietanza and Mary Palina a/k/a Mary Pietanza that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Peter Pietanza and/or Mary Palina a/k/a Mary Pietanza, the insured, knowing that such statement

23

contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit:  that they had intentionally set fire to the vehicle for the purpose of falsely declaring it a total loss.

28.2    In reliance upon such written estimate and/or Claims Representative Inspection Report and/or Total Loss and Salvage Report and /or Proof of Loss, ALLSTATE issued its check in the sum of $4,000.00.

28.3    Defendants MICHAEL H. GHANEM, ABBAS GHANEM, FOREIGN CARS CONTINENTAL and JEFFREY EGLER conducted themselves as alleged in paragraph 28.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

28.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce.  Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE.  Specifically, at the time the claim of ALLSTATE insured Pieteanza was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois.

24

Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

28.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information and/or other matter to be sent or delivered by the United States Postal Service. Alternatively, defendants knew or it was reasonably foreseeable to them that information and/or other matter would be sent or delivered by the United States Postal Service for the purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, without limitation, on August 18, 1995, ALLSTATE mailed a letter to Mr. Pietanza confirming settlement of the claim, and enclosing the total loss paperwork. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

29.1    Between July and December 1995, defendants JEFFREY EGLER, KARIM GHANEM, MICHAEL GHANEM, MOHAMAD HAMZE and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated August 2, 1995 and/or Claims Representative Inspection Report dated August 2, 1995 prepared by Tim Patient that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to MOHAMAD HAMZE, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, all in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit:  the

25

transmission, hood, and left fender were written to be replaced but were not, and a false rental car invoice was submitted.

29.2   In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $9,928.00 and its check in the sum $560.00.

29.3   Defendants JEFFREY EGLER, KARIM GHANEM, MICHAEL GHANEM, MOHAMAD HAMZE and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 29.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

29.4   In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce.  Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE.  Specifically, at the time the claim of ALLSTATE insured Hamze was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating

26

system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

29.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information to be sent or delivered by the United States Postal Service. Alternatively, defendants knew or it was reasonably foreseeable to them that information would be sent or delivered by the United States Postal Service for the purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, on July 25, 1995, ALLSTATE mailed a request to the Hollywood Police Department for the official police report on the incident giving rise to Mohamad Hamze's claim referred to in paragraph 29.1 above. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

30.1    In August 1995, defendants JEFFREY EGLER, KARIM GHANEM, MICHAEL GHANEM, MOHAMED ALI GHANEM, MOHAMAD HAMZE and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated August 7, 1995 and/or Claims Representative Inspection Report prepared by JEFFREY EGLER that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Maria Sanchez, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written to be repaired or replaced that were not damaged: right bumper impact strip, left front energy absorber, right head lamp assembly, right fog and park lamps, suspension front cross member, fan

27

clutch, radiator fan shroud, AC condenser, freon, engine oil pan and gasket, right left engine mounts, left engine mount bracket, left lower control arm, steering gear assembly, power steering pump assembly, left outer tie rod end muffler, oil cooler, AC recharge, LKQ transmission, rear suspension cross member, differential cover, left rear wheel, airbag, airbag sensors, engine oil and filter, rear floor pan, balance/align drive shaft; the following parts were written to be replaced but were repaired: front bumper and bumper cover, grille panel, radiator support, lower cross member-radiator panel, radiator.

30.2    In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $15,008.69.

30.3    Defendants JEFFREY EGLER, KARIM GHANEM, MICHAEL GHANEM, MOHAMED ALI GHANEM, MOHAMAD HAMZE and DEERFIELD FOREIGN CARS UNLIMITED  conducted themselves as alleged in paragraph 30.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

30.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce.  Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE.  Specifically, at the time the claim of ALLSTATE

28

insured Sanchez was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

31.1    In July 1995, defendants JEFFREY EGLER, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated July 20, 1995 prepared by JEFFREY EGLER and/or Claims Representative Inspection Report that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Steven Albu, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written to be replaced but were not damaged:  rear cross member, steering rack, transmission, oil; the following parts were written to be replaced but were repaired: front cross member, engine oil pan, right and left front wheels, left rear wheel.

31.2    In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $6,371.63.

31.3   Defendants JEFFREY EGLER, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 31.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

31.4   In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Albu was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals

electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

32.1    In August 1995, defendants JEFFREY EGLER, MICHAEL H. GHANEM, a/k/a MOHAMED HUSSEIN GHANEM, ABBAS GHANEM a/k/a ABOJO GHANEM and FOREIGN CARS CONTINENTAL with the intent to deceive caused a written estimate dated August 15, 1995 and/or Claims Representative Inspection Report prepared by Jay Gerber that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Vickie M. Briggs, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the convertible top boot and an am/fm radio/cassette were written to be replaced but were not.

32.2    In reliance upon such written estimate, and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $6,118.17.

32.3    Defendants MICHAEL H. GHANEM, a/k/a MOHAMED HUSSEIN GHANEM, ABBAS GHANEM a/k/a ABOJO GHANEM and FOREIGN CARS CONTINENTAL conducted themselves as alleged in paragraph 32.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

32.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings,

31

signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Briggs was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. The transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

33.1    In August 1995, defendants KARIM GHANEM, MOHAMED ALI GHANEM, MOHAMAD HAMZE and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated August 23, 1995 and/or Claims Representative Inspection Report dated August 23, 1995 that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Russell Provencial, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit:  that the damage to the vehicle had been intentionally inflicted for the purpose of making the vehicle appear to be a total loss.

33.2    In reliance upon such written estimate ALLSTATE issued checks in the sum of $2,505.58, $1,300.00 and $1,242.42.

33.3    Defendants KARIM GHANEM, MOHAMED ALI GHANEM, MOHAMAD HAMZE and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 33.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

33.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Provencial was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, ALLSTATE transmitted electronically by wire the results of the inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in

33

written form. The transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

33.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information to be sent or delivered by the United States Postal Service. Alternatively, defendants knew or it was reasonably foreseeable to them that information would be sent or delivered by the United States Postal Service for the purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, on August 4, 1995, ALLSTATE mailed a request to the Lighthouse Point Police Department for the official police report on the incident giving rise to Russell Provencial's claim referred to in paragraph 33.1 above, and on August 28, 1995, ALLSTATE mailed a letter to Mr. and Mrs. Provencial confirming settlement of the claim and enclosing the total loss paperwork. . The use of the mails constitutes a violation of 18 U.S.C. § 1341.

34.1    Between July and December 1995, defendants DARRELL HOLMES, MICHAEL GHANEM, MOHAMAD HAMZE and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated September 8, 1995 and/or Claims Representative Inspection Report dated September 11, 1995 prepared by DARRELL HOLMES and/or photographs that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Maria Catinella, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, all in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written to be replaced that were not damaged: driver/passenger airbags, airbag control modules, freon; the following parts had some damage but were not repaired: radiator, AC

34

condenser: the following parts were written to be replaced with new parts but were repaired: left right front fenders; and a false tow bill was submitted.

34.2    In reliance upon such written estimate and/or Claims Representative Inspection Report and photographs, ALLSTATE issued its check in the sum of $8,053.53.

34.3    Defendants DARRELL HOLMES, MICHAEL GHANEM, MOHAMAD HAMZE and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 34.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

34.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Catinella was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant HOLMES transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating

35

system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. The transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

34.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information to be sent or delivered by the United States Postal Service. Alternatively, defendants knew or it was reasonably foreseeable to them that information would be sent or delivered by the United States Postal Service for the purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, without limitation, on July 17, 1995, ALLSTATE mailed a request to the Broward Sheriff Department for the official police report on the incident giving rise to Maria Catinella's claim referred to in paragraph 34.1 above, and on July 24, 1995, ALLSTATE mailed a letter to Ms. Catinella requesting she contact plaintiff regarding the claim. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

35.1    In September 1995, defendants JEFFREY EGLER, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated September 19, 1995 and/or Claims Representative Inspection Report prepared by JEFFREY EGLER that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Scott Joyce, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written to be replaced but were not: driver/passenger airbags, hood, left fender.

36

35.2    In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $6,947.73.

35.3    Defendants JEFFREY EGLER, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 35.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

35.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce.  Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE.  Specifically, at the time the claim of ALLSTATE insured Joyce was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas.  The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was

37

printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

36.1    In September 1995, defendants JEFFREY EGLER, MICHAEL GHANEM, ABBAS GHANEM and FOREIGN CARS CONTINENTAL with the intent to deceive caused a written estimate dated October 16, 1995 and/or Claims Representative Inspection Report prepared by JEFFREY EGLER that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Peggy Johnson, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written to be replaced with new parts but salvaged parts were installed: rear bumper cover, rear bumper retainer, left rear energy absorber, rear bumper cover molding; the following parts were written to be replaced new but were repaired: right left decklid hinges, left fender, hood; the front bumper cover and left head lamp door was were written to be replaced new but were either repaired or replaced with a used one; the left front bumper energy absorber was written to be replaced new but was not replaced; a false tow bill was submitted.

36.2    In reliance upon such written estimate and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $8,826.06.

36.3    Defendants JEFFREY EGLER, MICHAEL H. GHANEM, ABBAS GHANEM, FOREIGN CARS CONTINENTAL conducted themselves as alleged in paragraph 36.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit

38

therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

36.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Johnson was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. The transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

36.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information and/or other matter to be sent or delivered by the United States Postal Service. Alternatively, defendants knew or it was reasonably foreseeable to them that information and/or other matter would be sent or

39

delivered by the United States Postal Service for the purpose of executing defendants' scheme to defraud ALLSTATE.    Specifically, on October 6, 1995 and again on December 14, 1995, ALLSTATE mailed a request to the Ft. Lauderdale Police Department for the official police report on the incident giving rise to Peggy Johnson's claim referred to in paragraph 36.1 above.  The use of the mails constitutes a violation of 18 U.S.C. § 1341.

37.1    In September 1995, defendants JEFFREY EGLER, KARIM A. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated September 14, 1995 and/or supplemental estimate and/or Claims Representative Inspection Report prepared by JEFFREY EGLER that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Judith Rupp, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim,in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit:  the following parts were written to be replaced but were not: back glass - tinted, right and left tail lamp assembly; the following parts were written to be replaced but were repaired: left rear rail assembly, left quarter panel and inner quarter panel, decklid weather strip, rear body panel, rear floor pan, headliner.

37.2    In reliance upon such written estimate supplemental estimate, and/or Claims Representative Inspection Report, ALLSTATE issued its check in the sum of $5,086.73 and its check in the sum $263.55.

37.3    Defendants JEFFREY EGLER, MICHAEL H. GHANEM and FOREIGN CARS CONTINENTAL conducted themselves as alleged in paragraph 37.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or

permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

37.4  In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Rupp was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

38.1  In October 1995, defendants ROBERT ZENO, MICHAEL GHANEM, ABBAS GHANEM and FOREIGN CARS CONTINENTAL with the intent to deceive caused a written estimate dated October 13, 1995 and/or Claims Representative Inspection Report prepared by ROBERT ZENO that was intended to be presented to ALLSTATE in support of a claim for

41

payment or other benefits under an insurance policy issued by ALLSTATE to Rita Sherman, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the front bumper cover was written to be replaced but was repaired; the right front energy absorber and right front strut absorber were written to be replaced but were not.

38.2    In reliance upon such written estimate, ALLSTATE issued its check in the sum of $2,473.60.

38.3    Defendants ROBERT ZENO, MICHAEL H. GHANEM, ABBAS GHANEM and FOREIGN CARS CONTINENTAL conducted themselves as alleged in paragraph 38.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

38.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Sherman was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor,

42

Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant ZENO transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

39.1    In October 1995, defendants DARRELL HOLMES, KARIM GHANEM, MOHAMED ALI GHANEM and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate dated October 16, 1995 and/or Claims Representative Inspection Report prepared by DARRELL HOLMES that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Paula Stephenson, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written to be replaced but were not: grille assembly, hood, hood lock support, radiator, AC condenser, AC dryer, AC recharge, left right front wheels, engine cradle, left front lower arm control, left strut absorber, air bag and air bag sensors, rear bumper cover, left quarter panel, engine oil pan, transmission, engine oil cooler; the radiator lower cross member was written to be replaced but was repaired.

39.2    In reliance upon such written estimate ALLSTATE issued its check in the sum of $11,397.05.

43

39.3    Defendants DARRELL HOLMES, KARIM GHANEM, MOHAMED ALI GHANEM and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 39.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

39.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Stephenson was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant HOLMES transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. The transmission of information, writings,

44

signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

39.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information to be sent or delivered by the United States Postal Service. Alternatively, defendants knew or it was reasonably foreseeable to them that information would be sent or delivered by the United States Postal Service for the purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, on October 5, 1995, ALLSTATE mailed a request to the Broward County Sheriff's Department for the official police report on the incident giving rise to Paula Stephenson's claim referred to in paragraph 39.1 above. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

40.1    In October 1995, defendants KARIM GHANEM, MICHAEL GHANEM and DEERFIELD FOREIGN CARS UNLIMITED with the intent to deceive caused a written estimate prepared by David O'Meara dated October 24, 1995 and/or Claims Representative Inspection Report that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Vincenzo De Caria, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the engine oil pan, left and right upper control arms were written to be replaced but were not.

40.2    In reliance upon such written estimate and/or Claims Representative Inspection Report ALLSTATE issued its check in the sum of $5,423.40.

40.3    Defendants KARIM A. GHANEM, MICHAEL H. GHANEM and DEERFIELD FOREIGN CARS UNLIMITED conducted themselves as alleged in paragraph 40.1 above for the

45

purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

40.4    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendants knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured De Cario was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, ALLSTATE transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

40.5    In connection with, and for the purpose of executing defendants' scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendants caused information to be sent

46

or delivered by the United States Postal Service. Alternatively, defendants knew or it was reasonably foreseeable to them that information would be sent or delivered by the United States Postal Service for the purpose of executing defendants' scheme to defraud ALLSTATE. Specifically, on October 20, 1995 and November 21, 1995, ALLSTATE mailed a letter to Mr. De Caria with regard to this claim. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

41.1    In October 1995, defendant JEFFREY EGLER with the intent to deceive caused a written estimate dated October 12, 1995 and/or Claims Representative Inspection Report prepared by JEFFREY EGLER that was intended to be presented to ALLSTATE in support of a claim for payment or other benefits under an insurance policy issued by ALLSTATE to Jim Burke, the insured, knowing that such statement contained false and misleading information concerning a fact or thing material to such claim, in violation of sections 817.234(1)(a) 1, 2, 3, Florida Statutes, to wit: the following parts were written to be replaced but were not damaged and/or were not replaced: instrument panel pad, console cover, console bezel, center console, ashtray, instrument panel bezel, ignition lock cylinder, center console lid, instrument cluster panel, instrument panel lens, volt meter gauge, oil gauge, inclinometer, front door lock cylinder, front door shell, inner door trim, support r/c mirror, right front door shell, right inner door trim panel, right sport r/c mirror, right front door lock cylinder, spare wheel/tire, CD player, two door speakers, two speaker covers, two head rests, two springs, back rest, back assembly, hinge cover, seat cushion, left front adjuster, right front adjuster, FNT cover seat, FNT switch, seat rail, FNT adjuster, FNT seat leg, speedometer, fuel gauge, miscellaneous nuts bolts, washers, screws, bushings.

41.2    In reliance upon such written estimate and/or Claims Representative Inspection Report ALLSTATE issued its check in the sum of $9,669.18.

47

41.3    Defendant JEFFREY EGLER conducted himself as alleged in paragraph 41.1 above for the purpose of unlawfully and knowingly obtaining, or endeavoring to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000, with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto, all in violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 1, Florida Statutes.

41.4    In connection with, and for the purpose of executing defendant's scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendant caused information, writings, signs and/or signals to be transmitted by means of wire in interstate commerce. Alternatively, defendant knew or it was reasonably foreseeable to them that information, writings, signs and/or signals would be transmitted by means of wire in interstate commerce for purpose of executing defendant's scheme to defraud ALLSTATE. Specifically, at the time the claim of ALLSTATE insured Burke was assigned to an adjuster, the claim information was transmitted electronically by wire to the ADP Audatex computer-based automotive collision estimating system in Ann Arbor, Michigan and Conway, Arkansas, and to ALLSTATE's electronic records in Northbrook, Illinois. Further, on the date of the written claims estimate, defendant EGLER transmitted electronically by wire the results of his inspection to the Audatex computer-based automotive collision estimating system in Conway, Arkansas. The Audatex system then generated the estimate which was transmitted electronically by wire from Conway, Arkansas to Broward County, Florida where it was printed in written form. This transmission of information, writings, signs and/or signals electronically by means of wire in interstate commerce as described here constitutes a violation of 18 U.S.C. § 1343.

48

41.5    In connection with, and for the purpose of executing defendant's scheme to fraudulently obtain insurance proceeds from ALLSTATE, defendant caused information to be sent or delivered by the United States Postal Service. Alternatively, defendant knew or it was reasonably foreseeable to them that information would be sent or delivered by the United States Postal Service for the purpose of executing defendant's scheme to defraud ALLSTATE. Specifically, on October 6, 1995, ALLSTATE mailed a letter to James Burke enclosing a Theft Affidavit, and on October 17, 1995, ALLSTATE mailed a letter to James Burke requesting the he contact ALLSTATE regarding the claim. The use of the mails constitutes a violation of 18 U.S.C. § 1341.

## COUNT I - FEDERAL RICO

42.    Plaintiff ALLSTATE realleges the allegations of paragraphs 1 through 41.5 as if each were fully set forth here.

43.    Plaintiff ALLSTATE is an enterprise as defined in 18 U.S.C. § 1961(4).

44.    Defendants, as employees of ALLSTATE, automobile repair shops involved in repairing automobiles insured by ALLSTATE, owners of such automobile repair shops, and mechanics doing work on automobiles insured by plaintiff, ALLSTATE, are employed by or associated with the enterprise.

45.    Defendants, by acting with purpose to cause ALLSTATE to make payments on false claims estimates, participated, directly or indirectly, in the operation of ALLSTATE.

46.    The conduct of defendants alleged in the preceding paragraphs 16.1 through 39.5 constitute a pattern of racketeering activity through which defendants participated, directly or indirectly, in the conduct of ALLSTATE's affairs in violation of 18 U.S.C. § 1962(c).

47.    By reason of defendants' violation of 18 U.S.C. § 1962(c), ALLSTATE has been injured in its business or property.

49

**WHEREFORE,** plaintiff ALLSTATE INSURANCE COMPANY requests this court to order preliminary and permanent injunctive relief requiring defendants to preserve and/or disgorge themselves of their ill-gotten gains and to enter judgment against defendants for three-fold the damages sustained, and for attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c).

## COUNT II - RICO CONSPIRACY

48.    Plaintiff ALLSTATE realleges the allegations of paragraphs 1 through 41.5 as if each were fully set forth here.

49.    Plaintiff ALLSTATE is an enterprise as defined in 18 U.S.C. § 1961(4).

50.    Defendants, as employees of ALLSTATE, automobile repair shops involved in repairing automobiles insured by ALLSTATE, owners of such automobile repair shops, and mechanics doing work on automobiles insured by plaintiff, ALLSTATE, are employed by or associated with the enterprise.

51.    Defendants, by acting with purpose to cause ALLSTATE to make payments on false claims estimates, participated, directly or indirectly, in the operation of ALLSTATE.

52.    Defendants, through their words or actions, agreed to participate directly or indirectly in the affairs of ALLSTATE through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

53.    By reason of defendants violations of 18 U.S.C. § 1962(d), ALLSTATE has been injured in its business or property.

**WHEREFORE,** plaintiff ALLSTATE requests this court to order preliminary and permanent injunctive relief requiring defendants to preserve and/or disgorge themselves of their ill-gotten gains and to enter judgment against defendants jointly and severally, for three-fold the damages sustained, and for attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c).

50

## COUNT III - FLORIDA RICO

54.     Plaintiff ALLSTATE realleges the allegations of paragraphs 1 through 41.5 as if each were fully set forth here.

55.     Plaintiff ALLSTATE is an enterprise as defined in section 772.102(3), Florida Statutes.

56.     Defendants, as employees of ALLSTATE, automobile repair shops involved in repairing automobiles insured by ALLSTATE, owners of such automobile repair shops, and mechanics doing work on automobiles insured by ALLSTATE, are employed by or associated with ALLSTATE.

57.     Defendants, by acting with purpose to cause ALLSTATE to make payments on false claims estimates, participated, directly or indirectly, in the operation of ALLSTATE.

58.     The conduct of defendants alleged in the preceding paragraphs 16.1 through 39.5 constitute a pattern of criminal activity through which defendants participated, directly or indirectly, in the operation of ALLSTATE activity in violation of section 772.103(3), Florida Statutes.

59.     By reason of defendants' violation of section 772.103(3), Florida Statutes, ALLSTATE has sustained damages.

**WHEREFORE**, plaintiff ALLSTATE INSURANCE COMPANY requests this court to order preliminary and permanent injunctive relief requiring defendants to preserve and/or disgorge themselves of their ill-gotten gains and to enter judgment against defendants, for three-fold the actual damages sustained, and for attorneys' fees and costs pursuant to section 772.104, Florida Statutes.

## COUNT IV - FLORIDA RICO CONSPIRACY

60.    Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

61.    Plaintiff ALLSTATE is an enterprise as defined in section 772.102(3), Florida Statutes.

62.    Defendants as employees of ALLSTATE, automobile repair shops involved in repairing automobiles insured by ALLSTATE, owners of such automobile repair shops, and mechanics doing work on automobiles insured by ALLSTATE, are employed by or associated with ALLSTATE.

63.    Defendants, through their words or actions, agreed to participate or endeavor to participate in the operation of ALLSTATE through a pattern of criminal activity in violation of section 772.103(4), Florida Statutes.

64.    By reason of defendants' violation of section 772.103(4), Florida Statutes, ALLSTATE has sustained damages.

**WHEREFORE**, plaintiff ALLSTATE INSURANCE COMPANY requests this court to order preliminary and permanent injunctive relief requiring defendants to preserve and/or disgorge themselves of their ill-gotten gains and to enter judgment against defendants, jointly and severally, for three-fold the actual damages sustained, and for attorneys' fees and costs pursuant to section 772.104, Florida Statutes.

## COUNT V – FLORIDA RICO

65.    Plaintiff ALLSTATE realleges the allegations of paragraphs 1 through 41.5 as if each were fully set forth here.

52

66.     Defendants, as individuals and corporations associated in fact, are an enterprise as defined in section 772.102(3), Florida Statutes.  Such enterprise shall be referred to here as the Ghanem Enterprise.

67.     Each defendant is employed by or associated with the Ghanem Enterprise.

68.     Defendants, by acting with purpose to cause ALLSTATE to make payments on false claims estimates, participated, directly or indirectly, in the Ghanem Enterprise.

69.     The conduct of defendants alleged in the preceding paragraphs 16.1 through 39.5 constitute a pattern of criminal activity through which Defendants participated, directly or indirectly, in the Ghanem Enterprise in violation of section 772.103(3), Florida Statutes.

70.     By reason of defendants' violation of section 772.103(3), Florida Statutes, ALLSTATE has sustained damages.

**WHEREFORE**, plaintiff ALLSTATE INSURANCE COMPANY requests this court to order preliminary and permanent injunctive relief requiring defendants to preserve and/or disgorge themselves of their ill-gotten gains and to enter judgment against defendants for three-fold the actual damages sustained, and for attorneys' fees and costs pursuant to section 772.104, Florida Statutes.

## COUNT VI – FLORIDA RICO CONSPIRACY

71.     Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

72.     Defendants, as individuals and corporations associated in fact, are an enterprise as defined in section 772.102(3), Florida Statutes.  Such enterprise shall be referred to here as the Ghanem Enterprise.

53

73.    Defendants, by acting with purpose to cause ALLSTATE to make payments on false claims estimates, participated, directly or indirectly, in the Ghanem Enterprise.

74.    Defendants, through their words or actions, agreed to participate or endeavor to participate in the operation of the Ghanem Enterprise through a pattern of criminal activity in violation of section 772.103(4), Florida Statutes.

75.    By reason of defendants' violation of section 772.103(4), Florida Statutes, ALLSTATE has sustained damages.

**WHEREFORE,** plaintiff ALLSTATE INSURANCE COMPANY requests this court to order preliminary and permanent injunctive relief requiring defendants to preserve and/or disgorge themselves of their ill-gotten gains and to enter judgment against defendants, jointly and severally for three-fold the actual damages sustained, and for attorneys' fees and costs pursuant to section 772.104, Florida Statutes.

## COUNT VII - CIVIL REMEDY FOR THEFT

76.    Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

77.    ALLSTATE has sustained damages by reason of defendants' violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c), Florida Statutes.

78.    Plaintiff ALLSTATE has made written demand upon each of the defendants for three-fold its actual damages as a result of their violation of sections 812.014(1)(a), 812.014(1)(b) and 812.014(2)(c) 2, Florida Statutes but defendants have failed to comply with such demand within thirty (30) days after their receipt of it.

**WHEREFORE,** plaintiff ALLSTATE INSURANCE COMPANY requests this court to order preliminary and permanent injunctive relief requiring defendants to preserve and/or disgorge

themselves of their ill-gotten gains and to enter judgment against defendants for three-fold the actual damages sustained, attorneys' fees and costs pursuant to section 772.11, Florida Statues.

<div align="center">COUNT VIII - DECEPTIVE AND UNFAIR TRADE PRACTICES</div>

79.     Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

80.     The acts and practices of defendants KARIM A. GHANEM a/k/a ABDUL KARIM GHANEM, DEERFIELD FOREIGN CARS UNLIMITED, INC., MICHAEL H. GHANEM a/k/a MOHAMED HUSSEIN GHANEM, FOREIGN CARS CONTINENTAL, INC., ABBAS GHANEM a/k/a ABOJO GHANEM, MOHAMED ALIU GHANEM a/k/a MIKE and HAMODY and MOHAMAD HAMZE were unconscionable, unfair and deceptive and occurred in the course of their trade or commerce automobile mechanics and repair shops in violation of section 501.204(1), Florida Statutes.

81.     As a direct and proximate result of defendants' violations of section 501.204(1), Florida Statutes, ALLSTATE has sustained damages.

**WHEREFORE**, plaintiff ALLSTATE requests this court to enter judgment pursuant to section 501.211, Florida Statutes against defendants KARIM A. GHANEM a/k/a ABDUL KARIM GHANEM, DEERFIELD FOREIGN CARS UNLIMITED, INC., MICHAEL H. GHANEM a/k/a MOHAMED HUSSEIN GHANEM, FOREIGN CARS CONTINENTAL, INC., ABBAS GHANEM a/k/a ABOJO GHANEM, MOHAMED ALIU GHANEM a/k/a MIKE and HAMODY and MOHAMAD HAMZE for actual damages, costs and attorney fees.

<div align="center">COUNT IX - INSURANCE FRAUD</div>

82.     Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

<div align="center">55</div>

83.     The State of Florida has commenced a criminal prosecution of defendants for violation of sections 817.234(1)(a)1, 2, Florida Statutes based upon the fraudulent conduct sued upon in this action. State v. Karim A. Ghanem, et al., Case No. 96-019226 CF, Seventeenth Judicial Circuit in and for Broward County, Florida.

84.     Upon a criminal conviction in such action, ALLSTATE is entitled to recover from defendants its damages, attorney fees and costs, both of investigation and litigation, pursuant to section 817.234(5), Florida Statutes.

**WHEREFORE**, plaintiff ALLSTATE INSURANCE COMPANY requests this court to enter judgment against defendants, upon a criminal conviction under sections 817.234(1)(a)1 or 2, Florida Statutes, for final judgment in favor of ALLSTATE for compensatory damages, attorney fees and costs, both of investigation and litigation, pursuant to section 817.234(5), Florida Statutes.

## COUNT X - INTERFERENCE WITH CONTRACTUAL RELATIONS

85.     Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

86.     A contract of insurance existed between ALLSTATE and each of the insureds alleged in this complaint.

87.     At all material times, each defendant was aware of each such contract.

88.     Defendants intended to interfere with ALLSTATE'S contractual relationship with its respective insureds for the purpose of causing the breach, through the overpayment of insurance claims, of each respective contract.

89.     Defendants actually interfered with ALLSTATE'S contractual relationship with its insureds.

56

90.　As a direct and proximate result of defendants' interference, ALLSTATE has sustained damages.

**WHEREFORE**, plaintiff ALLSTATE requests this court to enter final judgment against defendants for compensatory and, upon a proper showing under section 768.72, Florida Statutes, punitive damages, costs and other relief just and proper.

## COUNT XI - BREACH OF FIDUCIARY DUTY

91.　Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

92.　Plaintiff ALLSTATE entrusted defendants JEFFREY EGLER, DARRELL HOLMES and ROBERT ZENO with discretionary authority over its claims benefits and with the responsibilities of truthfully and accurately adjusting claims under its policies.

93.　As a result of their acceptance of employment in such positions, defendants JEFFREY EGLER, DARRELL HOLMES and ROBERT ZENO owed ALLSTATE a fiduciary duty to truthfully estimate and adjust claims, and refrain from fraud.

94.　Defendants JEFFREY EGLER, DARRELL HOLMES and ROBERT ZENO breached their fiduciary duties to plaintiff causing damages to ALLSTATE.

**WHEREFORE**, plaintiff ALLSTATE requests this court to enter final judgment against defendants JEFFREY EGLER, DARRELL HOLMES and ROBERT ZENO for compensatory and, upon a proper showing under section 768.72, Florida Statutes, punitive damages, costs and other relief just and proper.

## COUNT XII - COMMON LAW FRAUD

95.　Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

57

96.     Defendants caused the false insurance claims estimates to be submitted to ALLSTATE knowing that they were false, and with no present intention of performing the repairs as written on the estimates, and with the intention that ALLSTATE rely on the claims estimates.

97.     ALLSTATE relied on the false claims estimates and, as a result, sustained damages.

**WHEREFORE,** plaintiff ALLSTATE INSURANCE COMPANY requests this court to enter final judgment against defendants for compensatory and, upon a proper showing under section 768.72, Florida Statutes, punitive damages, costs and other relief just and proper.

## COUNT XIII - CIVIL CONSPIRACY

98.     Plaintiff ALLSTATE realleges paragraphs 1 through 41.5 of this complaint as if each were fully set forth here.

99.     Defendants agreed through their words or actions to:

      (a)     Unlawfully and knowingly obtain, or endeavor to obtain, the property of ALLSTATE, i.e., money of the value of $300 or more but less than $20,000 with the intent to either temporarily or permanently deprive ALLSTATE of the right to such property or benefit therefrom, or of appropriating the property to their own use or the use of any person or entity not entitled thereto;

      (b)     Fraudulently induce ALLSTATE to make payment pursuant to false insurance claims estimates;

      (c)     Interfere with ALLSTATE's contractual relations; and

      (d)     Engage in deceptive and unfair trade practices.

58

100.  Each defendant, in preparing or causing to be prepared false insurance claims estimates, and/or receiving the proceeds of the false insurance claims estimates overtly acted in furtherance of the conspiracy.

101.  Plaintiff ALLSTATE sustained damages as a result of its reliance upon the false insurance claims estimates prepared pursuant to defendants' conspiracy.

**WHEREFORE**, plaintiff ALLSTATE requests this court to enter final judgment against defendants, jointly and severally, for compensatory and, upon a proper showing under section 768.72, Florida Statutes, punitive damages, costs and other relief just and proper.

DATED this 18th day of October, 1999.

RUMBERGER, KIRK & CALDWELL
A Professional Association
Lori J. Caldwell
Signature Plaza, Suite 300
201 S. Orange Avenue
P.O. Box 1873
Orlando, Florida 32802-1873
Phone: (407) 872-7300
Fax:    (407) 841-2133

RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre
80 S.W. 8th Street, Suite 3000
Miami, Florida  33130
Telephone:   (305) 358-5577
Fax:         (305) 371-7580

By: _____
JOSHUA D. LERNER
Florida Bar No. 455067

218246

59

# RUMBERGER, KIRK & CALDWELL

Brickell Bayview Centre, Suite 3000
80 Southwest 8th Street (33130)
Post Office Box 01-9041
Miami, Florida 33101

July 28, 1999

Telephone (305) 358-5577
Telecopier (305) 371-7580
http://www.rumberger.com

**CERTIFIED MAIL RETURN**
**RECEIPT REQUESTED**

Mr. Maurice Graham
Registered Agent
Deerfield Foreign Cars Unlimited, Inc.,
331 E. Prospect Park Road
Oakland Park, FL  33334

Dear Mr. Graham:

This firm represents Allstate Insurance Company in connection with the submission to Allstate of fraudulent claims estimates for automotive repair work purportedly completed between July 1993 and October 1995 at Deerfield Foreign Cars Unlimited, Inc. and Foreign Cars Continental, Inc. on vehicles covered under Allstate policies. As a result of Foreign Cars Unlimited, Inc.'s role in causing such false claim estimates to be submitted to Allstate with the intent that Allstate rely upon them, Allstate has been deprived of its right to property, i.e., money in the aggregate amount of $124,822.11, or a benefit from the property in violation of §812.014, Florida Statutes.

You are hereby notified that pursuant to §772.11, Florida Statutes, Deerfield Foreign Cars Unlimited, Inc. has thirty days from receipt of this notice to tender payment in the amount of $374,466.33. Unless this amount is paid within the thirty day period, Allstate may file a civil action against you for such amount plus court costs and attorneys' fees.

Very truly yours,

Joshua D. Lerner

JDL/t
cc:    Maurice Graham, Esq. (Certified mail, return receipt requested)

212854

**EXHIBIT**
**F.1**

Orlando
(407) 872-7300

Miami
(305) 358-5577

Tallahassee
(850) 222-6550

Tampa
(813) 223-4253

Birmingham
(205) 327-5550

LAW OFFICES

# RUMBERGER, KIRK & CALDWELL

PROFESSIONAL ASSOCIATION

Brickell Bayview Centre, Suite 3000
80 Southwest 8th Street (33130)
Post Office Box 01-9041
Miami, Florida 33101

July 28, 1999

Telephone (305) 358-5577
Telecopier (305) 371-7580
http://www.rumberger.com

**CERTIFIED MAIL RETURN**
**RECEIPT REQUESTED**

Mr. Mohamad Ali Ghanem
1256 S. Military Trail
#926
Deerfield Beach FL 33442

Dear Mr. Ghanem:

This firm represents Allstate Insurance Company in connection with the submission to Allstate of fraudulent claims estimates for automotive repair work purportedly completed between July 1993 and October 1995 at Deerfield Foreign Cars Unlimited, Inc. and Foreign Cars Continental, Inc. on vehicles covered under Allstate policies. As a result of your role in causing such false claim estimates to be submitted to Allstate with the intent that Allstate rely upon them, Allstate has been deprived of its right to property, i.e., money in the aggregate amount of $124,822.11, or a benefit from the property in violation of §812.014, Florida Statutes.

You are hereby notified that pursuant to §772.11, Florida Statutes, you have thirty days from receipt of this notice to tender payment in the amount of **$374,466.33.** Unless this amount is paid within the thirty day period, Allstate may file a civil action against you for such amount plus court costs and attorneys' fees.

Very truly yours,

Joshua D. Lerner

JDL/t
cc:    Maurice Graham, Esq. (Certified mail, return receipt requested)

212847



| Orlando | Miami | Tallahassee | Tampa | Birmingham |
|---|---|---|---|---|
| (407) 872-7300 | (305) 358-5577 | (850) 222-6550 | (813) 223-4253 | (205) 327-5550 |

LAW OFFICES

# RUMBERGER, KIRK & CALDWELL
### PROFESSIONAL ASSOCIATION

Brickell Bayview Centre, Suite 3000
80 Southwest 8th Street (33130)
Post Office Box 01-9041
Miami, Florida 33101

November 4, 1999

Telephone (305) 358-5577
Telecopier (305) 371-7580
http://www.rumberger.com

**CERTIFIED MAIL RETURN**
**RECEIPT REQUESTED**

Mr. Maurice Graham
Registered Agent
Deerfield Foreign Cars Unlimited, Inc.,
331 E. Prospect Park Road
Oakland Park, FL 33334

Dear Mr. Graham:

This firm represents Allstate Insurance Company in connection with the submission to Allstate of fraudulent claims estimates for automotive repair work purportedly completed between April 1993 and October 1995 at Deerfield Foreign Cars Continental, Inc. and Foreign Cars Unlimited, Inc. on vehicles covered under Allstate policies. We have written to you before regarding this matter and a copy of our letter to you dated July 28, 1999 is enclosed.

As a result of your role in causing such false claim estimates to be submitted to Allstate with the intent that Allstate rely upon them, Allstate has been deprived of its right to property, i.e., money in the aggregate amount of $146,706.99, or a benefit from the property in violation of §812.014, Florida Statutes.

You are hereby notified that pursuant to §772.11, Florida Statutes, you have thirty days from receipt of this notice to tender payment in the amount of **$440, 120.97**. Unless this amount is paid within the thirty day period, Allstate may file a civil action against you for such amount plus court costs and attorneys' fees.

Very truly yours,

Joshua D. Lerner

JDL/t
Enclosure
cc:    Maurice Graham, Esq. (Certified mail, return receipt requested, w/encl.)
219495

**EXHIBIT G**

Orlando          Miami          Tallahassee          Tampa          Birmingham
(407) 872-7300   (305) 358-5577  (850) 222-6550       (813) 223-4253  (205) 327-5550

# Allstate®

HUMAN RESOURCES

AUG 25 1994

To: Peter Reo

From: Dallas Taylor

Peter,

As you know I have been assisting the Broward County Auto Theft Task force on a case involving an insured named John Berry. There are numerous files involved regarding this insured. Det. Skellion is now working with a CI that advised him there are two insurance adjusters that work with one of the shops where John Berry has much of this work done. The shop involved is Foreign Cars Continental located at 70 Sw 10 St. in Deerfield Beach, Fl. The CI also owns a body shop in Deerfield Beach named Auto Imports. On 8/05/94 Det Skellion advised me the CI had given him the name of the two adjusters and the both worked for Allstate. The CI alleges that for sure the two adjusters which he named as Daryl Holmes and Jeff Egler and possibly one supervisor works with the shop in that they will inflate the damage and in some cases list damage that does not exist and then will split the money. He states they will do the same for him and he is willing to allow BSO to install cameras and wire him to record the transactions. This person is a paid CI for a federal agency and they believe due to the working relation they have with this CI the information is accurate. The CI alleges that for sure the two adjusters which he named as Daryl Holmes and we would also probably have to front the money for the payoff.

                              Dallas Taylor


EXHIBIT
H

*Florida Mb*
*Theft Prevent*

*1995 Ann*



EXHIBIT

I

January 1, 1996

Dear Floridians:

It is my pleasure to present the 1995 Annual Report of the Florida Motor Vehicle Theft
Prevention Authority. Motor vehicle theft is a serious problem that claims hundreds of
Floridians as victims every day. Beyond the victim's personal loss, the crime affects all
Floridians in the form of increased insurance premiums, and the need for more tax
dollars and other community resources to fight the problem. The 1995 Annual Report
offers some hope that motor vehicle theft has peaked in Florida with statistics reflecting
a decrease in the rate of growth of the crime. In addition, preliminary data for the first
six months of 1995 show a 10 percent decrease in thefts statewide.

These positive figures suggest that several changes implemented over the past few years
may be working. The Florida Legislature has made significant investments in the juvenile
justice system to deal with the increasing numbers of young people who commit crimes.
In addition, last year's Legislature increased the penalty associated with grand theft of
a motor vehicle, and effective October 1, 1995, Florida law requires that convicted felons
serve at least 85 percent of their court-imposed sentences.

Hopefully, this combination of efforts will work to make our communities safe and free
of crime. With vehicle theft such a common form of criminal activity, this report is an
important indicator of the results of our efforts.

Sincerely,

Robert A. Butterworth
Attorney General



**1995 Board of Directors, Florida Motor Vehicle Theft Prevention Authority:** *(left foreground)* Chairman Fred O. Dickinson III, Executive Director, Florida Department of Highway Safety and Motor Vehicles; *(standing left to right)* John McDougall, Sheriff, Lee County; James O. Simmons, President & Chief Executive Officer, Pinellas County Urban League, Inc.; Katherine Emrich, Assistant Director, Division of Insurance Fraud, Department of Insurance & Treasurer; James T. "Tim" Moore, Executive Director, Florida Department of Law Enforcement; Bill Gunter, President, Rogers Atkins Gunter & Associates; *(seated left to right)* Michael Stern, Senior Account Agent, Allstate Insurance Company; Fred Taylor, Director, Metro-Dade Police Department; Lawson Lamar, State Attorney, Ninth Judicial Circuit

# Table of Contents

Letter from Attorney General Bob Butterworth . . . . . . . . . . . . . . . . . . . . . . . . 1

Executive Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1995 Report   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Appendix 1: 1995 Board of Directors
Florida Motor Vehicle Theft Prevention Authority . . . . . . . . . . . . . . . . . . . 10

Appendix 2: Florida Motor Vehicle Theft Prevention Grants by County
1995–96 Funding Cycle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Appendix 3: Florida Motor Vehicle Theft Prevention
Discretionary Grants by County
January 1, 1996 – December 31, 1996   . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Appendix 4: 1994 Motor Vehicle Theft Offenses Reported by County
(Alphabetical Order)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Appendix 5: 1994 Motor Vehicle Theft Offenses Reported by County
(Ranked) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Appendix 6: Motor Vehicle Theft Offenses
Top Twenty Cities
January 1, 1994 – December 31, 1994   . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Appendix 7: Top Ten Stolen Vehicles in Florida in 1994
Source: National Insurance Crime Bureau   . . . . . . . . . . . . . . . . . . . . . . . . 16

1995 Annual Report.    Florida Motor Vehicle Theft Prevention Authority

Case 0:00-cv-06173-DLG    Document 1    Entered on FLSD Docket 02/03/2000    Page 186 of 221

# EXECUTIVE SUMMARY

Based on the most recent Uniform Crime Report data available, a total of 122,839 motor vehicle thefts were reported in Florida during 1994, reflecting a 7 percent increase over the previous year. Not surprisingly, the greatest numbers of thefts occurred in three of Florida's most populous counties: Dade, Hillsborough and Broward. These three counties account for 60 percent of the state's reported offenses. Volusia County replaced Leon County among the top ten counties reporting motor vehicle thefts, and Palm Beach County passed Duval County; otherwise, the top ten counties remained unchanged from 1993 to 1994.

Although the number of thefts increased statewide, not all counties contributed to this growth. Several of the counties ranked among the top twenty counties for the number of auto thefts actually experienced significant decreases in thefts over the previous year. These counties and corresponding decreases are Alachua (-8%), Duval (-5%), Leon (-36%), Lee (-15%) and Manatee (-7%).

Florida law enforcement made 14,292 arrests in Florida for motor vehicle thefts in 1994. Juveniles and adults were almost equally responsible for motor vehicle thefts, with juveniles comprising 49 percent of the arrest population compared to 51 percent for adults.

The value of reported stolen vehicles in 1994 was $827,705,798 while the value of recovered stolen vehicles was $544,760,746. This represents a 66 percent recovery rate based on value.

Although the number of thefts continued to rise in Florida, the rate of growth declined by 1 percentage point, from 8 percent growth in 1993 to 7 percent growth in 1994. In addition, preliminary statistics for the first six months of 1995 show a 10 percent decrease in thefts statewide. Although not a formal part of this report, these promising figures indicate that the motor vehicle theft rate in Florida may be experiencing a downward trend.

Finally, the Authority made 60 grant awards during 1995 totaling $3,437,042. The grants support law enforcement and other agencies and organizations in their efforts to combat motor vehicle theft.



# 1995 REPORT

## HISTORY

The Legislature established the Florida Motor Vehicle Theft Prevention Authority (FMVTPA) in 1992. The purpose of the Authority is to prevent, combat and reduce motor vehicle theft in Florida; and to improve and support motor vehicle theft law enforcement and prosecution, and the administration of motor vehicle theft laws.

The Board of Directors of the Florida Motor Vehicle Theft Prevention Authority includes the Florida Commissioner of Insurance or his designee; the Executive Director of the Florida Department of Highway Safety and Motor Vehicles; and the Executive Director of the Florida Department of Law Enforcement. Six additional members are appointed by the Attorney General, including a state attorney or city or county executive; a chief law enforcement official; a sheriff; two representatives of the motor vehicle insurance industry in Florida, and a representative of purchasers of motor vehicle insurance in Florida. The chairman is selected by the Attorney General from the nine-member Board. Current Board members and the agencies or organizations they represent are listed as Appendix 1.

One of the primary responsibilities of the Authority is to provide financial support to government agencies and public and private organizations for the purpose of combating auto theft. The Authority is funded by a surcharge on motor vehicle registrations in the State of Florida, with the proceeds deposited into the Florida Motor Vehicle Theft Prevention Trust Fund.

## OFFENSES

The number of motor vehicle thefts in Florida continued to climb in 1994. Based on Uniform Crime Report (UCR) data, a total of 122,839 motor vehicle thefts were reported in 1994. This number reflects a 7 percent increase in reported thefts over the previous year. Although the number of thefts continued to rise, the pace of growth declined by 1 percent over the previous year.

Eighty-three percent of all thefts, essentially five out of every six, were reported in ten of Florida's most populous counties. Three counties, Dade, Hillsborough and Broward, accounted for 60 percent of these offenses. Volusia County replaced Leon County among the top ten counties reporting motor vehicle thefts, and Palm Beach County passed Duval County; otherwise, the top ten counties remained unchanged from 1993 to 1994.

### Table 1. Top Ten Counties by Number of Thefts, Comparison of 1994 to 1993

| County | 1994 Offenses | Percent of State | County | 1993 Offenses | Percent of State |
|---|---|---|---|---|---|
| Dade | 40,734 | 33% | Dade | 40,055 | 35% |
| Hillsborough | 16,869 | 14% | Hillsborough | 13,240 | 12% |
| Broward | 16,036 | 13% | Broward | 13,058 | 11% |
| Palm Beach | 8,228 | 7% | Duval | 7,267 | 6% |
| Duval | 6,890 | 6% | Palm Beach | 7,209 | 6% |
| Orange | 6,265 | 5% | Orange | 5,487 | 5% |
| Polk | 3,699 | 3% | Polk | 3,615 | 3% |
| Pinellas | 3,215 | 3% | Pinellas | 2,719 | 2% |
| Lee | 2,286 | 2% | Lee | 2,705 | 2% |
| Volusia | 1,825 | 1% | Leon | 2,504 | 2% |

Although the number of thefts increased overall in 1994, some Florida counties made significant strides in reducing motor vehicle thefts during the year. The following seven counties, ranked among the top twenty counties for 1994, actually experienced reductions in the number of thefts from their 1993 level.

### Table 2. 1994 Theft Reductions in Seven of Top Twenty Counties

| County | 1993 Offenses | 1994 Offenses | Percent Decrease |
|---|---|---|---|
| Alachua | 1,321 | 1,211 | -8% |
| Collier | 729 | 642 | -12% |
| Duval | 7,267 | 6,890 | -5% |
| Lee | 2,705 | 2,286 | -15% |
| Leon | 2,504 | 1,595 | -36% |
| Manatee | 1,037 | 969 | -7% |
| Sarasota | 828 | 785 | -5% |

## ARRESTS

Florida law enforcement made 14,292 arrests for motor vehicle theft in 1994. As in previous years, juveniles continue to contribute heavily to the motor vehicle theft problem in Florida, accounting for 49 percent of motor vehicle theft arrests.

**Table 3. Comparison of Arrests, Juveniles, and Adults**

| Offender | 1993 Arrests | 1994 Arrests | 1994 Percent |
|----------|--------------|--------------|--------------|
| Juveniles | 6,240 | 7,026 | 49% |
| Adults | 6,812 | 7,266 | 51% |
| Total | 13,052 | 14,292 | 100% |

## LOSS AND RECOVERY

The value of reported stolen vehicles in 1994 was $827,705,798 while the value of recovered stolen vehicles was $544,760,746—two thirds of the total value of the stolen vehicles. Although the dollar value of stolen and recovered vehicles both increased in 1994, the recovery rate of 66 percent remained constant between the two years.

## GRANT AWARDS

One of the major responsibilities of the Authority is the annual award of grant funds to local and statewide organizations for projects that prevent, combat and reduce motor vehicle theft in Florida. Notices of the availability of grant funds are mailed annually to approximately 1,000 parties, including all Florida law enforcement agencies, state attorneys and public defenders, and interested businesses, organizations and private citizens.

The Board issued two notices of grant awards for motor vehicle theft projects during 1995. At its May 30, 1995, meeting, the Board awarded 42 new and continuation grant awards for 1995-96, totaling $2,437,371. A breakdown of grant awards by county appears as Appendix 2.

At the same meeting, the Board of Directors approved a total of 124 Community Juvenile Justice Partnership Grants (CJJPG) for the 1995-96 fiscal year, for a total amount of $7,500,429. As the CJJPG program was transferred to the Department of Juvenile Justice effective July 1, 1995, this represented the final activity of the Authority under the partnership grant program.

A second motor vehicle theft grant opportunity was announced in August 1995. Eighteen discretionary grants totaling $999,671 were awarded for a funding cycle beginning January 1, 1996, and ending December 31, 1996 (see Appendix 3). The grants are

Case 0:00-cv-06173-DLG    Document 1    Entered on FLSD Docket 02/03/2000    Page 190 of 221

non-renewable, discretionary awards for projects that address the following Board priorities:

- statewide, multi-county or regional projects;

- training, education or promotional programs for law enforcement or the general public that can demonstrate an impact on auto theft prevention;

- pilot projects for new initiatives, innovative ideas and unique or extraordinary projects that can be evaluated for specific impact on auto theft prevention;

- replication of successful projects that have a proven impact on auto theft prevention; or

- one-time equipment purchases that have long-term impact on reducing theft.

## GOVERNMENTAL AFFAIRS

During the 1995 legislative session, the Board of Directors presented a resolution to the Florida Legislature in support of increased penalties for motor vehicle theft. The Legislature subsequently passed a bill to increase the multiplier for sentencing guidelines related to offenses involving grand theft of a motor vehicle.

The Community Juvenile Justice Partnership Grant (CJJPG) program was amended in 1995 to transfer the grant program to the Department of Juvenile Justice effective July 1, 1995. The CJJPG Program was established in 1993 to provide resources for community projects intended to reduce juvenile crime. The program was funded through the Motor Vehicle Theft Prevention Trust Fund through June 30, 1995.

In addition to legislative efforts, Board members and the Florida Anti-Car Theft (ACT) Committee worked cooperatively to establish the week of October 22-28, 1995, as Florida Motor Vehicle Theft Prevention Week. A resolution co-sponsored by Attorney General Bob Butterworth and Insurance Commissioner Bill Nelson was formally adopted by the Florida Cabinet on October 24, 1995. Following approval of the Cabinet resolution, the Board of Directors and ACT members participated in a public event at the Capitol Building in Tallahassee that included displays of anti-theft devices, vehicle identification number (VIN) etching demonstrations and a staged "strip" of components parts from a vehicle.



# Appendix 1:
# 1995 Board of Directors
# Florida Motor Vehicle Theft Prevention Authority

FRED O. DICKINSON III, Chairman
Executive Director
Florida Department of Highway
 Safety and Motor Vehicles
Tallahassee, Florida

KATHERINE EMRICH
Assistant Director
Division of Insurance Fraud
Department of Insurance & Treasurer
Tallahassee, Florida

JAMES T. "TIM" MOORE
Executive Director
Florida Department of
 Law Enforcement
Tallahassee, Florida

HON. LAWSON LAMAR
State Attorney
Ninth Judicial Circuit
Orlando, Florida

FRED TAYLOR
Director of Public Safety
Metro-Dade Police Department
Miami, Florida

HON. JOHN R. McDOUGALL
Sheriff, Lee County
Fort Myers, Florida

HON. BILL GUNTER
President
Rogers Atkins Gunter & Associates
Tallahassee, Florida

MICHAEL M. STERN
Senior Account Agent
Allstate Insurance Company
Sunrise, Florida

JAMES O. SIMMONS
President & Chief Executive Officer
Pinellas County Urban League, Inc.
St. Petersburg, Florida

Executive Director:
Christine Sullivan Lutz
Office of the Attorney General
Tallahassee, Florida
(904) 488-7792

# Appendix 2:
# Florida Motor Vehicle Theft Prevention Grants by County
## 1995–96 Funding Cycle

**Brevard**
Titusville Police Department                $12,800

**Broward**
Broward County Sheriff's Office            $122,305
Ft. Lauderdale Police Dept.                $115,440
Hollywood Police Department                 $18,038
Miramar Police Department                   $48,655
Pembroke Pines Police Dept.                 $45,231
State Attorney, 17th Judicial Cir.          $95,446

**Charlotte**
Charlotte County Sheriff's Office           $19,383

**Collier**
Collier County Sheriff's Office             $52,427

**Dade**
Florida City Police Department              $22,000
Hialeah Police Department                   $20,700
Metro-Dade Justice Assistance               $59,970
Metro-Dade Task Force                      $161,915
Miami Beach Police Department               $18,350
Miami Police Department                     $44,546
North Miami Police Department               $13,742
State Attorney, 11th Jud. Circuit          $205,613

**Duval**
Jacksonville Sheriff's Office              $102,825

**Hillsborough**
Hillsbor. County Sheriff's Office           $12,920
Tampa Police Department                     $94,353

**Lee**
Fort Myers Police Department                $45,048

**Leon County**
Leon County Sheriff's Office                $46,697
Tallahassee Police Department               $56,336

**Manatee**
Manatee County Sheriff's Office            $101,289

**Orange**
Orange County Sheriff's Office              $41,305

**Palm Beach**
Boca Raton Police Department                $14,915
Boynton Beach Police Department              $7,336
Jupiter Police Department                   $12,550
Lake Worth Police Department               $165,885
Palm Beach County Sheriff's Off.            $66,122
Riviera Beach Police Department             $38,159

**Pinellas**
Clearwater Police Department                $34,669
St. Petersburg Police Department            $36,150

**Polk**
Polk County Sheriff's Office               $160,116

**Seminole**
Sanford Police Department                  $109,758
Seminole County Sheriff's Office            $58,525

**Volusia**
Daytona Beach Public Safety                 $10,500
Volusia County Sheriff's Office             $53,034

**Statewide**
Citiz. for Auto-Theft Resp. (CAR)           $20,500
Fl. Anti-Car Theft Committee                $30,000
Fl. Auto Theft Intelligence Unit            $17,818
Internatl. Assoc. Auto Theft Invest.        $24,000

**Total 42 Grants:**                       **$2,437,371**

# Appendix 3.
# Florida Motor Vehicle Theft Prevention
# Discretionary Grants by County
# January 1, 1996 – December 31, 1996

**Alachua**
Gainesville Police Department   $85,302

**Brevard**
Melbourne Police Department   $22,375

**Broward**
Hollywood Police Department   $40,995
Pembroke Pines Police Dept.   $51,625
Pompano Beach Police Dept.   $46,250

**Dade**
Homestead Police Department   $25,870
Metro-Dade Task Force   $21,001
State Attorney, 11th Judicial   $85,896

**Escambia**
Pensacola Police Department   $41,317

**Lee**
Lee County Port Authority   $6,822

**Orange**
Orange County Sheriff's Office   $42,220

**Palm Beach**
Delray Beach Police Department   $84,069
Lake Park Police Department   $68,677
Lake Worth Police Department   $15,497
Palm Beach Crim. Justice Com.   $100,000

**Polk**
Lakeland Police Department   $97,500

**Seminole**
Seminole Police Department   $72,151

**Statewide**
Highway Safety &
   Motor Vehicles   $92,104

**Total 18 Grants:**   **$999,671**

# Appendix 4.
# 1994 Motor Vehicle Theft Offenses Reported by County
## (Alphabetical Order)

| County | Rank | Offenses | County | Rank | Offenses |
|--------|------|----------|--------|------|----------|
| Alachua | 14 | 1,211 | Lake | 24 | 414 |
| Baker | 54 | 28 | Lee | 9 | 2,286 |
| Bay | 25 | 357 | Leon | 12 | 1,595 |
| Bradford | 44 | 57 | Levy | 47 | 52 |
| Brevard | 11 | 1,747 | Liberty | 62 | 5 |
| Broward | 3 | 16,036 | Madison | 57 | 19 |
| Calhoun | 65 | 1 | Manatee | 15 | 969 |
| Charlotte | 31 | 225 | Marion | 20 | 600 |
| Citrus | 40 | 108 | Martin | 32 | 219 |
| Clay | 26 | 327 | Monroe | 22 | 572 |
| Collier | 19 | 642 | Nassau | 39 | 121 |
| Columbia | 37 | 179 | Okaloosa | 27 | 268 |
| Dade | 1 | 40,734 | Okeechobee | 41 | 104 |
| De Soto | 43 | 65 | Orange | 6 | 6,265 |
| Dixie | 56 | 20 | Osceola | 23 | 499 |
| Duval | 5 | 6,890 | Palm Beach | 4 | 8,228 |
| Escambia | 17 | 782 | Pasco | 18 | 647 |
| Flagler | 51 | 38 | Pinellas | 8 | 3,215 |
| Franklin | 60 | 6 | Polk | 7 | 3,699 |
| Gadsden | 33 | 213 | Putnam | 28 | 256 |
| Gilchrist | 61 | 6 | Saint Johns | 35 | 193 |
| Glades | 50 | 46 | Saint Lucie | 21 | 586 |
| Gulf | 63 | 2 | Santa Rosa | 36 | 180 |
| Hamilton | 64 | 2 | Sarasota | 16 | 785 |
| Hardee | 42 | 86 | Seminole | 13 | 1,372 |
| Hendry | 38 | 158 | Sumter | 46 | 53 |
| Hernando | 34 | 198 | Suwannee | 48 | 52 |
| Highlands | 29 | 253 | Taylor | 45 | 56 |
| Hillsborough | 2 | 16,869 | Union | 58 | 18 |
| Holmes | 66 | - | Volusia | 10 | 1,825 |
| Indian River | 30 | 247 | Wakulla | 52 | 37 |
| Jackson | 49 | 48 | Walton | 53 | 30 |
| Jefferson | 55 | 21 | Washington | 59 | 17 |
| Lafayette | 67 | - | **STATEWIDE** | | **122,839** |

# Appendix 5.
# 1994 Motor Vehicle Theft Offenses Reported by County
## (Ranked)

| County | Rank | Offenses | County | Rank | Offenses |
|---|---|---|---|---|---|
| Dade | 1 | 40,734 | Saint Johns | 35 | 193 |
| Hillsborough | 2 | 16,869 | Santa Rosa | 36 | 180 |
| Broward | 3 | 16,036 | Columbia | 37 | 179 |
| Palm Beach | 4 | 8,228 | Hendry | 38 | 158 |
| Duval | 5 | 6,890 | Nassau | 39 | 121 |
| Orange | 6 | 6,265 | Citrus | 40 | 108 |
| Polk | 7 | 3,699 | Okeechobee | 41 | 104 |
| Pinellas | 8 | 3,215 | Hardee | 42 | 86 |
| Lee | 9 | 2,286 | De Soto | 43 | 65 |
| Volusia | 10 | 1,825 | Bradford | 44 | 57 |
| Brevard | 11 | 1,747 | Taylor | 45 | 56 |
| Leon | 12 | 1,595 | Sumter | 46 | 53 |
| Seminole | 13 | 1,372 | Levy | 47 | 52 |
| Alachua | 14 | 1,211 | Suwannee | 48 | 52 |
| Manatee | 15 | 969 | Jackson | 49 | 48 |
| Sarasota | 16 | 785 | Glades | 50 | 46 |
| Escambia | 17 | 782 | Flagler | 51 | 38 |
| Pasco | 18 | 647 | Wakulla | 52 | 37 |
| Collier | 19 | 642 | Walton | 53 | 30 |
| Marion | 20 | 600 | Baker | 54 | 28 |
| Saint Lucie | 21 | 586 | Jefferson | 55 | 21 |
| Monroe | 22 | 572 | Dixie | 56 | 20 |
| Osceola | 23 | 499 | Madison | 57 | 19 |
| Lake | 24 | 414 | Union | 58 | 18 |
| Bay | 25 | 357 | Washington | 59 | 17 |
| Clay | 26 | 327 | Franklin | 60 | 6 |
| Okaloosa | 27 | 268 | Gilchrist | 61 | 6 |
| Putnam | 28 | 256 | Liberty | 62 | 5 |
| Highlands | 29 | 253 | Gulf | 63 | 2 |
| Indian River | 30 | 247 | Hamilton | 64 | 2 |
| Charlotte | 31 | 225 | Calhoun | 65 | 1 |
| Martin | 32 | 219 | Holmes | 66 | - |
| Gadsden | 33 | 213 | Lafayette | 67 | - |
| Hernando | 34 | 198 | **STATEWIDE** | | **122,839** |

# Appendix 6:
## Motor Vehicle Theft Offenses
## Top Twenty Cities
## January 1, 1994 – December 31, 1994

| Rank | City | Number of Offenses |
|------|------|--------------------|
| 1. | Tampa | 11,011 |
| 2. | Miami | 10,376 |
| 3. | Jacksonville | 6,794 |
| 4 | Ft. Lauderdale | 3,548 |
| 5. | Miami Beach | 3,094 |
| 6. | Orlando | 2,121 |
| 7. | Hollywood | 1,612 |
| 8. | West Palm Beach | 1,504 |
| 9. | St. Petersburg | 1,440 |
| 10. | North Miami | 1,377 |
| 11. | Tallahassee | 1,284 |
| 12. | Lakeland | 1,176 |
| 13. | Pompano Beach | 1,024 |
| 14. | Plantation | 1,022 |
| 15. | Coral Gables | 946 |
| 16. | Lauderhill | 924 |
| 17. | Daytona Beach | 875 |
| 18. | Fort Myers | 823 |
| 19. | Lauderdale Lakes | 795 |
| 20. | Boynton Beach | 700 |

# Appendix 7.
# Top Ten Stolen Vehicles in Florida in 1994
## Source: National Insurance Crime Bureau

1. Honda Accord

2. Oldsmobile Cutlass
   (mid-to-late 80's models)

3. Toyota Camry

4. Chevrolet Caprice

5. Ford Mustang 5.0

6. Cadillac Deville

7. Honda Civic

8. Chrysler LeBaron

9. Toyota Corolla

10. Dodge Caravan

# Florida Motor Vehicle
# Theft Prevention Authority

# *1996*
# *Annual Report*



*Office of Attorney General Bob Butterworth*

Case 0:00-cv-06107-WPD   Document   Entered on FLSD Docket   Page 199 of 221

Florida Motor Vehicle Theft Prevention Authority
1996 Annual Report

For more information, contact:
Office of the Attorney General
Christine Sullivan Lutz, Executive Director
Florida Motor Vehicle Theft Prevention Authority
The Capitol, Room PL-01
Tallahassee, Florida 32399-1050
Phone: (904) 414-3300 / FAX: (904) 922-6674

January 1, 1997


Dear Floridians:

For the first time in five years, Florida experienced a decrease in motor vehicle thefts in 1995. However, despite an 11 percent decrease, motor vehicle theft continues to be a serious problem affecting tens of thousands of Floridians. Florida has moved up to second in the nation in the number of vehicle thefts, and Dade County's auto theft rate ranks first in the nation.

Still, the dramatic decrease in the number of thefts reported in 1995 is very encouraging. It demonstrates that multiple strategies, including increased public awareness, tougher penalties, and enhanced resources for local law enforcement agencies provided through the Florida Motor Vehicle Theft Prevention Authority, are all working to curb auto theft in Florida. Perhaps the most encouraging statistic is the dramatic 31 percent reduction in the number of juveniles arrested for vehicle theft.

Hopefully, the trends described in this 1996 Annual Report will continue. Together, we will continue to fight auto theft and make Florida a safer place to live and work.

Sincerely,

Robert A. Butterworth
Attorney General

# Florida Motor Vehicle Theft Prevention Authority
## 1996 Board of Directors



Fred O. Dickinson III, Chairman
Florida Department of Highway
Safety and Motor Vehicles



Patrick Clawson
Clawson & Company Inc.



John R. McDougall
Lee County Sheriff



James O. Simmons
Pinellas County
Urban League Inc.



James T. Moore
Florida Department of
Law Enforcement



Katherine Emrich
Florida Department of
Insurance

Michael Stern
Allstate Insurance
Company Inc.



Lawson Lamar
State Attorney
Ninth Judicial Circuit



Fred Taylor
Metro-Dade Police
Department

# Table of Contents

Letter from Attorney General Bob Butterworth. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Executive Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1996 Annual Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# Appendices

Appendix 1: 1996-97 MVTPA Grants
  Summary by County and Agency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Appendix 2: 1996-97 MVTPA Grant Project Descriptions
  by County and Agency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Appendix 3: 1995 Motor Vehicle Theft Offenses by County
  (Alphabetical Order). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Appendix 4: 1995 Motor Vehicle Theft Offenses by County
  (Rank Order). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Appendix 5: 1995 Motor Vehicle Theft Offenses, Top 20 Cities in Florida. . . . . . . . . . . . . . . . . .20

Appendix 6: 1995 Top 10 Stolen Vehicles in Florida. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# EXECUTIVE SUMMARY

Based on data published in the Uniform Crime Report, a total of 109,610 motor vehicle thefts were reported in Florida in 1995, reflecting a 10.8 percent decrease from the previous year. Not surprisingly, the greatest numbers of thefts occurred in three of Florida's most populous counties: Dade, Broward and Hillsborough. These three counties accounted for more than 58 percent of the state's reported offenses.

The top 10 counties for auto thefts remained unchanged from 1994 to 1995. They are (in rank order): Dade, Broward, Hillsborough, Palm Beach, Duval, Orange, Polk, Pinellas, Lee and Volusia. Of the top 10 counties, Palm Beach County is the only county that experienced an increase in the number of offenses (up 2.7%) during 1995; the number of thefts decreased significantly in the other nine counties. Hillsborough County led the state with a reduction of 6,350 thefts (37.6% decrease) over the previous year.

Although the number of thefts decreased statewide, not all counties were able to share in this reduction. Twenty of Florida's 67 counties actually experienced increased numbers of thefts, although these increases were relatively minor.

Florida's law enforcement officers made 11,408 arrests for motor vehicle thefts in 1995. Juveniles comprised 43 percent of the total arrest population, compared to 57 percent for adults. Juvenile arrests dropped by 30.7 percent between 1994 and 1995.

The value of reported stolen vehicles in 1995 was $813,668,739, while the value of recovered stolen vehicles was $498,671,510. This represents a 61 percent recovery rate based on value, and is slightly less (-4.6%) than the recovery rate of previous years.

The Florida Motor Vehicle Theft Prevention Authority approved funding for 40 new and continuation grants for the 1996-97 fiscal year for a total of $2,408,420. The grants support law enforcement and other agencies and organizations in local and statewide efforts to combat motor vehicle theft.

# 1996 ANNUAL REPORT

## INTRODUCTION

The 1996 Annual Report of the Florida Motor Vehicle Theft Prevention Authority describes the major activities of the Board of Directors during 1996. In addition, the report provides a summary of motor vehicle theft activity in Florida, based on figures published in the 1995 Uniform Crime Report by the Florida Department of Law Enforcement.

## HISTORY

The Legislature established the Florida Motor Vehicle Theft Prevention Authority (MVTPA) in 1992. The purpose of the Authority is threefold: to prevent, combat and reduce motor vehicle theft in Florida; to improve and support motor vehicle theft law enforcement and prosecution; and to improve and support the administration of motor vehicle theft laws.

The Board of Directors of the Florida Motor Vehicle Theft Prevention Authority includes the Florida Commissioner of Insurance, or his designee; the Executive Director of the Florida Department of Highway Safety and Motor Vehicles; and the Executive Director of the Florida Department of Law Enforcement. Six additional members are appointed by the Attorney General, including a state attorney or city or county executive; a chief law enforcement official; a sheriff; two representatives of the motor vehicle insurance industry in Florida, and a representative of purchasers of motor vehicle insurance in Florida. The chairman is selected by the Attorney General from the nine-member Board.

## OFFENSES

The number of motor vehicle thefts in Florida decreased in 1995, marking the first reduction in five years. Based on Uniform Crime Report (UCR) data, a total of 109,610 motor vehicle thefts were reported in 1995. This number reflects a 10.8 percent decrease in reported thefts over the previous year.

More than 85 percent - essentially five out of every six offenses - were reported in Florida's ten most populous counties. Three counties, Dade, Hillsborough and Broward, accounted for 58.3 percent of these offenses.

The top ten counties for the number of offenses committed in 1995 remained unchanged from 1994. Hillsborough exchanged rank with Broward County by moving from number two in the number of offenses in 1994 to number three in 1995. All other top ten counties retained their previous rank. See Table 1.

**Table 1. Top Ten Counties by Number of Thefts, Comparison of 1995 to 1994**

| County | 1995 Offenses | Percent Statewide | 1994 Offenses | Percent Statewide |
|---|---|---|---|---|
| Dade | 39,807 | 36.3% | 40,734 | 33.0% |
| Broward | 13,577 | 12.4% | 16,036 | 13.0% |
| Hillsborough | 10,519 | 9.6% | 16,869 | 14.0% |
| Palm Beach | 8,447 | 7.7% | 8,228 | 7.0% |
| Duval | 5,837 | 5.3% | 6,890 | 6.0% |
| Orange | 5,594 | 5.1% | 6,265 | 5.0% |
| Polk | 3,280 | 3.0% | 3,699 | 3.0% |
| Pinellas | 2,936 | 2.7% | 3,215 | 3.0% |
| Lee | 2,174 | 2.0% | 2,286 | 2.0% |
| Volusia | 1,547 | 1.4% | 1,825 | 1.0% |

Florida made significant strides in reducing its theft problem statewide. Vehicle thefts dramatically decreased in nine of the top ten counties. The only exception to this trend was Palm Beach County, which experienced a 2.6 percent increase. See Table 2.

**Table 2. 1995 Theft Reductions in the Top Ten Counties for Offenses**

| County | 1995 Offenses | 1994 Offenses | Decrease |
|---|---|---|---|
| Hillsborough | 10,519 | 16,869 | -37.6% |
| Broward | 13,577 | 16,036 | -15.3% |
| Volusia | 1,547 | 1,825 | -15.2% |
| Duval | 5,837 | 6,890 | -15.0% |
| Polk | 3,280 | 3,699 | -11.3% |
| Orange | 5,594 | 6,265 | -10.7% |
| Pinellas | 2,936 | 3,215 | - 8.7% |
| Lee | 2,174 | 2,286 | - 4.0% |
| Dade | 39,807 | 40,734 | - 2.3% |
| Palm Beach | 8,447 | 8,228 | +2.6% |

## ARRESTS

Florida law enforcement made 11,408 arrests for motor vehicle theft in 1995. As in previous years, juveniles continue to contribute heavily to the motor vehicle theft problem in Florida. Although they represent 43% of the total arrest population, the actual number of juveniles arrested decreased by 30.7 percent between 1994 and 1995, marking the first reduction in juvenile arrests for several years.

**Table 3. Comparison of Arrests: Juveniles and Adults**

| Offenders | 1995 Arrests | Percent | 1994 Arrests | Percent |
|---|---|---|---|---|
| Juveniles | 4,871 | 43% | 7,026 | 49% |
| Adults | 6,537 | 57% | 7,266 | 51% |
| Total | 11,408 | 100% | 14,292 | 100% |

## LOSS AND RECOVERY

The value of reported stolen vehicles, parts and accessories in 1995 was $813,668,739, while the value of recoveries was $498,671,510, almost two-thirds of the total value of the stolen vehicles. A statewide recovery rate of 61 percent represents a reduction (-5%) in the rate of recovery when compared to last year's recovery rate of 66 percent.

**Table 4. Value of Vehicles Stolen and Recovered in 1995**

| | Stolen | Recovered | % Recovered |
|---|---|---|---|
| Auto | $ 533,153,387 | $  342,663,591 | 64% |
| Truck & Van | 219,207,927 | 144,367,277 | 66% |
| Motorcycle | 15,394,601 | 3,961,258 | 26% |
| Campers & RV | 1,144,161 | 306,066 | 27% |
| Bus | 677,742 | 644,540 | 95% |
| Trailer | 12,205,736 | 5,038,687 | 41% |
| Auto Acc. & Parts | 31,885,185 | 1,690,091 | 5% |
| **Total** | **$ 813,668,739** | **$ 498,671,510** | **61%** |

**TRUST FUND**

The Motor Vehicle Theft Prevention Trust Fund was established for the purpose of combating auto theft in Florida. It is funded through a surcharge on Florida motor vehicle registrations. For every one dollar collected under this fee, 18 cents is deposited in the Motor Vehicle Theft Prevention Trust Fund. During 1995-96, the Trust Fund received deposits totaling $2,434,671 to support the purposes of the Florida Motor Vehicle Theft Prevention Act.

**ACTIVITIES OF THE BOARD OF DIRECTORS**

*Meetings*
The Board of Directors conducted three public meetings during 1996: March 25, 1996, in Tallahassee; August 6, 1996, in Tallahassee; and November 13, 1996, in Miami. Meeting highlights included:

- establishment of funding priorities for 1996-97 grant applications

- approval of MVTPA-sponsored training, including courses on auto theft prevention and state attorney case preparation

- submission of a resolution to the 1996 Florida Legislature supporting legislation requiring proof of ownership of exported vehicles

- partnership with the Lemon Law Arbitration Program to include theft prevention tips in a publication that reaches more than one million new car buyers annually

- dissemination of fact sheets on the Florida Combat Auto Theft (CAT) program to all Florida law enforcement agencies

- approval of 40 grants for new and continuation projects in the amount of $2.4 million

*Grant Awards*
One of the primary responsibilities of the Authority is the annual awarding of grant funds to local and statewide organizations for projects that prevent, combat and reduce motor vehicle theft in Florida. Notices of the availability of grant funds are mailed annually to approximately 1,000 interested parties, including all Florida law enforcement agencies, state attorneys and public defenders, and other interested businesses and organizations.

During 1995-96, the Authority budgeted more than $3.4 million for 60 grant projects statewide. The grants included a wide variety of new and continuation projects including multi-agency task forces, auto theft prosecution initiatives, public education and awareness programs, and law enforcement training programs.

On August 6, 1996, the Authority awarded 40 new and continuation grant projects totaling $2,408,420. The grants are effective from October 1, 1996, through September 30, 1997. A summary of 1996-97 grant awards by county appears in Appendix 1. A brief description of each of the 1996-97 grant projects appears in Appendix 2.



# Appendix 1.

# 1996–97 Florida Motor Vehicle Theft Prevention Grants Summary by County and Agency

| | | | |
|---|---|---|---|
| **Alachua** | | **Leon** | |
| Alachua County Sheriff's Office | $113,309 | FSU/FAMU Police Departments | $ 37,338 |
| | | Leon County Sheriff's Office | $ 60,292 |
| **Broward** | | | |
| Broward County Sheriff's Office | $ 70,868 | **Palm Beach** | |
| Fort Lauderdale Police Department | $115,440 | Boca Raton Police Department | $ 14,500 |
| Hallandale Police Department | $ 12,650 | Boynton Beach Police Department | $ 3,211 |
| Hollywood Police Department | $ 6,000 | Lake Worth Police Department | $ 152,671 |
| Miramar Police Department | $ 43,499 | Palm Beach County Sheriff's Office | $ 37,589 |
| Pembroke Pines Police Department | $ 41,081 | West Palm Beach Police Department | $ 137,093 |
| State Attorney, 17th Judicial Circuit | $ 95,446 | | |
| | | **Pinellas** | |
| **Charlotte** | | Clearwater Police Department | $ 29,554 |
| Charlotte County Sheriff's Office | $ 19,383 | St. Petersburg Police Department | $ 29,331 |
| | | Pinellas County Sheriff's Office | $ 63,498 |
| **Collier** | | | |
| Collier County Sheriff's Office | $ 56,824 | **Polk** | |
| | | Polk County Sheriff's Office | $ 150,000 |
| **Dade** | | | |
| Metro-Dade Task Force | $149,804 | **Seminole** | |
| Miami Beach Police Department | $ 6,000 | Sanford Police Department | $ 54,001 |
| Miami Police Department | $ 40,000 | Seminole County Sheriff's Office | $ 50,387 |
| Miami-Dade Community College | $ 13,348 | | |
| North Miami Police Department | $ 13,742 | **Volusia** | |
| Opa-Locka Police Department | $ 43,018 | Daytona Beach Public Safety | $ 10,500 |
| State Attorney, 11th Judicial Circuit | $149,924 | Volusia County Sheriff's Office | $ 53,484 |
| | | | |
| **Duval** | | **Statewide** | |
| Jacksonville Sheriff's Office | $102,959 | Citizens for Auto-Theft Responsibility | $ 39,200 |
| | | Florida Anti-Car Theft Committee | $ 100,000 |
| **Hillsborough** | | Florida Department of | |
| Hillsborough County Sheriff's Office | $ 90,564 | Highway Safety and Motor Vehicles | $ 26,250 |
| Tampa Police Department | $ 94,353 | | |
| | | **Total 40 Grants:** | **$2,408,420** |
| **Lee** | | | |
| Fort Myers Police Department | $ 42,539 | | |
| Lee County Sheriff's Office | $ 38,770 | | |

# Appendix 2.

# 1996-97 Grant Project Descriptions by County and Agency

 ## ALACHUA COUNTY

Alachua County Sheriff's Office          $113,309

Operation CARS (Comprehensive Auto Recovery Strike force) focuses on the arrest and conviction of persons engaged in the theft or altering of vehicles and vehicle parts. This is a collaborative effort among the Alachua, Columbia, Gilchrist, Levy, Putnam, and Union County Sheriffs, and the Gainesville Police Department.

 ## BROWARD COUNTY

Broward County Sheriff's Office          $70,868

The Multi-Agency Unit (MAU) for Auto Theft initiative is to prevent, investigate and prosecute motor vehicle theft. The task force combines the resources of state, county and municipal police agencies, and both the Broward County State Attorney's Office and the Statewide Prosecutor's Office.

Fort Lauderdale Police Department          $115,440

The Community Oriented Auto Theft Prevention Program provides formal auto theft investigative/prevention training; teaches investigative techniques to develop and maintain investigative quality leading to successful prosecutions; and increases community awareness of auto theft prevention by presenting seminars to community organizations

Hallandale Police Department          $12,650

Project ACTION (Against Car Theft In Our Neighborhood) is a multifaceted, auto theft prevention program which utilizes crime analysis, prevention through education and awareness, and proactive enforcement to impact the auto theft problem in Hallandale.

Hollywood Police Department          $6,000

The agency plans to conduct shop inspections; emphasize proactive enforcement including surveillance and multiple-case clearances; identify specific targets of high auto theft activity by accessing information databases; and develop target-specific strategies to reduce thefts.

Miramar Police Department            $43,499

The grant funds an analyst to report auto theft trends on a weekly and monthly basis; develop and maintain intelligence reports; act as a liaison with area law enforcement agencies and the South Florida Investigative Support Center; and to encourage CAT Program participation.

Pembroke Pines Police Department        $41,081

Project "Assault Auto Theft" is a multifaceted auto theft prevention project focusing on increasing the public's awareness of the threat and methods of auto thieves and preventive measures that can be taken. An analyst provides reports on auto theft trends and targeted areas, develops and maintains intelligence reports, and acts as a liaison with area law enforcement agencies.

State Attorney's Office - 17th Judicial Circuit    $95,446
The agency employs an assistant state attorney whose full-time duties are to review and prosecute auto theft cases arising out of the Broward County Multi-Agency Auto Theft Task Force. This includes chop shop cases, insurance fraud, export violations, sales tax fraud and juvenile theft rings.

 ## CHARLOTTE COUNTY

Charlotte County Sheriff's Office        $19,383

The Charlotte County Sheriff's Office is implementing a Combat Auto Theft (C.A.T.) Program.

 ## COLLIER COUNTY

Collier County Sheriff's Office        $56,824

Establishes an Auto Theft Investigative Unit for proactive efforts to prevent auto theft and auto-related crimes through community education, apprehension and prosecution.

 ## DADE COUNTY

City of Opa-Locka                $43,018

The K.A.R.S. (Keeping Automobiles Real Safe) program is established to combat, reduce and prevent auto theft through communication, community policing and various community action alerts.

Dade Multi-Agency Task Force        $149,804

The multi-agency task force is a coordinated effort comprised of law enforcement officers representing eight city, county, state and federal agencies. The officers work together on a daily basis to identify and investigate professional vehicle theft operations in Dade County, with special emphasis on illegal exportation of stolen vehicles.

Miami Beach Police Department          $6,000

The grant funds an annual auto theft prevention fair designed to educate area residents on auto theft deterrence and recovery devices and systems. The program includes free VIN-etching, CAT program, "Collar" installations, "Lojack" program, alarms, and "Teletrac" displays.

Miami Police Department                $40,000

The Auto Theft Detail offers free VIN-etching to the city's Neighborhood Enhancement Team citizens. The citizens are provided with auto theft prevention education during the VIN-etching rallies. Auto theft detectives participate in discussions and call-in programs on radio or television.

Miami-Dade Community College           $13,348

This grant provides six, separate sessions of intensive and specialized auto theft training directed to the role of the uniformed patrol officer. The tuition-free courses are available to all Florida law enforcement agencies.

North Miami Police Department          $13,742

The grant funds a public education campaign which promotes the CAT Program at homeowner, civic and business group meetings. In addition, the agency utilizes a computer generated database that allows them to identify and target high incident areas and proactively develop strategies to reduce theft.

State Attorney's Office - 11th Judicial Circuit    $149,924

The project funds attorneys and staff to handle investigations and cases involving organized auto theft; chop shop operations; salvage yards; motor vehicle body shops; investigations of insurance fraud and title fraud schemes involving vehicles or component parts; and interdiction of the illegal export of stolen motor vehicles. They provide prosecution resources to assist the Metro-Dade Task Force with warrants, surveillance orders and subpoenas; and build successful cases against organized dealers and auto theft rings.

 **DUVAL COUNTY**

Jacksonville Sheriff's Office          $102,959

The project expands the existing resources of the Jacksonville Sheriff's Office and the State Attorney's Office to investigate, increase apprehensions, prosecute and prevent the crime of motor vehicle theft. The grant provides a full-time prosecutor dedicated to the prosecution of motor vehicle theft.

 **HILLSBOROUGH COUNTY**

Hillsborough County Sheriff's Office        $90,564

The grant funds a three-pronged attack on auto theft through comprehensive specialized auto theft training, a public education campaign, and participation in an aggressive car theft apprehension program in coordination with the U.S. Customs Service, Tampa Port Authority, Seaboard Tampa Terminals, and CSX Transportation, Inc.

Tampa Police Department        $94,353

Grant funds allow the agency to assign one police officer and one detective to the Auto Theft Squad to serve as Juvenile Justice Coordinators; to provide an immediate evaluation of all juveniles arrested for auto related crimes; and to provide special expertise to local prosecutors in conducting investigations and prosecution for those arrested repeatedly for auto theft related crimes.

 **LEE COUNTY**

Fort Myers Police Department        $42,539

The Fort Myers Police Department project provides public education through community organizations, neighborhood watch groups, auto theft prevention signs and the media. The auto theft team and the Fort Myers "Citizens on Patrol" monitor hot spots and salvage yards and provide information to the public on local auto theft activity.

Lee County Sheriff's Office        $38,770

The project enhances current motor vehicle theft education, training and investigations by adding a crime analyst. The function of the crime analyst is to develop modus operandi trends of motor vehicle theft offenders, particularly concentrating on juvenile offenders.

 **LEON COUNTY**

Florida State University and Florida A & M University        $37,338

The grant provides funds to the police departments on each campus for the establishment, training, and equipping of joint student auxiliary patrols to provide maximum coverage of problem areas on the campuses. The project also includes the development, implementation, and presentation of comprehensive educational programs that will reach a significant portion of students, faculty, and staff at both institutions.

Leon County Sheriff's Office          $60,292

The Leon County Sheriff's Office will serve as a "clearinghouse" to generate and gather data, intelligence, technology developments, and other information pertinent to the investigations of auto thefts statewide. The information will be disseminated through a quarterly newsletter to law enforcement offices and Florida Anti-Car Theft Committee members.

 # PALM BEACH COUNTY

Boca Raton Police Department          $14,500

The Vehicle Protection Coalition provides prevention seminars, advertising campaigns, VIN-etching and the CAT program. Rallies are conducted to inform citizens of auto theft problems and to provide prevention techniques.

Boynton Beach Police Department          $3,211

The project enhances current efforts on auto theft prevention and education through the distribution of brochures, pamphlets and promotional items. Combat Auto Theft (CAT) enrollment drives will be conducted at local community meetings and auto theft rallies.

Lake Worth Police Department          $152,671

The PLI-CAT (Public, Law Enforcement, and Insurance - Combating Auto Theft) project is a multi-agency operational force designed to prevent, investigate, and prosecute motor vehicle thefts. Its strategy is to dedicate efforts on auto theft cases; build and maintain computerized career auto thief profiles and intelligence; increase recovery rates and apprehension of suspects; and provide services to heighten citizen prevention awareness.

Palm Beach County Sheriff's Office          $37,589

The project enhances the auto theft prevention unit by focusing on analysis, prevention, salvage yard operations and a public awareness campaign.

West Palm Beach Police Department          $137,093

The "STALL" (Stop Taking Automobile Laws Lightly) project is designed to work in conjunction with other local law enforcement and community agencies to address auto theft. The project funds staff, investigative equipment, training of law enforcement officers, prosecution and prevention efforts.



## PINELLAS COUNTY

Clearwater Police Department                $29,554

The grant to Clearwater Police Department provides for public education through the distribution of brochures; auto-theft prevention rallies; specialized training for detectives so that they can train patrol officers; and detection of stolen vehicles through computer network systems research.

Pinellas County Sheriff's Office            $63,498

Under the grant program, the Auto Theft Unit will shift in focus from a primarily reactive unit to a proactive unit. Objectives include the prevention of auto theft, increased recoveries of stolen vehicles, and the apprehension and successful prosecution of adult and juvenile offenders.

St. Petersburg Police Department            $29,331

The Auto Theft Unit has implemented a multifaceted strategy designed to reduce the incidence of auto theft by conducting prevention oriented public education and awareness campaigns; providing auto theft prevention education in six middle schools; and by providing proactive enforcement efforts including a VIN-etching service.



## POLK COUNTY

Polk County Sheriff's Office                $150,000

The Polk County Sheriff's Office project continues an intense and comprehensive approach aimed at reducing, preventing and combating motor vehicle thefts. Ongoing proactive strategies include regular salvage yard inspections, persistent chop shop investigations, productive decoy operations, random tag inspections and VIN-etching.



## SEMINOLE COUNTY

Sanford Police Department                   $54,001

In partnership with businesses and the community, the Sanford Police Department coordinates auto theft prevention and community awareness programs through education and crime prevention initiatives.

Seminole County Sheriff's Office            $50,387

Pattern Auto Crime Education and Enforcement (PACE) utilizes a two-level approach to combat auto theft. The first approach is educational and includes presentations to civic organizations, theft

prevention flyers issued to deputies in the field, mass media (radio, television, and newspaper) and a resistance program targeting juveniles 11-17 that has been implemented in the public schools. The second approach is strong enforcement, by identifying target areas, participating in joint-agency operations, and providing investigators with computers with data transmission and reception capabilities.

 ## VOLUSIA COUNTY

Daytona Beach Department of Public Safety　　　　　　$10,500

During "Special Events Season" the motor vehicle theft awareness project promotes public education programs; provides motor vehicle theft avoidance information on flyers; and publishes public service announcements targeting tourist, seasonal and permanent residents.

Volusia County Sheriff's Office　　　　　　$53,484

The motor vehicle theft prevention project includes a four point approach. The program encompasses the elements of proactive efforts, public education and awareness, training, crime analysis and the creation of a multi-agency task force.

 ## STATEWIDE

Citizens for Auto-theft Responsibility, Inc. (CAR)　　　　　$39,200

CAR organizes and conducts auto theft prevention rallies in cooperation with law enforcement agencies; publishes and distributes quarterly newsletters dedicated to the prevention and reduction of motor vehicle theft; and delivers public education and awareness presentations on motor vehicle theft issues.

Department of Highway Safety and Motor Vehicles　　　$26,250

Prevention Automobile Theft (PAT) funds a comprehensive training program that will both educate and increase the awareness of tax collectors and DHSMV employees statewide. Specifically, the project will provide training of tax collectors and DHSMV employees on auto theft prevention and title fraud detection techniques.

Florida Anti-Car Theft Committee　　　　　　$100,000

The Florida Anti-Car Theft Committee (FACT) is a voluntary, not-for-profit association of representatives from law enforcement agencies, insurance companies, car rental companies and other businesses and community groups created to raise awareness of Florida residents to the magnitude of the automobile theft problem. Using the diverstiy of its membership as an asset, FACT plans to develop a comprehensive statewide public information and education campaign on auto theft prevention.

## STATE TOTAL　　$2,408,420

*1996 Annual Report*                                             *Florida Motor Vehicle Theft Prevention Authority*

# Appendix 3.

# 1995 Motor Vehicle Theft Offenses by County
### (Alphabetical Order)

| County | Rank | Offenses | County | Rank | Offenses |
|---|---|---|---|---|---|
| Alachua | 14 | 1,132 | Lake | 24 | 420 |
| Baker | 53 | 26 | Lee | 9 | 2,174 |
| Bay | 25 | 354 | Leon | 11 | 1,453 |
| Bradford | 45 | 69 | Levy | 49 | 36 |
| Brevard | 12 | 1,408 | Liberty | 64 | 6 |
| Broward | 2 | 13,577 | Madison | 56 | 19 |
| Calhoun | 65 | 1 | Manatee | 15 | 947 |
| Charlotte | 32 | 212 | Marion | 21 | 593 |
| Citrus | 39 | 120 | Martin | 31 | 217 |
| Clay | 26 | 284 | Monroe | 22 | 557 |
| Collier | 19 | 685 | Nassau | 40 | 118 |
| Columbia | 35 | 169 | Okaloosa | 30 | 226 |
| Dade | 1 | 39,807 | Okeechobee | 41 | 91 |
| De Soto | 43 | 83 | Orange | 6 | 5,594 |
| Dixie | 57 | 17 | Osceola | 23 | 515 |
| Duval | 5 | 5,837 | Palm Beach | 4 | 8.447 |
| Escambia | 16 | 820 | Pasco | 18 | 719 |
| Flagler | 52 | 28 | Pinellas | 8 | 2,936 |
| Franklin | 60 | 10 | Polk | 7 | 3,280 |
| Gadsden | 36 | 143 | Putnam | 27 | 266 |
| Gilchrist | 59 | 12 | St. Johns | 37 | 138 |
| Glades | 48 | 36 | St. Lucie | 20 | 629 |
| Gulf | 61 | 10 | Santa Rosa | 33 | 201 |
| Hamilton | 66 | 0 | Sarasota | 17 | 732 |
| Hardee | 42 | 86 | Seminole | 13 | 1,167 |
| Hendry | 38 | 130 | Sumter | 44 | 75 |
| Hernando | 34 | 176 | Suwannee | 54 | 24 |
| Highlands | 29 | 244 | Taylor | 50 | 35 |
| Hillsborough | 3 | 10,519 | Union | 55 | 20 |
| Holmes | 62 | 8 | Volusia | 10 | 1,547 |
| Indian River | 28 | 265 | Wakulla | 46 | 68 |
| Jackson | 47 | 38 | Walton | 51 | 31 |
| Jefferson | 58 | 15 | Washington | 63 | 8 |
| Lafayette | 67 | 0 | **Statewide** | | **109,610** |

Case 0:00-cv-06173-DLG Document 1 Entered on FLSD Docket 02/03/2000 Page 218 of 221

# Appendix 4.

# 1995 Motor Vehicle Theft Offenses by County

## (Rank Order)

| County | Rank | Offenses | County | Rank | Offenses |
|---|---|---|---|---|---|
| Dade | 1 | 39,807 | Columbia | 35 | 169 |
| Broward | 2 | 13,577 | Gadsden | 36 | 143 |
| Hillsborough | 3 | 10,519 | St. Johns | 37 | 138 |
| Palm Beach | 4 | 8,447 | Hendry | 38 | 130 |
| Duval | 5 | 5,837 | Citrus | 39 | 120 |
| Orange | 6 | 5,594 | Nassau | 40 | 118 |
| Polk | 7 | 3,280 | Okeechobee | 41 | 91 |
| Pinellas | 8 | 2,936 | Hardee | 42 | 86 |
| Lee | 9 | 2,174 | De Soto | 43 | 83 |
| Volusia | 10 | 1,547 | Sumter | 44 | 75 |
| Leon | 11 | 1,453 | Bradford | 45 | 69 |
| Brevard | 12 | 1,408 | Wakulla | 46 | 68 |
| Seminole | 13 | 1,167 | Jackson | 47 | 38 |
| Alachua | 14 | 1,132 | Glades | 48 | 36 |
| Manatee | 15 | 947 | Levy | 49 | 36 |
| Escambia | 16 | 820 | Taylor | 50 | 35 |
| Sarasota | 17 | 732 | Walton | 51 | 31 |
| Pasco | 18 | 719 | Flagler | 52 | 28 |
| Collier | 19 | 685 | Baker | 53 | 26 |
| Saint Lucie | 20 | 629 | Suwannee | 54 | 24 |
| Marion | 21 | 593 | Union | 55 | 20 |
| Monroe | 22 | 557 | Madison | 56 | 19 |
| Osceola | 23 | 515 | Dixie | 57 | 17 |
| Lake | 24 | 420 | Jefferson | 58 | 15 |
| Bay | 25 | 354 | Gilchrist | 59 | 12 |
| Clay | 26 | 284 | Franklin | 60 | 10 |
| Putnam | 27 | 266 | Gulf | 61 | 10 |
| Indian River | 28 | 265 | Holmes | 62 | 8 |
| Highlands | 29 | 244 | Washington | 63 | 8 |
| Okaloosa | 30 | 226 | Liberty | 64 | 6 |
| Martin | 31 | 217 | Calhoun | 65 | 1 |
| Charlotte | 32 | 212 | Hamilton | 66 | 0 |
| Santa Rosa | 33 | 201 | Lafayette | 67 | 0 |
| Hernando | 34 | 176 | **Statewide** | | **109,610** |

# Appendix 5.

# 1995 Motor Vehicle Theft Offenses, Top 20 Cities in Florida

| Rank | City | Number of Offenses |
|------|------|--------------------|
| 1 | Miami | 8,832 |
| 2 | Tampa | 5,982 |
| 3 | Jacksonville | 5,736 |
| 4 | Hialeah | 3,724 |
| 5 | Fort Lauderdale | 3,031 |
| 6 | Miami Beach | 2,656 |
| 7 | Orlando | 1,861 |
| 8 | West Palm Beach | 1,587 |
| 9 | Hollywood | 1,484 |
| 10 | St. Petersburg | 1,432 |
| 11 | Lakeland | 1,229 |
| 12 | North Miami | 1,168 |
| 13 | Tallahassee | 1,131 |
| 14 | Fort Myers | 878 |
| 15 | Delray Beach | 817 |
| 16 | Plantation | 816 |
| 17 | Pompano Beach | 771 |
| 18 | Boynton Beach | 739 |
| 19 | Coral Gables | 688 |
| 20 | Daytona Beach | 637 |

# Appendix 6.

## 1995 Top 10 Stolen Vehicles in Florida



1.    Honda Accord

2.    Honda Civic

3.    Toyota Camry

4.    Ford Mustang

5.    Chevrolet Caprice

6.    Oldsmobile Cutlass

7.    Toyota Corolla

8.    Cadillac Deville

9.    Chrysler LeBaron

10.    Dodge Caravan

Source: National Insurance Crime Bureau 11/96

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

**I. (a) PLAINTIFFS**

MOHAMED ALI GHANEM

**DEFENDANTS**

THE STATE OF FLORIDA;
ROBERT BUTTERWORTH, Esq., Atty. Gen. St. FL;
THE FLORIDA MODEL _____
PREVENTION AUTHORITY

# 00-6173
# CIV-GRAHAM

**MAGISTRATE JUDGE TURNOFF**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Broward

(EXCEPT IN U.S. PLAINTIFF CASES)

Maurice Graham, P.A.   (954) 491-3737
331 East Prospect Road, Oakland Park, FL 33334

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT

(IN U.S. PLAINTIFF CASES ONLY)

NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME ADDRESS AND TELEPHONE NUMBER)

Maurice Graham, P.A.   (954) 491-3737
331 East Prospect Rd, Oakland Park, FL 33334

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   (BROWARD),   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

(illegible checklist columns: A CONTRACT, TORTS, FORFEITURE/PENALTY, A BANKRUPTCY, A PROPERTY RIGHTS, A LABOR, B SOCIAL SECURITY, A REAL PROPERTY, A CIVIL RIGHTS, PRISONER PETITIONS, FEDERAL TAX SUITS)

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Taxpayers Suit and Injunctive Relief

LENGTH OF TRIAL 5 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   2-2-2000

SIGNATURE OF ATTORNEY OF RECORD   Maurice Graham

**FOR OFFICE USE ONLY**

RECEIPT #  711898   AMOUNT  150.00   APPLYING IFP ____   JUDGE  Graham   MAG JUDGE  WCT.